Nicole Lavallee (SBN 165755)
Alexander S. Vahdat (SBN 284963)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
       avahdat@bermantabacco.com

*Counsel for the University of Puerto Rico Retirement System
and Proposed Liaison Counsel for the Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY JOSPEH PETERS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN<br><br>Defendants. | Case No. 5:22-cv-8168-EJD<br><br><u>CLASS ACTION</u><br><br>**MOVANT THE UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:   July 20, 2023<br>TIME:   9:00 a.m.<br>CTRM:   4, 5th Floor<br>JUDGE:  Hon. Edward J. Davila |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................................1

STATEMENT OF THE ISSUES TO BE DECIDED..........................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................3

I.   SUMMARY OF THE ARGUMENT ........................................................................................3

II.  FACTUAL AND PROCEDURAL BACKGROUND............................................................3

III. ARGUMENT .................................................................................................................................6

    A.  The UPR Retirement System Is The "Most Adequate Plaintiff" And Should Be Appointed Lead Plaintiff............................................................................6

        1. The Lead Plaintiff Framework Under the PSLRA ......................................6

        2. The UPR Retirement System Has Satisfied the PSLRA's Procedural Requirements ...................................................................................7

        3. The UPR Retirement System Has the Largest Financial Interest in the Relief Sought by the Class .....................................................................7

        4. The UPR Retirement System Satisfies the Adequacy and Typicality Requirements of Rule 23 .............................................................8

    B.  The UPR Retirement System Selection of Counsel Should be Approved...............9

IV. CONCLUSION.............................................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*In re Cavanaugh*,
    306 F.3d 726, 730 (9th Cir. 2002) ................................................................................... 8

*Leventhal v. Chegg, Inc.*,
    No. 5:21-cv-09953-EJD, 2022 WL 4099454 (N.D. Cal. Sept. 7, 2022) ..................... 7, 8, 9

*Martinek v. AmTrust Fin. Servs. Inc.*,
    No. 19-CIV-8030 (KPF), 2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022) ..................... 10

**STATUTES**

15 U.S.C. § 78j(b) ............................................................................................................... 6

15 U.S.C. § 78t(a) ............................................................................................................... 6

15 U.S.C. § 78u-4(a)(2) ...................................................................................................... 7

15 U.S.C. § 78u-4(a)(3) ...................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(A)(i) .......................................................................................... 6, 7

15 U.S.C. § 78u-4(a)(3)(B)(i) ............................................................................................. 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .................................................................................... 3, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) ................................................................................. 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ................................................................................. 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ................................................................................. 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................................ 9

15 U.S.C. § 78u-4(e) ........................................................................................................... 8

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ........................................................................................ 7

17 C.F.R. § 240.10b-5 ........................................................................................................ 6

Securities Exchange Act § 10(b) ........................................................................................ 6

Securities Exchange Act § 20(a) ........................................................................................ 6

**RULES**

Civil L.R. 3-7 ..................................................................................................................... 1

Civil L.R. 3-7(c) ................................................................................................................. 7

Fed. R. Civ. P. 23 ................................................................................................................ 1, 3, 6, 7

Fed. R. Civ. P. 23(a) ..................................................................................................................... 9

Fed. R. Civ. P. 23(a)(3) ................................................................................................................. 8

Fed. R. Civ. P. 23(a)(4) ................................................................................................................. 9

SEC Rule 10b-5 ............................................................................................................................ 6

**DOCKETED**

*MAZ Partners LP v. PHC, Inc.*,
     No. 11-cv-11049 (D. Mass.) ............................................................................................ 11

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan
     Acceptance Corp. I*,
     No. 2:08-cv-01713 (E.D.N.Y.) ........................................................................................ 10

|     |                                  |
| --- | -------------------------------- |
| 1   | **NOTICE OF MOTION AND MOTION**  |

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3    Please take notice that on July 20, 2023 at 9:00 a.m., or as soon thereafter as this matter
4    may be heard, in the Courtroom of the Honorable Edward J. Davila located in Courtroom 4 on the
5    5th floor of the United States District Court for the Northern District of California, 280 South 1st
6    Street, San Jose, CA, 95113, the University of Puerto Rico Retirement System (the "UPR
7    Retirement System") shall move this Court, pursuant to the Private Securities Litigation Reform
8    Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3) and Local Rule 3-7, for the entry of an Order:

9    (1) appointing the UPR Retirement System as lead plaintiff; and

10   (2) approving the UPR Retirement System's selection of Wolf Popper LLP ("Wolf
11   Popper") as lead counsel and Berman Tabacco as liaison counsel on behalf of the proposed class.

