1  **BLEICHMAR FONTI & AULD LLP**
   Lesley E. Weaver (Bar No. 191305)
2  lweaver@bfalaw.com
   555 12th Street, Suite 1600
3  Oakland, California 94607
   Telephone: (415) 445-4003
4  Facsimile: (415) 445-4020
5
6  *Counsel for Proposed Lead Plaintiff*
   *Policemen's Annuity and Benefit Fund of Chicago,*
7  *and Proposed Lead Counsel for the Class*
8  [*Additional Counsel on Signature Page*]
9

10              **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
11                 **SAN JOSE DIVISION**

12 | | Case No. 5:22-cv-08168-EJD
13 |
   | ANTHONY JOSEPH PETERS, Individually | <u>CLASS ACTION</u>
14 | and on Behalf of All Others Similarly | **NOTICE OF MOTION AND MOTION**
   | Situated, | **OF POLICEMEN'S ANNUITY AND**
15 | | **BENEFIT FUND OF CHICAGO FOR**
   |                    Plaintiff, | **APPOINTMENT AS LEAD PLAINTIFF**
16 | | **AND APPROVAL OF ITS SELECTION**
   |          v. | **OF LEAD COUNSEL; MEMORANDUM**
17 | | **OF POINTS AND AUTHORITIES IN**
   | | **SUPPORT THEREOF**
18 | TWIST BIOSCIENCE CORPORATION, |
   | EMILY M. LEPROUST, and JAMES M. |
19 | THORBURN, | Date: July 20, 2023
   | | Time: 9:00 a.m.
20 |                    Defendants. | Courtroom: 4—5th Floor
   | | Judge: Hon. Edward J. Davila
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that at 9:00 a.m. on July 20, 2023, or on a date and at a time set by the Court, before the Honorable Edward J. Davila, at the United States District Court for the Northern District of California, located at the San Jose Courthouse, 280 South 1st Street, Courtroom 4—5th Floor, San Jose, California 95113, Policemen's Annuity and Benefit Fund of Chicago ("PABF"), through its counsel, will respectfully move the Court for entry of an Order: (1) appointing PABF as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (2) approving its selection of Bleichmar Fonti & Auld LLP ("BFA") to serve as Lead Counsel for the Class; and (3) granting any such other and further relief as the Court may deem just and proper.[1]

This Motion is made on the grounds that PABF believes it is the "most adequate plaintiff" under the PSLRA, and therefore should be appointed Lead Plaintiff.  Specifically, PABF believes that it has the "largest financial interest" in the relief sought by the Class by virtue of, among other things, the roughly $815,000 in losses as calculated under a last-in, first-out ("LIFO") basis that it incurred on its investments in Twist Bioscience Corporation ("Twist" or the "Company") stock during the Class Period, as assessed under the U.S. Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  PABF also otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of other members of the Class and because it will fairly and adequately represent the Class.

This Motion is based upon the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Lesley E. Weaver ("Weaver Decl.") filed herewith, the pleadings and other filings herein, and any such other written or oral argument as the Court may permit.

---

[1] Consistent with Rule IV. A. 1. of this Court's Standing Order for Civil cases, counsel for PABF reserved the above-referenced hearing date with the Courtroom Deputy.

1  WHEREFORE, PABF respectfully requests that the Court: (1) appoint PABF as Lead Plaintiff;

2  (2) approve its selection of BFA to serve as Lead Counsel for the Class; and (3) grant such other relief

3  as the Court may deem just and proper.

4  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

5  **I.    STATEMENT OF THE ISSUES TO BE DECIDED**

6      1.    Whether the Court should appoint PABF as Lead Plaintiff pursuant to 15 U.S.C. § 78u-

7  4(a)(3)(B).

8      2.    Whether the Court should approve PABF's selection of BFA as Lead Counsel for the

9  Class, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

10 **II.    PRELIMINARY STATEMENT**

11     The above captioned securities class action alleges that Twist and certain of its senior officers

12 (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the

13 Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC")

14 Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  Specifically, the complaint alleges that

15 from December 13, 2019 through November 14, 2022, inclusive (the "Class Period"), Twist

16 misrepresented that it had developed an innovative, proprietary technology to produce synthetic DNA

17 at a higher quality and lower cost than competitors, and that the Company engaged in accounting

18 improprieties to conceal the scheme.

