Nicole Lavallee (SBN 165755)
Alexander S. Vahdat (SBN 284963)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
        avahdat@bermantabacco.com

*Proposed Liaison Counsel for the Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY JOSEPH PETERS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN<br><br>Defendants. | Case No. 5:22-cv-8168-EJD<br><br><u>CLASS ACTION</u><br><br>**MOVANT THE UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>DATE:      July 20, 2023<br>TIME:      9:00 a.m.<br>CTRM:    4, 5th Floor<br>JUDGE:    Hon. Edward J. Davila |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT.................................................................................................................................3

I.      THE UPR RETIREMENT SYSTEM SHOULD BE APPOINTED LEAD
        PLAINTIFF..........................................................................................................................3

        A.      This Court Should Evaluate the Movants' Financial Interests on the Basis
                of *Dura* and Exclude Pre-Corrective Disclosure Losses from the
                Calculation ...........................................................................................................3

        B.      Because LIFO Exaggerates PABF's Financial Interest, the Court Should
                Use Total Alleged Aggregate Inflation or FIFO to Determine the Largest
                Financial Interest...................................................................................................5

        C.      The UPR Retirement System is the Presumptive Most Adequate Plaintiff
                and Should be Appointed Lead Plaintiff..................................................................9

II.     THE UPR RETIREMENT SYSTEM'S CHOICE OF COUNSEL SHOULD BE
        APPROVED .........................................................................................................................10

CONCLUSION.............................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Abrams v. Intuitive Surgical, Inc.*,
No. 5:13-cv-01920-EJD, 2013 WL 6070031 (N.D. Cal. Nov. 18, 2013)................................ 4

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)........................................................................................................ passim

*Garber v. Juniper Networks, Inc.*,
No. C06-04327 JW, 2006 WL 3365547 (N.D. Cal. Nov. 20, 2006) ..................................... 7

*Gruber v. Gilbertson*,
No. 16-CV-9727 (JSR), 2022 WL 17828609 (S.D.N.Y. Dec. 21, 2022) ........................... 1, 8

*Hodges v. Akeena Solar, Inc.*,
263 F.R.D. 528 (N.D. Cal. 2009)........................................................................................... 7

*Hurst v. Enphase Energy*,
No. 20-cv-04036-BLF, 2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ................................. 5

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ............................................................................................. 2, 4

*In re Lyft Sec. Litig.*,
No. 19-CV-02690-HSG, 2020 WL 1043628 (N.D. Cal. Mar. 4, 2020) ................................. 5

*In re SiRF Tech. Holdings, Inc. Sec. Litig.*,
No. C 08-0856 MMC, 2008 WL 2220601 (N.D. Cal. May 27, 2008) ................................... 4

*In re Sonthalia*,
No. 22-70044, 2022 WL 3445815 (9th Cir. Aug. 17, 2022) ...................................... 1, 3, 4, 5

*In re UTStarcom, Inc. Sec. Litig.*,
No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010)...................................... 7

*Leventhal v. Chegg, Inc.*,
No. 5:21-CV-09953-EJD, 2022 WL 4099454 (N.D. Cal. Sept. 7, 2022)............................. 10

*Lewis v. CytoDyn, Inc.*,
No. C21-5190 BHS, 2021 WL 3709291 (W.D. Wash. Aug. 19, 2021),
*reconsideration denied sub nom. Courter v. Cytodyn, Inc.*, No. C21-5190 BHS,
2021 WL 4989446 (W.D. Wash. Oct. 27, 2021) ................................................................... 6

*Markette v. XOMA Corp.*,
No. 15-cv-03425-HSG, 2016 WL 2902286 (N.D. Cal. May 13, 2016) ................................. 5

*Mehedi v. View, Inc.*,
No. 21-CV-06374-BLF, 2022 WL 377406 (N.D. Cal. Feb. 8, 2022) ........................... 3, 4, 5

*Monachelli v. Hortonworks, Inc.*,
No. 16-cv-00980-SI 2016 WL 3078867 (N.D. Cal. June 1, 2016)........................................ 4