12   This motion is made on the grounds that the UPR Retirement System is the "most adequate
13   plaintiff" pursuant to the PSLRA based on losses of $158,704 in its investment in Twist Bioscience
14   Corporation ("Twist" or the "Company") common stock, and that the UPR Retirement System
15   meets the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are
16   typical of the class claims and it will fairly and adequately represent the class. In addition, the UPR
17   Retirement System has selected and retained counsel with substantial experience in prosecuting
18   securities fraud class actions such as this one to serve as counsel for the class.

19   The UPR Retirement System bases this Motion on this Notice of Motion, its Memorandum
20   of Points and Authorities, the Declaration of Joshua W. Ruthizer in support thereof (the "Ruthizer
21   Declaration" or "Ruthizer Decl.") and exhibits attached thereto, the pleadings and other filings
22   herein, and such written and oral argument as may be presented to the Court.

23
24
25
26
27
28

[CASE NO. 5:22-cv-8168-EJD] MOVANT THE UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM'S
NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF    1

**STATEMENT OF THE ISSUES TO BE DECIDED**

1. Whether the Court should appoint, pursuant to the PSLRA, the UPR Retirement System as lead plaintiff for the proposed class in the action.

2. Whether the Court should approve, pursuant to the PSLRA, the UPR Retirement System's selection of Wolf Popper as lead counsel and Berman Tabacco as liaison counsel for the proposed class.

---

[CASE NO. 5:22-cv-8168-EJD] MOVANT THE UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF   2

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **SUMMARY OF THE ARGUMENT**

Pursuant to the PSLRA, the Court shall appoint as lead plaintiff the movant who timely requests appointment as lead plaintiff, possesses the largest financial interest in the relief sought by the class in the action, and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The UPR Retirement System satisfies each of these elements: the UPR Retirement System has timely filed this motion, believes that it has the largest financial interest in the relief sought by the Class[1] in this action, with losses suffered from Defendants' misconduct of $158,704 in connection with its open market investments in Twist common stock, is typical of the putative class, and is adequate to serve as lead plaintiff. The UPR Retirement System accordingly believes that it is "most adequate plaintiff" as defined by the PSLRA and should therefore be appointed lead plaintiff.

The UPR Retirement System also requests that the Court approve its selection of Wolf Popper as lead counsel and Berman Tabacco as liaison counsel on behalf of the Class. Both firms are nationally recognized securities class action firms with consistent records of achieving substantial recoveries for the benefit of injured investor classes and both have the expertise and resources necessary to provide high-quality legal representation and effectively protect the interests of the class.

II. **FACTUAL AND PROCEDURAL BACKGROUND**

Twist is a biotechnology company that manufactures synthetic DNA and DNA products. Synthetic DNA products allow users to design and modify DNA for the purposes of academic research, enhancing specialty chemical production, and developing healthcare treatments, among other uses. ¶2.

---

[1] The "Class" is alleged as "all persons and entities who purchased or otherwise acquired Twist common stock during the Class Period" of December 13, 2019 through November 14, 2022, inclusive. ¶¶1, 52. References to "¶_" refer to paragraphs in the complaint in this action (the "Complaint," ECF No. 1).

[CASE NO. 5:22-cv-8168-EJD] MOVANT THE UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF   3

1    During the Class Period, Twist assured investors that it possessed innovative proprietary technology relating to its synthetic DNA products, which positioned Twist for significant future growth. For example, in Twist's 2019 annual report for the fiscal year ending September 30, 2019, filed with the U.S. Securities & Exchange Commission ("SEC") on December 13, 2019, Twist stated that "we have combined our silicon-based DNA writing technology with proprietary software, scalable commercial infrastructure and an e-commerce platform to create an integrated technology platform that enables us to achieve high levels of quality, precision, automation, and manufacturing throughput at a significantly lower cost than our competitors" and "we have applied our unique technology to manufacture a broad range of synthetic DNA-based products…." ¶24. Twist also assured investors that it had significant growth potential, explaining that its "silicon-based chip technology can increase DNA production by a factor of 9,600 on a footprint like that of traditional DNA synthesis method" and "significantly lowers the volume of required reagents." ¶26. Defendants made similar statements in Twist's 2020 and 2021 annual reports, filed with the SEC on November 27, 2020 and November 23, 2021, respectively." ¶¶28, 33.

Twist's SEC filings also reported skyrocketing gross margins, which purportedly grew from 12.8% in fiscal year 2019 to 39.1 % in fiscal year 2021. ¶¶4, 29, 34.