19     The PSLRA states that the Court is to appoint the "most adequate plaintiff" to serve as Lead

20 Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is to determine which movant has the

21 "largest financial interest" in the relief sought by the class in this litigation and whether that movant has

22 made a *prima facie* showing that it is a typical and adequate class representative under Rule 23.  15

23 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  PABF respectfully submits that it is the "most adequate plaintiff" by

24 virtue of, among other things, the roughly $815,000 in LIFO losses that it incurred on its investments in

25 Twist stock during the Class Period, as assessed under *Dura*, 544 U.S. 336.

26     PABF also satisfies the relevant requirements of Rule 23 because its claims are typical of all

27 members of the Class, and it will fairly and adequately represent the Class.  Indeed, PABF is more than

28

1    adequate.  It is precisely the type of institutional investor that Congress intended to lead securities class

2    actions.  *See* H.R. Conf. Rep. No. 104-369 at *34 (1995); S. Rep. No. 104-98 at *6 (1995).  As a

3    sophisticated public pension plan, PABF has significant experience serving in a fiduciary capacity and

4    supervising the work of outside counsel.  Further, PABF fully understands the Lead Plaintiff's

5    obligations to the Class under the PSLRA, and is willing and able to take on the responsibilities of the

6    Lead Plaintiff to ensure the vigorous prosecution of this case.  *See* Weaver Decl. Ex. A.

7           PABF has further demonstrated its adequacy by selecting BFA, a law firm with substantial

8    experience successfully prosecuting complex securities class actions, to serve as Lead Counsel for the

9    Class.  Accordingly, PABF respectfully requests that the Court appoint it as Lead Plaintiff and

10   otherwise grant its motion.

11   **III.    FACTUAL BACKGROUND**

12          Twist is a biotechnology company that manufactures synthetic DNA and DNA products.[2]

13   Synthetic DNA products allow users to design and modify DNA for the purposes of academic research,

14   enhancing specialty chemical production, and developing healthcare treatments, among other uses.

15   ¶2.[3]

16          The Complaint alleges that throughout the Class Period, Defendants repeatedly assured

17   investors that the Company possessed innovative proprietary technology relating to its synthetic DNA

18   products that positioned Twist for significant future growth.  ¶3.  For instance, Defendants represented

19   on December 13, 2019, the first day of the alleged Class Period, that "[w]e have combined our silicon-

20   based DNA writing technology with proprietary software, scalable commercial infrastructure and an e-

21   commerce platform . . . that enables us to achieve high levels of quality, precision, automation, and

22   manufacturing throughput at a significantly lower cost than our competitors."  ¶24.  Defendants further

---

[2] Pursuant to Civil Local Rule 3-7(c), PABF certifies that has reviewed and adopts the allegations in the Complaint filed in this case for purposes of this motion.  If appointed Lead Plaintiff, PABF reserves its right to file an amended complaint asserting other or different allegations.

[3] All citations to ¶__ are to the Complaint.  ECF No. 1.

explained on that day how Twist's "silicon-based chip technology can increase DNA production by a factor of 9,600 on a footprint like that of traditional DNA synthesis methods" and "significantly lowers the volume of required reagents." ¶26.

The Complaint further alleges how Twist was building a "Factory of the Future" in Wilsonville, Oregon, and how the Company attributed substantial capital expenditures to that facility. ¶¶31-32. According to Defendant Leprost on August 16, 2022, the facility was close to being fully operational, the manufacturing equipment was in place, and "[o]nce we have [completed quality checks], we'll be able to start taking orders and ship product." ¶¶38-39.

As alleged, these statements were materially false and misleading. Specifically, the Complaint alleges that "Defendants overstated the commercial viability of Twist's synthetic DNA manufacturing technology while engaging in accounting fraud and using unsustainable pricing to inflate the Company's true financial condition and prospects." ¶40.

Investors learned the truth about the scheme on November 15, 2022, when Scorpion Capital ("Scorpion") issued a report stating that "Twist's 'DNA chip' is simply a cut-and-paste of an old technology" that Defendant Leprost's former employer, Agilent Technologies, developed in the early 2000s and had proven an "epic flop." The Scorpion report further stated that Twist's DNA chip is "nothing more than a DNA micro-array, a legacy 40-year old technology" that is a commodity already offered by competitors rather than an actual, innovative microchip with transistors. Given the alleged deceptive repackaging of existing technology, Scorpion compared Twist to the now-defunct Theranos Inc., which infamously claimed that it had developed a revolutionary blood-testing technology, but in reality was still using traditional technology. ¶¶42-43.

Scorpion's report also revealed that, according to certain former Twist employees, Defendants' representations about the Company's competitive advantages—specifically, the purported ability of its DNA chip technology to manufacture DNA at dramatically higher volumes and with less raw materials—are false. Scorpion quoted former Twist employees who explained that the Company's manufacturing workflow uses "pretty standard molecular biology technique[s]" and is "at the same

point that all of the other vendors are at," contradicting Defendants' claims that Twist possesses revolutionary technology.  ¶¶44.