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*,
   No. C 01-20418-JW, 2004 WL 5326262 (N.D. Cal. May 27, 2004) ..................................... 7

*Russo v. Finisar Corp.*,
   No. 5:CV 11-01252-EJD, 2011 WL 5117560 (N.D. Cal. Oct. 27, 2011) ............................. 2

*Sanders v. RealReal, Inc.*,
   No. 5:19-cv-07797-EJD, 2022 U.S. Dist. LEXIS 134387 (N.D. Cal. July 28,
   2022) ................................................................................................................................ 7

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)................................................................................................. 9

15 U.S.C. § 78u-4(a)(3)(B)(v) .................................................................................................... 10

15 U.S.C. § 78u-4(e) ..................................................................................................................... 1

**RULES**

Civil L.R. 3-7(c)............................................................................................................................. 4

Fed. R. Civ. P. 23 ...................................................................................................................... 2, 9

**DOCKETED**

*MAZ Partners LP v. PHC, Inc.*,
   No. 11-cv-11049 (D. Mass.) .................................................................................................. 10

*Sanders v. The RealReal, Inc., et al.*,
   No. 19-cv-07737 (N.D. Cal.) ................................................................................................. 7

**PRELIMINARY STATEMENT**

Only two movants remain for this Court to consider as lead plaintiff: the University of Puerto Rico Retirement System ("UPR Retirement System" or "UPRRS," ECF Nos. 26, 62) and the Policemen's Annuity and Benefit Fund of Chicago (the "PABF," ECF Nos. 43, 63). All other movants have filed notices of withdrawal or non-opposition. ECF Nos. 52, 56, 57, 58, 60, 65.

The UPR Retirement System has the largest financial interest in the relief sought by the Class with an estimated potential recoverable loss of $113,859, calculated under the principles of *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336 (2005) and as applied by courts in this District at the lead plaintiff stage. *See also In re Sonthalia*, No. 22-70044, 2022 WL 3445815, at *1 (9th Cir. Aug. 17, 2022). Pursuant to this *Dura* methodology, UPR Retirement System's financial interest is calculated by (1) the total purchase price of the UPR Retirement System's shares of Twist Bioscience Corp. ("Twist") common stock retained at the end of the Class Period, up to $38.00 per share (which is the price of Twist common stock immediately before the single corrective disclosure alleged in the Complaint) to eliminate pre-corrective disclosure losses, minus (2) the value of those retained shares using the PSLRA's 90-day lookback price of $25.94 per share.[1] Significantly, because the UPR Retirement System did not sell any Twist common stock during the Class Period, its financial interest is the same when *Dura* is applied using (1) first in, first out accounting ("FIFO"), which assumes that shares sold were the first shares purchased, (2) last-in, first out accounting ("LIFO"), which assumes that shares sold were the shares most recently purchased, or (3) total alleged aggregate inflation, which is total alleged inflation in Class Period purchases minus total alleged inflation in Class Period sales. ECF No. 62-2 at 2, 4, 10.

---

[1] The PSLRA provides that damages shall not exceed the difference between the purchase price and the average closing price of the security for the 90-day period starting on the day the truth is disclosed to the market, or if the security is sold during that 90-day period, the average closing price of the security through the date of sale. 15 U.S.C. § 78u-4(e). Alternatively, the Court can use the actual closing price of Twist common shares on November 15, 2022 of $30.34 per share to calculate the respective movants' financial interests, because the 90-day look back is not intended to increase a movants' damages. *See Gruber v. Gilbertson*, No. 16-CV-9727 (JSR), 2022 WL 17828609, at *14 (S.D.N.Y. Dec. 21, 2022) (the 90-day lookback price "may have a substantial effect on damages when a stock quickly rebounds from its nadir, but will have no effect if the stock does not rebound."). Using $30.34 per share in the lead plaintiff analysis would not change the determination of who has the largest financial interest in the relief sought by the Class.