On December 22, 2020, Twist issued a press release announcing it was building a factory in Wilsonville, Oregon that it dubbed the "Factory of the Future." ¶¶5, 31. Throughout the rest of the Class Period, Twist reported substantial expected capital expenditures, and largely attributed them to the construction of the factory. In a February 4, 2021 press release announcing earnings for the first fiscal quarter of 2021, Defendants projected 2021 capital expenditures at $30 million. ¶32. On August 5, 2022, the Company issued a press release announcing results for the third fiscal quarter of 2022, in which they increased guidance for annual capital expenditures to between $95 million and $100 million, and assured investors that annual gross margins would reach 40% in fiscal year 2022. ¶36.

Then, on November 15, 2022, before the market for Twist common stock opened for the day, Scorpion Capital, a short seller, issued a short report on Twist, which was based on 20 research

interviews with former executives and manufacturing employees, customers, competitors, and industry experts. In the short report, Scorpion compared Twist to Theranos, and alleged that Twist was a "cash-burning inferno that is not a going concern," "operating a Ponzi-like scheme that will end in bankruptcy," and "a ticking time bomb." ¶¶41, 43, 45. Among other things, Scorpion alleged that: (1) Twist's DNA chip was not proprietary or unique technology, but cut-and-paste old technology that Twist's CEO took from her former employer (which had proven to be an epic flop in the early 2000s); (2) Twist's strategy was to radically underprice its competition by as much as 85%, and that these discounts had driven prices down throughout the industry, meaning Twist would never be able to raise the prices above current levels; (3) the DNA chip required significant hours to produce and did not have consistent quality, ensuring that the only reason customers purchased it was its low price; and (4) Twist, in order to conceal its losses from its pricing scheme and manufacturing problems, was engaged in accounting fraud by mis-classifying cost of goods and research and development expenses as capital expenditures. Scorpion based its conclusion on the massive increase in research and development and capital expenditures, which are out of character for a company such as Twist, which does not develop drugs, perform clinical trials, or have a clinical pipeline. ¶¶42-49.

Further, Scorpion highlighted that the skyrocketing capital expenses were attributed to the Oregon factory. Scorpion, however, sent a private investigator to the factory, where he found deserted parking lots, a quiet loading dock, and no evidence of manufacturing equipment or activity. ¶50.

In response to the revelations in the Scorpion short report, the price of Twist common stock fell $7.57 per share on November 15, 2022, or nearly 20%, from a closing price of $38.00 per share on November 14, 2022 to a closing price of $30.43 per share on November 15, 2022. ¶51.

On December 12, 2022, the Complaint in this Action was filed against defendants Twist, Emily Leproust (Twist's CEO during the Class Period), and James Thorburn (Twist's CFO during the Class Period). ECF No. 1. The Complaint alleges claims against the defendants for violations

of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

Also on December 12, 2022, the PSLRA required (15 U.S.C. § 78u-4(a)(3)(A)(i)) notice of pendency of this class action was published on *BusinessWire*, a national wire service (the "PSLRA Notice," attached to the Ruthizer Declaration as Exhibit A). The PSLRA Notice advised potential Class members, among other things, that the deadline to move for appointment as lead plaintiff in this Action was February 10, 2023, 60 days after publication of the PSLRA Notice.

### III.   ARGUMENT

#### A.   The UPR Retirement System Is The "Most Adequate Plaintiff" And Should Be Appointed Lead Plaintiff

##### 1.   The Lead Plaintiff Framework Under the PSLRA

The PSLRA instructs that in a securities action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff')." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person who "has either filed the complaint or made a motion [for appointment as lead plaintiff]" within sixty days of the publication of the PSLRA required notice of pendency of the class action; "in the determination of the court, has the largest financial interest in the relief sought by the class; and … otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The PSLRA allows that the presumption may only be rebutted "upon proof" that the most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Satisfying each requirement of the PSLRA, the UPR Retirement System respectfully submits that it is the presumptive "most adequate plaintiff." It has complied with the PSLRA's

procedural requirements, holds the largest financial interest of any known movant, and satisfies Rule 23's typicality and adequacy requirements.