Further, Scorpion wrote that Twist's attribution of its skyrocketing capital expenditures to the development of the facility in Wilsonville, Oregon was an "epic hoax . . . that . . . is little more than a ruse to conceal an additional $100MM of losses by misclassifying [cost of goods sold] as capital expenditures."  To this end, Scorpion reported that its own private investigator had visited the location of the facility, where they found "a deserted parking lot, a quiet loading dock," no reception area, a handful of office employees working at computers, and—contrary to Defendant Leproust's claims in August 2022—no evidence of manufacturing equipment or activity.  ¶49.

In response to the revelations in the Scorpion report, the price of Twist common stock declined $7.57 per share, or nearly 20%, from a close of $38.00 per share on November 14, 2022, to close at $30.43 per share on November 15, 2022.  ¶51.

## IV.    ARGUMENT

### A.    PABF Should Be Appointed Lead Plaintiff

PABF respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("The [PSLRA] provides a simple … process for identifying the lead plaintiff pursuant to these criteria").  Here, PABF believes that it is the presumptively "most adequate plaintiff" because it: (1) complied with the PSLRA's procedural requirements; (2) believes it asserts the largest financial interest in the relief sought by the Class; and (3) satisfies Rule 23's typicality and adequacy requirements.

#### 1.    PABF Satisfied The PSLRA's Procedural Requirements

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days after publication of notice of the pendency of the action.  *See* 15 U.S.C. § 78u-4(a)(3)(A).  On

December 12, 2022, Plaintiff Anthony Joseph Peters filed this case.  On the same day, counsel for Mr. Peters published notice of the pendency of the action on *Business Wire*, setting the deadline to seek Lead Plaintiff status by February 10, 2023.  *See* Weaver Decl. Ex. B.  As such, PABF's motion is timely.

**2.     PABF Believes It Has The Largest Financial Interest In The Relief Sought By The Class**

PABF believes that it has the "largest financial interest in the relief sought by the Class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  PABF incurred a recoverable loss of approximately $815,000 (under LIFO) on its investments in Twist stock during the Class Period as assessed under the Supreme Court's ruling in *Dura*. Under *Dura*, "the plaintiff must allege that the defendant's fraud, not market forces, caused the economic loss."  *Jaszczyszyn v. SunPower Corp.*, 2022 WL 10208559, at *2 (N.D. Cal. Oct. 13, 2022).  "To do so, the plaintiff 'must allege that the defendant's 'share price fell significantly after the truth became known.'"  *Id.* (citation omitted).  "The Supreme Court noted in *Dura* that 'if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.' . . . Thus, where a complaint alleges just one corrective disclosure, 'only those who held [ ] stock through that date were harmed by the Defendants' alleged fraud.' . . . In such cases, courts considering motions to appoint lead plaintiff have refused to consider losses prior to the alleged disclosure."  *Id.* at *3 (citations omitted).

Courts in this district have also relied on loss calculations without considering the impact of *Dura*.  *See Ali v. Intel Corp.* 2018 WL 2412111, at *2 (N.D. Cal. May 29, 2018).  Under this method, PABF incurred a similarly significant loss of nearly $835,000 (LIFO) on its investments in Twist stock during the Class Period.[4]  Regardless of the calculation methodology employed, "the weight of

---

[4] In addition to losses, courts often consider various other metrics, typically referred to as "Lax factors," to further analyze a movant's financial interest when warranted.  *See Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (identifying (1) total number of shares purchased; (2) number of net shares purchased; (3) total net funds expended; and (4) approximate

authority" has adopted LIFO accounting (as opposed to first-in, first-out ("FIFO")) for purposes of the calculation. *See Bodri v. Gopro, inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016).

To the best of PABF's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation.[5]  Accordingly, PABF has the largest financial interest of any qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3.    PABF Otherwise Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, PABF also otherwise satisfies the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, a movant need only make a "preliminary showing that it satisfies the typicality and adequacy requirements of [Rule] 23."  *Krieger v. Atheros Commc'ns, Inc.*, 2011 WL 6153154, at *3 (N.D. Cal. Dec. 12, 2011) (citation omitted).  PABF clearly satisfies both requirements.

PABF's claims are typical of the claims of other purchasers of Twist stock.  When "determining whether typicality is satisfied, a Court inquires 'whether other members [of the Class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech, Inc.*, 2013 WL 2368059, at *4 (N.D. Cal. May 29, 2013) (citation omitted).  Here, PABF sustained injuries virtually identical to other Class members and its claims are based on the same course of conduct because, like all other Class members, PABF: (1) purchased Twist stock during the Class Period; (2) at prices artificially inflated by Defendants'

---

losses suffered, as four factors for courts to consider when determining the largest financial interest).

[5] PABF's PSLRA-required Certification is attached as Exhibit A to the Weaver Decl.  A chart setting forth the calculation of PABF's financial interest is attached as Exhibit C to the Weaver Decl. PABF's motion, PSLRA certification, and loss calculation provide all the trading information necessary to calculate its financial interest under all possible metrics and does not presuppose that there is only one valid methodology.

materially false and misleading statements and omissions; and (3) was damaged thereby.  *See id*.  As such, PABF satisfies the typicality requirement.