[CASE NO. 5:22-cv-8168-EJD] THE UPR RET. SYS.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF       1

PABF has a potential estimated recoverable loss of $87,477, calculated using *Dura* and total alleged aggregate inflation present in PABF's transactions or FIFO. *Id.* at 1, 9. While PABF claims to have a larger financial interest of $814,517 (LIFO) or $341,760 (FIFO) (ECF No. 43-4), those claimed financial interests are exaggerated by over $727,000 (LIFO) and $254,283 (FIFO). These losses are exaggerated because PABF calculates its financial interest on the basis of out-of-pocket loss and includes in its calculation losses that occurred due to market forces prior to the alleged corrective disclosure on November 15, 2022 and that are not alleged to be related to the Defendants' alleged fraud. When, as here, a complaint alleges only a single corrective disclosure at the end of the Class Period, courts in this District have applied *Dura* and excluded losses that occurred prior to the corrective disclosure.

Contrary to PABF's arguments, the Court should not use LIFO to calculate the movants' financial interests in this case. LIFO exaggerates PABF's financial interest by offsetting purchases significantly below $38.00 per share with sales at prices above $38.00 per share. Instead, the Court should use either FIFO, which is a method accepted in this Circuit and District, or evaluate the total alleged aggregate inflation with respect to each movant's transactions. Thus, for example, PABF profited from its sales at inflated prices and those profits should be offset against its losses from purchases at inflated prices without regard for the order of the transactions. That PABF's loss calculations are widely different due to the arbitrary application of LIFO and FIFO supports applying a total alleged aggregate inflation method to determine the relative financial interests of the movants. The total alleged aggregate inflation method will allow the Court to "determine which plaintiff '***has the most to gain from the lawsuit***.'" *Russo v. Finisar Corp.*, No. 5:CV 11-01252-EJD, 2011 WL 5117560, at *3 (N.D. Cal. Oct. 27, 2011) (emphasis added) (quoting *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002)).

The UPR Retirement System also satisfies the typicality and adequacy requirements of Rule 23 and is therefore the presumptive lead plaintiff. PABF has not attempted to rebut the presumption in favor of the UPR Retirement System. Therefore, the UPR Retirement System should be appointed lead plaintiff in this litigation. The UPR Retirement System's choice of

counsel—Wolf Popper LLP and Berman Tabacco—have significant experience in securities litigation and should be approved by the Court.

### ARGUMENT

I.   **THE UPR RETIREMENT SYSTEM SHOULD BE APPOINTED LEAD PLAINTIFF**

A.   **This Court Should Evaluate the Movants' Financial Interests on the Basis of *Dura* and Exclude Pre-Corrective Disclosure Losses from the Calculation**

PABF recognizes that when considering motions for appointment as lead plaintiff, "courts in this District … have modified the traditional LIFO analysis to account for the Supreme Court's ruling in *Dura*" to assess financial interest, and that under *Dura*, "where a complaint alleges just one corrective disclosure, only those who held [ ] stock through that date were harmed by the Defendants' alleged fraud. . . . In such cases, courts considering motions to appoint lead plaintiff have refused to consider losses prior to the alleged disclosure." ECF No. 63 (PABF Opp.) at 3 (citations and internal quotation marks omitted); *see also* ECF No. 43 (PABF Mot.) at 6. Accordingly, a Court evaluating the financial interests of lead plaintiff movants in a case like this where only one corrective disclosure has been alleged should eliminate all stock price decline from the purchase price to the price immediately before the corrective disclosure to be consistent with *Dura*. *See Mehedi v. View, Inc.*, No. 21-CV-06374-BLF, 2022 WL 377406, at *5-6 (N.D. Cal. Feb. 8, 2022); ECF No. 62 (UPRRS Opp.) at 5-7. This *Dura* approach attempts to estimate recoverable losses, as opposed to economic losses, based on the allegations in the complaint by eliminating losses that are not alleged to be linked to the alleged fraud. *View*, 2022 WL 377406, at *5-6. The Ninth Circuit recently approved this approach in *Sonthalia*, 2022 WL 3445815, refusing to grant a writ of mandamus from Judge Freeman's decision in *View*.