### 2. The UPR Retirement System Has Satisfied the PSLRA's Procedural Requirements

The PSLRA's 60-day deadline to move this Court for appointment as lead plaintiff expires on February 10, 2023. 15 U.S.C. § 78u-4(a)(3)(A)(i); Ruthizer Decl. Ex. A (PSLRA Notice). The UPR Retirement System has filed the instant motion timely, on February 10, 2023, and has attached the signed Certification required by the PSLRA (15 U.S.C. § 78u-4(a)(2)) attesting to, among other things, its transactions in Twist common stock during the Class Period, and its willingness to serve as Lead Plaintiff for the class, and to provide testimony at deposition and trial, if necessary. *See* Ruthizer Decl. Ex. B (UPR Retirement System PSLRA Certification). The UPR Retirement System's Certification also complies with the requirements of Civil Local Rule 3-7(c). The UPR Retirement System therefore satisfies the first criterion of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

### 3. The UPR Retirement System Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA establishes a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the movant who "has the largest financial interest in the relief sought by the class," and who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). This Court has in the past compared "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Leventhal v. Chegg, Inc.*, No. 5:21-cv-09953-EJD, 2022 WL 4099454, at *2 (N.D. Cal. Sept. 7, 2022).

The UPR Retirement System purchased a total of 10,630 shares of Twist common stock between July 28, 2022 and November 1, 2022 (during the Class Period) at a total cost of $435,229 and at an average price of $40.94 per share. The UPR Retirement System did not sell any shares

[CASE NO. 5:22-cv-8168-EJD] MOVANT THE UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF    7

of Twist common stock during the Class Period, and therefore retained all 10,630 shares at the end of the Class Period. The UPR Retirement System suffered a loss of $158,704, calculated as the cost of its 10,630 retained shares of Twist common stock, minus those retained shares at the average closing price of Twist common stock for the period from November 15, 2022 through February 9, 2023 of $26.01 per share (the PSLRA 90-day lookback price).[2] If the UPR Retirement System's retained shares are valued at the closing price of Twist common stock on November 15, 2022 of $30.43 per share, then the UPR Retirement Systems' loss is equal to $111,759. *See* Ruthizer Decl. Ex. C (Chart of Estimated Losses).

The UPR Retirement System believes it possesses the largest financial interest in the relief sought by the class, and satisfies the second criterion of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 4. The UPR Retirement System Satisfies the Adequacy and Typicality Requirements of Rule 23

At the lead plaintiff stage, the Court's Rule 23 analysis focuses on the requirements of typicality and adequacy. *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *Chegg*, 2022 WL 4099454, at *3.

The Rule 23(a)(3) typicality requirement is satisfied when a proposed class representative "has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues." *Chegg, Inc.*, 2022 WL 4099454, at *3 (citation and quotation omitted). The UPR Retirement System's claims are typical of those of the purported class. As with all other putative class members, the UPR Retirement System purchased Twist common stock at prices artificially inflated as a result of Defendants' alleged misrepresentations and was damaged upon the disclosure of the truth regarding those misrepresentations. *Id.*

---

[2] The PSLRA provides that damages shall not exceed the difference between the purchase price of a security and the average closing price of that security during the 90-day period starting on the date of the corrective disclosure, or if the security is sold during that 90-day period, the average closing price through the date of sale. 15 U.S.C. § 78u-4(e). In this case, the 90-day period expires on February 13, 2023.

"To determine adequacy [under Rule 23(a)(4)], a court must consider whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation." *Chegg, Inc.*, 2022 WL 4099454, at *4 (quotation and citation omitted). The UPR Retirement System is an adequate representative of the class. The UPR Retirement System's claims are not antagonistic or in conflict with those of the class. The UPR Retirement System is not subject to any unique defenses. Further, the UPR Retirement System's $158,704 loss related to its investment in Twist common stock provides a sufficient interest in the outcome of this litigation, thus ensuring "vigorous advocacy." The UPR Retirement System has also executed and submitted a declaration attesting to its qualifications, understanding of the role of the Lead Plaintiff, and willingness to vigorously prosecute this litigation. Ruthizer Decl. Ex. D (UPR Retirement System Declaration).

Also, as described below, the UPR Retirement System has retained counsel experienced in securities litigation.

Because the UPR Retirement System's claims are typical of those of the class and the UPR Retirement System will adequately represent the class, the UPR Retirement System satisfies the third criterion of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

\*   \*   \*

In sum, the UPR Retirement System is the presumptively most adequate plaintiff and should be appointed Lead Plaintiff. The UPR Retirement System timely filed a motion seeking appointment as lead plaintiff, believes it has the largest financial interest in the relief sought by the class, and satisfies the requirements of Rule 23(a).