PABF also satisfies the adequacy requirement of Rule 23.  The adequacy inquiry focuses on whether the representative party will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The test for adequacy asks whether the class representative and his counsel 'have any conflicts of interest with other class members' and whether the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'"  *Align*, 2013 WL 2368059, at *4 (citation omitted).  PABF satisfies these elements because its substantial financial stake in the litigation provides it with the incentive to vigorously represent the Class's claims and oversee counsel.  Further, PABF has significant experience in serving in a fiduciary capacity and in supervising the work of outside counsel.  No antagonism or conflict exists between the interests of PABF and those of absent Class members; rather, their interests are squarely aligned.

Indeed, PABF—responsible for overseeing roughly $3.8 billion in net assets on behalf of approximately 27,300 active and retired members—is precisely the type of large and sophisticated institutional investor that Congress encouraged to act as Lead Plaintiff in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").  What's more, PABF has a well-established history of serving as Lead Plaintiff in securities class actions.  For instance, PABF previously served as Lead Plaintiff in the securities class action *In re DaimlerChrysler,* et al., 1:00-cv-00993 (D. Del.), and secured a $300 million recovery for the class.  In addition, PABF served as Lead Plaintiff in *In re Apollo Group Inc. Sec. Litig*., 2:04-cv-02147 (D. Ariz.) and successfully recovered $145 million for investors.

Finally, PABF has demonstrated its adequacy through its selection of BFA as Lead Counsel to represent the Class.  As discussed more fully below, BFA is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities actions effectively.

**B.    PABF Selected Well-Qualified Counsel To Represent The Class**

Under the PSLRA, the Lead Plaintiff is given the right, "subject to the approval of the court," to "select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."  *Cohen v. United States Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009).

BFA is among the foremost securities class action law firms in the country.  BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of investors in securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades.  *See* Weaver Decl. Ex. D.  Most recently, BFA achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd.*, No. 3:17-cv-00558-SRU (D. Conn.).  In this District, BFA also recently secured a $129 million resolution on behalf of investors in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.).  BFA also secured a $234 million resolution for the benefit of the class in *In re MF Global Holdings Ltd. Sec. Litig.*, No. 1:11-cv-07866-VM (S.D.N.Y.), as well as a $120 million recovery in *Freedman v. Weatherford Int'l Ltd.*, No. 1:12-cv-02121-LAK (S.D.N.Y.). BFA also secured a $219 million resolution in *In re Genworth Fin., Inc. Sec. Litig.*, 3:14-cv-00682-JAG (E.D. Va.), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia.  Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

**V.    CONCLUSION**

For the foregoing reasons, PABF respectfully requests that the Court appoint it as Lead Plaintiff, approve its selection of BFA as Lead Counsel for the Class, and grant such other relief as the Court may deem just and proper.

1    DATED: February 10, 2023                Respectfully Submitted,

2                                            **BLEICHMAR FONTI & AULD LLP**

3
                                               */s/ Lesley E. Weaver*
4                                            Lesley E. Weaver (Bar No. 191305)

5                                            lweaver@bfalaw.com
                                             555 12th Street, Suite 1600
6                                            Oakland, California 94607
                                             Telephone: (415) 445-4003
7                                            Facsimile: (415) 445-4020

8
                                             Javier Bleichmar (*pro hac vice* forthcoming)
9                                            jbleichmar@bfalaw.com
                                             Nancy A. Kulesa (*pro hac vice* forthcoming)
10                                           nkulesa@bfalaw.com
                                             7 Times Square, 27th Floor
11                                           New York, NY 10036
                                             Telephone: (212) 789-1340
12                                           Facsimile: (212) 205-3960

13
                                             Ross Shikowitz (*pro hac vice* forthcoming)
14                                           rshikowitz@bfalaw.com
                                             75 Virginia Road
15                                           White Plains, NY 10603
                                             Telephone: (212) 789-1349
16                                           Facsimile: (212) 205-3960

17
                                             *Counsel for Proposed Lead Plaintiff*
18                                           *Policemen's Annuity and Benefit Fund of*
                                             *Chicago, and Proposed Lead Counsel for the*
19                                           *Class*

20
                                             John A. Kehoe (*pro hac vice* forthcoming)
21                                           **KEHOE LAW FIRM, P.C.**
                                             41 Madison Avenue, 31st Floor
22                                           New York, NY 10010
                                             Telephone: (215) 792-6676
23                                           jkehoe@kehoelawfirm.com

24
                                             *Additional Counsel for Proposed Lead*
25                                           *Plaintiff Policemen's Annuity and Benefit*
                                             *Fund of Chicago*
26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Lesley E. Weaver*
Lesley E. Weaver