PABF purchased 8,587 shares of its 19,112 shares of Twist common stock acquired during the Class Period at prices between $110 and $130.13 per share, significantly more than the $38.00 per share closing price of Twist common stock immediately before the single alleged corrective disclosure. Using PABF's higher purchase prices exaggerates PABF's financial interest by hundreds of thousands of dollars. As stated by Judge Freeman, this method—which PABF refers to as *Dura* adjusted LIFO—"takes into account some losses that likely have nothing to do with the

alleged fraud" and "may still inflate the financial interest a party actually has in the litigation." *View*, 2022 WL 377406, at \*5-6. PABF's method is the exact kind of calculation that Judge Freeman rejected in *View*, a decision that the Ninth Circuit subsequently approved, holding that "when the defendant's stock price had already plummeted before the corrective disclosure, the district court could permissibly choose an accounting methodology that excluded earlier stock depreciation that may not have been tied to the alleged fraud." *Sonthalia*, 2022 WL 3445815, at \*1 (internal quotation marks omitted). In this case, similar to *View*, the price of Twist common stock declined significantly before the alleged corrective disclosure, and the decline is not alleged to be related to the revelation of the Defendants' alleged fraud. *See View*, 2022 WL 377406, at \*8. The Court should thus exclude the movants' pre-corrective disclosure losses from the financial interest calculation by capping each movant's purchase price at $38.00 per share.[2]

PABF argues that "[c]onsistent with Ninth Circuit precedent, this Court and others in this District equate financial interest in the litigation with financial loss." ECF No. 63 (PABF Opp.) at 3. PABF is incorrect.[3] First, the Ninth Circuit recently approved of a *Dura* recoverable loss analysis in *Sonthalia*, 2022 WL 3445815, when it refused to grant a writ of mandamus from Judge Freeman's decision in *View*. Second, as Judge Freeman noted in *View*, [c]ourts in this district have "used a variety of approaches for calculating losses … Generally … (1) those based on actual economic losses suffered []—i.e., net losses disregarding the possibility of recovery—and (2) those based on potential recovery." 2022 WL 377406, at \*4. Importantly, Courts in this District will use

[2] The UPR Retirement System's arguments concerning the calculation of the movants' financial interest are based on the allegations of the operative Complaint and are without prejudice to the right of the lead plaintiff to add allegations to an amended complaint. However, at the lead plaintiff stage, the Court must evaluate the movants' financial interests on the basis of the operative complaint. In fact, Local Civil Rule 3-7(c) requires lead plaintiff movants to certify at the time of their motion that they have read the complaint, and whether they adopt its allegations or intend to assert additional allegations.

[3] The decisions that PABF relies upon to argue that "loss" is equated with "economic" loss do not require the Court to analyze only economic loss. The decisions only discuss "loss," and do not discuss the difference between economic market loss and potential recoverable loss or whether one method or the other is the appropriate. *See Cavanaugh*, 306 F.3d at 732; *Abrams v. Intuitive Surgical, Inc.*, No. 5:13-cv-01920-EJD, 2013 WL 6070031, at \*2 (N.D. Cal. Nov. 18, 2013); *In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-0856 MMC, 2008 WL 2220601, at \*1 (N.D. Cal. May 27, 2008); *Monachelli v. Hortonworks, Inc.,* No. 16-cv-00980-SI 2016 WL 3078867, at \*2 (N.D. Cal. June 1, 2016).