### B. The UPR Retirement System Selection of Counsel Should be Approved

Under the PLSRA, the lead plaintiff has the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). " A court should only disturb the lead plaintiff's counsel choice if it is necessary to protect the interests of the class." *Chegg,*

*Inc.*, 2022 WL 4099454, at *4 (citation omitted). The UPR Retirement System has selected Wolf Popper as lead counsel and Berman Tabacco as liaison counsel.

Wolf Popper and Berman Tabacco are highly experienced in the area of securities litigation and class actions, having successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* Ruthizer Decl. Exs. E (Wolf Popper Resume) & F (Berman Tabacco Resume).

For example, in *Martinek v. AmTrust Financial Services, Inc.*, No. 19-cv-08030-KPF (S.D.N.Y.), Wolf Popper served as lead counsel on behalf of a class of investors in AmTrust Financial Services preferred stock. On November 16, 2022, Hon. Katherine Polk Failla of the Southern District of New York entered an order finally approving a $13 million cash settlement for the *Martinek* class. *Martinek*, ECF No. 111 (Final Judgement). The court also stated that Wolf Popper "conducted the Litigation and achieved the Settlement with skill, perseverance and diligent advocacy; [and] Lead Counsel are highly experienced in class action litigation and securities class action litigation…." *Martinek v. AmTrust Fin. Servs. Inc.*, No. 19-CIV-8030 (KPF), 2022 WL 16960903, at *2 (S.D.N.Y. Nov. 16, 2022).

Also, in *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 2:08-cv-01713 (E.D.N.Y.) ("J.P. Morgan Acceptance Corp. I."), Wolf Popper represented the Public Employees' Retirement System of Mississippi as Lead Plaintiff and recovered $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp. On July 24, 2014, Hon. Pamela K. Chen of the Eastern District of New York entered an order approving the settlement. The court found that "the representation of both sides was obviously very vigorous. The plaintiffs expended efforts in terms of pursuing the investigation, the theories, the research and the advocacy." Transcript of Proceedings Held on July 24, 2014 at 19:14-17, J.P. Morgan Acceptance Corp. I (E.D.N.Y. Sept. 24, 2014), ECF No. 230.  "Certainly, in the beginning, at the time when some of the … legal principles that are applied in this case, in any cases related to mortgage-backed securities, was not well established.

1  They did yeomen's work, I think, in trying to establish some of those principles.... [T]his is a
2  good result in this particular case." *Id.* at 22:5-18.

3  Likewise, Berman Tabacco has been appointed lead counsel in more than 100 federal
4  securities class actions, recovering countless amounts on behalf of defrauded investors. *See*
5  Ruthizer Decl. Ex. F (Berman Tabacco Resume). Wolf Popper and Berman Tabacco have worked
6  together in prior securities litigations, and completed a jury trial together in July 2017 in the United
7  States District Court of the District of Massachusetts that resulted in a $3 million disgorgement
8  from a controlling stockholder. *See MAZ Partners LP v. PHC, Inc.*, No. 11-cv-11049 (D. Mass.).

9  As a result of Wolf Popper's and Berman Tabacco's extensive experience in litigation
10 involving issues similar to those raised in this action, Wolf Popper and Berman Tabacco have the
11 skill and knowledge to prosecute this action effectively and expeditiously as lead and liaison
12 Counsel. The Court may rest assured that by approving the UPR Retirement System's selection
13 of lead and liaison Counsel, the members of the class will receive the best legal representation
14 available.

15 **IV.    CONCLUSION**

16 For the foregoing reasons, the UPR Retirement System respectfully requests the Court:
17 (1) appoint the UPR Retirement System as lead plaintiff on behalf of the proposed class; and
18 (3) approve its selection of Wolf Popper LLP as lead counsel and Berman Tabacco as liaison
19 counsel for the proposed Class.

20 ///
21 ///
22 ///

---

[CASE NO. 5:22-cv-8168-EJD] MOVANT THE UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF  11

|   |   |   |
|---|---|---|
| 1 | DATED: February 10, 2023 | Respectfully submitted, |
| 2 |  | **BERMAN TABACCO** |
| 3 |  | By:  */s/ Nicole Lavallee* |
|   |  |         Nicole Lavallee |

Alex Vahdat
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
           avahdat@bermantabacco.com

*Counsel for Movant the University of Puerto Rico Retirement System and Proposed Liaison Counsel for the Class*

Joshua W. Ruthizer (*Pro Hac Vice Motion to be Filed*)
**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 459-2093
Email: jruthizer@wolfpopper.com

*Counsel for Movant the University of Puerto Rico Retirement System and Proposed Lead Counsel for the Class*

---

[CASE NO. 5:22-cv-8168-EJD] MOVANT THE UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF  12