economic loss analyses (*i.e.*, including pre-corrective disclosure losses or using movants' purchase prices to calculate losses) at the lead plaintiff stage when there are multiple alleged corrective disclosures. *See In re Lyft Sec. Litig.*, No. 19-CV-02690-HSG, 2020 WL 1043628, at *4 (N.D. Cal. Mar. 4, 2020) ("The economic loss method most accurately determines the greatest financial interest on the facts presented here. The complaints filed in both actions allege that a series of disclosures…"). However, when, as is the case here, the complaint alleges only a single corrective disclosure at the end of the class period, courts in this District determining financial interest in the context of a lead plaintiff motion have examined movants' recoverable losses and excluded economic losses that occurred prior to the alleged corrective disclosure and are not alleged to be related to the fraud. *See Sonthalia*, 2022 WL 3445815, at *1; *View*, 2022 WL 377406, at *5 (distinguishing *View*, which alleged a single corrective disclosure, from authority cited by a movant in which multiple alleged corrective disclosures were alleged); *Hurst v. Enphase Energy*, No. 20-cv-04036-BLF, 2020 WL 7025085, at *4 (N.D. Cal. Nov. 30, 2020) ("the Court is satisfied that the recoverable loss method is the most appropriate method to apply here in appointing lead plaintiff. While loss causation in some securities cases can prove onerous, for example where there are multiple partial corrective disclosures over a long period of time, such is not the case here. Plaintiffs allege a single, discrete, corrective disclosure"); *Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286, at *6 (N.D. Cal. May 13, 2016) ("When a single disclosure reveals a purported fraud, . . . the retained shares method is more accurate than LIFO, net loss, and other economic loss methods because it excludes losses incurred during the class period that are likely attributable to normal market fluctuations rather than fraud.").

B.    **Because LIFO Exaggerates PABF's Financial Interest, the Court Should Use Total Alleged Aggregate Inflation or FIFO to Determine the Largest Financial Interest**

PABF argues that when evaluating the movants' financial interests, the Court should use LIFO to match Class Period transactions and account for the value of shares retained at the end of the Class Period. ECF No. 63 (PABF Opp.) at 3. Courts have noted that "[t]he main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price. FIFO . . . may exaggerate losses." *Lewis v.*

*CytoDyn, Inc.*, No. C21-5190 BHS, 2021 WL 3709291, at *4 (W.D. Wash. Aug. 19, 2021), *reconsideration denied sub nom. Courter v. Cytodyn, Inc.*, No. C21-5190 BHS, 2021 WL 4989446 (W.D. Wash. Oct. 27, 2021). This concern arises if class period sales are netted against pre-class period purchases.

Here, neither PABF nor the UPR Retirement System have pre-Class Period purchases of Twist common stock. ECF Nos. 26-4 (UPRRS Loss Chart); 43-4 (PABF Loss Chart). And in this case, LIFO exaggerates PABF's losses. PABF's own calculations show that it purportedly suffered an out-of-pocket loss, without removing pre-corrective disclosure losses, of $341,760 calculated using FIFO, and $814,517 calculated using LIFO, a 138% increase. ECF No. 43-4. Using *Dura* and removing pre-corrective disclosure losses (as the UPR Retirement System did in its opposition brief) also evidences that LIFO exaggerates PABF's financial interest: PABF has a financial interest of $87,477 using FIFO and $124,276 using LIFO, a 42% increase. ECF No. 62-2. The UPR Retirement System's financial interest is the same under FIFO or LIFO—$113,859—when pre-corrective disclosure losses are excluded.

LIFO exaggerates PABF's financial interest because PABF sold 4,472 shares of Twist common stock in August 2022 at prices between $40.57 and $53.62 per share. Using LIFO, those sales offset purchases of 4,472 shares by PABF in May 2022 at prices between $28.60 per share and $31.36 per share and include in the value of PABF's retained shares the Twist common stock that PABF purchased earlier in the Class Period at prices between $110.00 and $130.13 per share. Using the purchase price and LIFO, as PABF does, inflates the value of PABF's retained shares by as much as $101.53 per share. Using FIFO, as the UPR Retirement System proposes, would net those August 2022 sales against the earlier Class Period purchases, and calculate the value of PABF's retained shares using the May 2022 purchases at prices between $28.60 per share and $31.36 per share. *See* ECF No. 62-2 at 1. Here, FIFO offsets like-kind sales at inflated prices against purchases at inflated prices. In contrast, LIFO exaggerates PABF's losses by offsetting sales at inflated prices against purchases significantly below $38.00 per share. Accordingly, the Court should not use LIFO because it exaggerates PABF's financial interest.

FIFO is an acceptable method for evaluating losses and damages in securities litigation. This Court recently approved a plan of allocation in a securities class action settlement where the plan of allocation calculated class members' losses using FIFO. *See Sanders v. RealReal, Inc.*, No. 5:19-cv-07797-EJD, 2022 U.S. Dist. LEXIS 134387, at *11 (N.D. Cal. July 28, 2022) (order finding that the "Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members") and Notice of Pendency of Proposed Settlement of Class Action in *RealReal* at 8 (plan of allocation providing that "all purchases and sales shall be matched on a [FIFO] basis in chronological order.").[4] Courts in this District "ha[ve] accepted calculations of harm under FIFO at the class certification stage and in appointing lead plaintiffs." *In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *6 (N.D. Cal. May 12, 2010) (using FIFO to determine that proposed class representative was typical) (citing *Garber v. Juniper Networks, Inc.*, No. C06-04327 JW, 2006 WL 3365547, at *2 (N.D. Cal. Nov. 20, 2006) (using FIFO to calculate financial interest of lead plaintiff movant)); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, No. C 01-20418-JW, 2004 WL 5326262, at *3 (N.D. Cal. May 27, 2004) ("Plaintiffs seek damages consistent with the [FIFO] accounting method, which has been established as a legitimate method for computing losses or gains from stock purchases or sales."); *see also Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009) (using FIFO to calculate financial interest of lead plaintiff movants).

Further, the concerns of inflating losses that sometimes occurs with FIFO are not present here. Therefore, the Court can use FIFO to assess the movants' financial interests. For example, Judge Jed S. Rakoff of the Southern District of New York recently used FIFO over LIFO to determine post-trial damages when there were no pre-class-period purchases and the concern of inflation of losses was not present:

> *Since the concerns that often lead courts to select a LIFO approach in securities class actions are not here implicated, the Court believes it appropriate to select a FIFO approach* for two reasons. First, *the FIFO approach more accurately matches generally accepted accounting practices, as well as the Government's*

---

[4] Notice of Pendency and Proposed Settlement of Class Action, *Sanders v. The RealReal, Inc., et al.*, No. 19-cv-07737 (N.D. Cal.), www.strategicclaims.net/wp-content/uploads/2022/03/TRRLongNoticeClaim.pdf.

***approach to capital gains taxation, so there is a reasonable argument that it should be viewed as the default option when, as here, the particular concerns that a FIFO approach might raise in a securities class action are not present.*** Second, the D&O settlement previously preliminarily approved by this Court provided for FIFO matching, and applying a different methodology to the judgment against Reger would likely lead to an unnecessary degree of administrative complexity.

*Gruber*, 2022 WL 17828609, at *14 (emphasis added) (citations omitted).

In addition, both LIFO and FIFO are inventory accounting metrics and not designed to calculate losses or financial interest for purposes of a lead plaintiff application. The fact that LIFO and FIFO result in widely divergent financial calculations for PABF (under both PABF's economic loss methods (ECF No. 43-4) and the UPR Retirement System's *Dura* recoverable loss method (ECF No. 62-2 at 1-4)), supports the conclusion that neither LIFO nor FIFO may be appropriate to use in this case. Instead, the Court should look at the total alleged aggregate inflation present in each movant's transactions. For example, in *Gruber*, the parties and Judge Rakoff agreed that "the selection of FIFO versus LIFO matters far less than a requirement that class members' losses and gains be aggregated across all transactions." 2022 WL 17828609, at *14; *see also id.* at *13 ("The parties likewise agree (as does the Court) that class-members' inflation-related losses and gains must be aggregated across all class period transactions (as opposed to simple buy-sell pairs), such that a class member will only be awarded damages if she suffered net inflation-related losses over the course of all her class period transactions."). The Court here can "aggregate[s] inflation-related gains and losses across class members' transactions" by calculating the total of a movant's purchases above $30.43 per share (the closing price on November 15, 2022) or $25.94 per share (the 90-day lookback price), capped at $38.00 per share (the price of Twist common stock immediately before the corrective disclosure), and subtract from that the inflated profits realized from a movant's sales above $30.43 per share or $25.94 and capped at $38.00 (representing the movants profit from the sale of common stock inflated by the alleged fraud). Thus, each share purchased by both movants would have an inflated loss and each share sold by the movants would have an inflated profit, without an arbitrary matching of shares.

**C.** **The UPR Retirement System is the Presumptive Most Adequate Plaintiff and Should be Appointed Lead Plaintiff**

The UPR Retirement System has the largest financial interest in the relief sought by the Class. Using a *Dura* loss calculation to assess the movants' financial interests, which eliminates pre-corrective disclosure losses, and accounting for retained shares using FIFO (which is more appropriate than LIFO to avoid exaggerating losses due to early Class Period purchases), the UPR Retirement System has the largest financial interest of an estimated loss of $113,859, compared to PABF's estimated loss of $87,477. ECF No. 62-2 at 1-2. Using the total alleged aggregate inflation method to assess the movants' financial interests, the UPR Retirement System still has the largest financial interest in the relief sought by the Class, with a financial interest of $66,137 (using $30.43 per share) or $113,859 (using $25.94 per share), compared to PABF's financial interest of $38,243 (using $30.43) or $87,477 (using $25.94). ECF No. 62-2, at 9-10. The movants' financial interests under this method, using $25.94, are identical to their financial interests when using FIFO.

The UPR Retirement System also satisfies Rule 23's typicality and adequacy requirements. The UPR Retirement System is typical because it purchased Twist common stock at prices artificially inflated as a result of Defendants' alleged misrepresentations and was damaged upon the disclosure of the truth regarding those misrepresentations. The UPR Retirement System is adequate because its claims are not antagonistic or in conflict with those of the Class, it is not subject to any unique defenses, and it has retained counsel experienced in securities litigation.

Because the UPR Retirement System has the largest financial interest in the relief sought by the Class, and satisfies the adequacy and typicality requirements of Rule 23, the UPR Retirement System is entitled to the presumption as the most adequate plaintiff. The presumption can only be rebutted by proof that the plaintiff "will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such evidence has been presented.

The UPR Retirement System should therefore be appointed the lead plaintiff.

## II.    THE UPR RETIREMENT SYSTEM'S CHOICE OF COUNSEL SHOULD BE APPROVED

The UPR Retirement System has selected Wolf Popper to serve as Lead Counsel and Berman Tabacco to serve as Liaison Counsel. Under the PSLRA, the lead plaintiff has the right, subject to court approval, to "select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v). " A court should only disturb the lead plaintiff's counsel choice if it is necessary to protect the interests of the class." *Leventhal v. Chegg, Inc.*, No. 5:21-CV-09953-EJD, 2022 WL 4099454, at *4 (N.D. Cal. Sept. 7, 2022) (citation omitted).

As stated in the UPR Retirement System's Motion, Wolf Popper and Berman Tabacco are highly experienced in the area of securities litigation and class actions, having successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, including a jury trial that they prosecuted together in July 2017. *See* ECF Nos. 26 (UPRRS Mot.) at 9-10, 26-6 (Wolf Popper Resume), 26-7 (Berman Tabacco Resume); *MAZ Partners LP v. PHC, Inc.*, No. 11-cv-11049 (D. Mass.). The Court should approve the UPR Retirement System's selection of counsel.

## CONCLUSION

For the foregoing reasons, the UPR Retirement System respectfully requests the Court: (1) appoint the UPR Retirement System as lead plaintiff on behalf of the proposed Class; and (2) approve its selection of Wolf Popper as Lead Counsel and Berman Tabacco as Liaison Counsel for the proposed Class.

///

///

///

DATED: March 3, 2023

Respectfully submitted,

**BERMAN TABACCO**

By:    */s/ Nicole Lavallee*
           Nicole Lavallee

Alexander S. Vahdat
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
         avahdat@bermantabacco.com

*Proposed Liaison Counsel for the Class*

Joshua W. Ruthizer (*Admitted Pro Hac Vice*)
**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 459-2093
Email: jruthizer@wolfpopper.com

*Counsel for Movant the University of Puerto Rico Retirement System and Proposed Lead Counsel for the Class*