**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
555 12th Street, Suite 1600
Oakland, California 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

*Counsel for Proposed Lead Plaintiff*
*Policemen's Annuity and Benefit Fund of Chicago,*
*and Proposed Lead Counsel for the Class*

[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY JOSEPH PETERS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN,<br><br>Defendants. | Case No. 5:22-cv-08168-EJD<br><br><u>CLASS ACTION</u><br>**POLICEMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>Date: July 20, 2023<br>Time: 9:00 a.m.<br>Courtroom: 4—5th Floor<br>Judge: Hon. Edward J. Davila |

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION
CASE NO. 5:22-CV-08168-EJD

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ii

I.    PRELIMINARY STATEMENT ........................................................................................ 1

II.   ARGUMENT ..................................................................................................................... 4

    A.    PABF Is the Presumptive Lead Plaintiff............................................................... 4

    B.    UPR's Gamesmanship Should Not Be Countenanced........................................... 6

    C.    PABF Has The Largest Financial Interest Under *View* ...................................... 10

    D.    UPR's "Total Alleged Inflation" Method Is Unsupported .................................. 12

    E.    PABF Still Has The Largest Financial Interest Even When Crediting UPR's Arguments........................................................................................................... 13

    F.    The Presumption Has Not Been Rebutted .......................................................... 14

III.  CONCLUSION................................................................................................................ 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alkhoury v. Lululemon Athletica, Inc.*,
2013 WL 5496171 (S.D.N.Y. Oct. 1, 2013)...................................................................13

*Bodri v. Gopro, Inc.*,
2016 WL 1718217 (N.D. Cal. Apr. 28, 2016)................................................1, 2, 8, 10

*Borenstein v. Finova Group Inc.*,
2000 WL 34524743 (D. Ariz. Aug. 30, 2000)...................................................................1, 9

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
2021 WL 396343 (S.D.N.Y. Feb. 4, 2021).............................................................9

*Cook v. Allergn PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)...............................................................9

*Das v. Unity Software Inc.*,
2023 WL 1927739 (N.D. Cal. Feb. 10, 2023)........................................................4, 10

*Dura Pharma., Inc. v. Broudo*,
125 S. Ct. 1627 (2005)..........................................................................7

*Fialkov v. Celladon Corp.*,
2015 WL 11658717 (S.D. Cal. Dec. 9, 2015) ...........................................................10, 11

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...........................................................................13

*In re Elan Corp. Sec. Litig.*,
2009 WL 1321167 (S.D.N.Y. May 11, 2009) ...............................................................13

*In re Fastly, Inc. Sec. Litig.*,
2021 WL 493386 (N.D. Cal. Feb. 10, 2021) ...............................................................11

*In re Paysafe Ltd.*,
2022 WL 1471122 (S.D.N.Y. May 10, 2022) .........................................................10

*In re Wrap Techs., Inc. Sec. Exch. Act Litig.*,
2021 WL 71433 (C.D. Cal. Jan 7, 2021)..................................................................8

*In re: Sonthalia*,
2022 WL 3445815 (9th Cir. 2022) ...........................................................................12

*Jaszczyszyn v. SunPower Corp.*,
2022 WL 10208559 (N.D. Cal. Oct. 13, 2022) .........................................................12

*Leventhal v. Chegg, Inc.*,
  2022 WL 4099454 (N.D. Cal. Sept. 7, 2022) ...............................................................2, 4, 6, 10

*Markette v. XOMA Corp.*,
  2016 WL 2902286 (N.D. Cal. May 13, 2016) ............................................................................11

*Marquez v. Bright Health Group, Inc.*,
  2022 WL 1314812 (E.D.N.Y. Apr. 26, 2022) ........................................................................9, 10

*Mehedi v. View, Inc.*,
  2022 WL 377406 (N.D. Cal. Feb. 8, 2022) ..........................................................................2, 10, 11

*Miller v. Dyadic Int'l, Inc.*,
  2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) .............................................................................9

*Nicolow v. Hewlett Packard Co.*,
  2013 WL 792642 (N.D. Cal. Mar. 4, 2013)............................................................................8, 10

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
  2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007)........................................................................4, 13

*Sallustro v. CannaVest Corp.*,
  93 F. Supp. 3d 265 (S.D.N.Y. 2015) ................................................................................ *passim*

*Scheller v. Nutanix, Inc.*,
  2021 WL 2410832 (N.D. Cal. June 10, 2021)............................................................................10

*Simco v. Aegean Marine Petroleum Network Inc.*,
  2018 WL 11226076 (S.D.N.Y. Oct. 30, 2018)...........................................................................12

*Weisz v. Calpine Corp.*,
  2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) .........................................................................10

**Statutes**

15 U.S.C. § 78u.....................................................................................................................6, 14

**Other Authorities**

1995 U.S.C.C.A.N. 730 (1995)........................................................................................... 3, 9

H.R. Conf. Rep. 104–369 (1995) ........................................................................................ 3, 9

PABF respectfully submits this reply in further support of its motion for appointment as Lead Plaintiff and approval of selection of counsel.  *See* ECF No. 43.[1]

## I.    PRELIMINARY STATEMENT

There is no dispute that PABF has the largest financial interest in this litigation under ***every*** methodology adopted by ***all eight*** movants in their ***initial papers*** and that has been widely accepted by this Court and others in this District and throughout the Country.  PABF: (1) incurred, by far, the largest loss under LIFO and FIFO accounting; (2) has the largest recoverable loss when considering the Supreme Court's decision in *Dura*, (under LIFO and FIFO); (3) purchased the most total shares; (4) purchased the most net shares; and (5) expended the most net funds to purchase those shares.  *See* ECF No. 63 at 3–5. There is also no dispute that PABF is a perfectly typical and adequate class representative, having recovered hundreds of millions of dollars for absent class members in securities class actions and selected a preeminent law firm as proposed Lead Counsel, which secured resolutions of roughly $550 million for investors in the past year alone, including in this District.  *See* ECF No. 63 at 5–7.

The only movant to oppose PABF is UPR.[2]  UPR's opposition is not only unpersuasive but represents precisely the type of opportunism that is generally unfavored when appointing a Lead Plaintiff. The only way for UPR to advance its application is to contradict the positions it adopted in its motion and then advocate against its own pecuniary interests by decreasing its own loss, which calls into question its fitness to serve as a class representative in this case.  *See Bodri v. Gopro, Inc*., 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (rejecting movant that abandoned positions in motion "[o]nly after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare"); *Borenstein v. Finova Group Inc.*, 2000 WL 34524743, at *8 (D. Ariz. Aug. 30, 2000) (rejecting movant that took positions against interests of the class and "pose[d] a significant risk that the complete interests of all class members would not be fairly and adequately protected").

---

[1] Capitalized terms are defined in PABF's initial and opposition briefs (*see* ECF Nos. 43, 63) and references to "ECF No." are to the docket in this case, unless otherwise indicated.

[2] All other movants filed notices of non-opposition or withdrew.  *See* ECF Nos. 52, 56–58, 60, 65.

Specifically, in UPR's motion filed on February 10, 2023, it claimed it "possesses the largest financial interest" because UPR "suffered a loss of $158,704" based on its purchases of "Twist common stock . . . at a total cost of $435,229 and at an average price of $40.94 per share." ECF No. 26 at 7–8. The *only* legal authority on which UPR relied for its financial interest methodology was this Court's decision in *Leventhal v. Chegg, Inc.*, 2022 WL 4099454, at *2 (N.D. Cal. Sept. 7, 2022) (Davila, J.). *See* ECF No. 26 at 7–9.

Then, *two weeks after* the motions were filed and realizing that PABF incurred a loss more than *five times larger* than UPR under this Court's jurisprudence, UPR abandoned the loss methodology it had endorsed in its motion, rejected *Chegg*, and now urges the Court to calculate the loss using an outlier method that is supported by essentially one court only, *Mehedi v. View, Inc.*, 2022 WL 377406, at *5 (N.D. Cal. Feb. 8, 2022) (Freeman, J.), and which conflicts with the jurisprudence applied by this Court and virtually all courts throughout the country. *See* ECF No. 62 at 6–8. And while *View* is wrong for reasons detailed below, even under *View* when correctly applied, *PABF has the largest loss*.

More specifically, the only way UPR can assert a larger loss than PABF is by modifying *View* in two material respects, neither of which are supported by *View* itself and are contradicted by UPR's own cited authority. *See* ECF No. 62 at 2, 7. First, UPR dispenses with *View*'s application of LIFO accounting—which *View* references over two dozen times—to apply FIFO, which *View* never even mentions and virtually every other court in the country has rejected as less reliable than LIFO. *See Gopro, Inc.*, 2016 WL 1718217, at *3 ("[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a 'last in, first out ('LIFO') methodology'"). Second, UPR contorts the central premise of *View*, which is to "use[] the stock price just before the Corrective Disclosure" and disregard the actual purchase price, and apply the actual purchase price in limited circumstances but only when it serves UPR's interests. *See View*, 2022 WL 377406, at *6. In other words, while *View* states that the actual purchase price should not be used, UPR uses the purchase price selectively. Only when *both* modifications are applied can UPR claim a larger loss than PABF. If *View* is out in left field, which it is, UPR is outside the stadium.

UPR's sudden about-face and reliance on *View* is not only directly at odds with its motion but with **all ten** Lead Plaintiff applications it has filed over the past **ten years** in which it calculated a loss amount and used the actual purchase price of the stock. *See* Weaver Decl. Exs. 1 – 12. In fact, UPR specifically recognized in multiple prior cases that the "*Dura* LIFO methodology is the most appropriate for evaluating the financial interests of competing movants for purposes of selecting a lead plaintiff." *See* Weaver Decl. Exs. 1 at 2, 13 at 2 n.3. Under *Dura* LIFO, PABF's loss is **413% larger** than UPR's. ECF No. 63 at 4. Significantly, UPR's newfound opportunistic advocacy for *View*'s unique methodology **reduces its own financial interest** by approximately 28% (to $113,859, *see* ECF No. 62 at 2) which raises questions as to whether it has relinquished control of the litigation to its lawyers. This is the exact concern that the PSLRA was enacted to prevent. *See* H.R. Conf. Rep. 104–369, at *31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730 (1995) (PSLRA enacted to prevent "the manipulation by class action lawyers of the clients whom they purportedly represent").

UPR's gamesmanship aside, a method virtually indiscernible from the one adopted in *View* has been rejected by one of its **own counsel** in this case. This Court has never adopted such a method over opposition in its eighteen Lead Plaintiff decisions issued over the course of nearly twelve years and issued three of those decisions (including *Chegg*) after *View*. Nor has virtually any other court in the country, in large measure, because *View* ignores the actual purchase price of the stock which "would work a radical change in the law," "leads to absurd results," and "is inconsistent with the [PSLRA's] statutory scheme and with *Dura* itself." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 276–77 (S.D.N.Y. 2015).

In an implicit concession that it lacks the largest financial interest even under *View*, UPR then invents yet another new loss method in which it again urges the Court to disregard actual purchase price and simply "compar[e] the total amount of alleged inflation in their retained shares." ECF No. 62 at 9–10. There is no information in the complaint or the record about "the total amount of alleged inflation" (*id.*)—which is typically the subject of expert analysis later in the litigation—UPR fails to cite a single case that ever applied the method, and counsel for PABF has never seen this method adopted in over twenty years of experience in securities class action litigation.

Even accepting *all* UPR's arguments with respect to the calculation of the movants' losses, PABF would *still* have a larger financial interest than UPR given the *de minimis* difference in losses—approximately $1,400 to $32,000 (depending on the method, *see* ECF No. 62 at 8–10)—and the remaining financial interest factors this Court identified in *Chegg* overwhelmingly favor PABF, having purchased far more shares, net shares, and expended more net funds than did UPR (and of course, incurred a far larger loss under every well-accepted method). *See* ECF No. 63 at 5; *see also Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (negligible difference in losses "cannot dictate such an important result" and appointing movant that claimed $40,000 less in loss than competing movant but purchased more shares, net shares, and expended more net funds).

## II.    ARGUMENT

### A.    PABF Is the Presumptive Lead Plaintiff

PABF indisputably has the "largest financial interest" in this litigation under *every* methodology put forward by *every* movant in their motions and that this Court has explicitly adopted. As this Court held, when evaluating financial interest, "[t]he Court compares: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period.'" *Chegg*, 2022 WL 4099454, at *2. With respect to the calculation of loss, certain courts look to the total amount of alleged loss while others have modified the analysis to account for the Supreme Court's holding in *Dura*. *See* ECF No. 63 at 2–3. And almost invariably, courts apply LIFO accounting (as opposed to FIFO) to determine the amount of loss, just as this Court has in several cases, including one decided just three weeks ago. *See id.*; *Chegg*, 2022 WL 4099454, at *2 (movant had largest financial interest based on its "total loss [] using the last-in, first-out ("LIFO") accounting method"); *Das v. Unity Software Inc.*, 2023 WL 1927739, at *2 (N.D. Cal. Feb. 10, 2023) (Davila, J.) (movant had largest financial interest given "losses incurred . . . under a last-in, first-out ("LIFO") basis").

When looking to these factors, PABF: (1) purchased *80%* more shares than UPR, and more than all other movants *combined*; (2) purchased more net shares than UPR and every other movant; (3)

expended *162%* more than UPR to purchase its shares on a net basis, and more than all other movants *combined*; (4) incurred a LIFO loss *five times larger* than UPR and more than all other movants *combined* (*Dura* and non-*Dura*); and (5) under FIFO (non-*Dura*), incurred a loss *five times larger* than UPR and more than all other movants *combined* and (*Dura*) incurred a loss *two times larger* than UPR and far more than every other movant.  *See* ECF No. 63 at 3–4.  No movant attempts to contend that they have a larger financial interest than PABF under these factors as the Court applied them in *Chegg*, consistent with courts around the country.

| | Total Shares Purchased | Net Shares Purchased | Net Expenditures | LIFO Loss (Dura) | Claimed LIFO Loss (non-Dura) | FIFO Loss (Dura) | Claimed FIFO Loss (non-Dura) |
|---|---|---|---|---|---|---|---|
| PABF | 19,112.00 | 11,845.00 | $1,142,437 | $814,517 | $834,761 | $341,760 | $834,761 |
| UPR | 10,630.00 | 10,630.00 | $435,229 | $158,704 | $158,704 | $158,704 | $158,704 |
| Difference | 80% | 11% | 162% | 413% | 426% | 115% | 426% |



**B.    UPR's Gamesmanship Should Not Be Countenanced**

The PSLRA provides for a strict statutory process for the appointment of Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B).  Under the PSLRA, motions for Lead Plaintiff appointment were due on February 10, 2023.  *See* ECF No. 43 at 5–6.  Eight movants filed timely motions on that day, including PABF and UPR.  *See* ECF Nos. 16, 19, 22, 26, 32, 36, 40, 43.  ***Every movant***, including UPR, calculated their loss using the actual purchase price of the shares.  *See* ECF Nos. 16-3, 19-3, 23-3, 26-4, 33-3, 36-3, 40-4, 43-4.  It is important to reiterate that all movants filed their motion on the same day, and thus had no way to know the financial interests of the opposing movants at the time they filed their motions.

In its motion, the ***only*** case that UPR relied on to formulate its financial interest was this Court's decision in *Chegg*.  ECF No. 26 at 7–8.  UPR acknowledged that "[t]his Court has in the past compared '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period.'"  *Id*. at 7 citing *Chegg*.

UPR told the Court that, consistent with *Chegg*, it:

- "believes it possesses the largest financial interest in the relief sought by the class" because it "purchased a total of 10,630 shares of Twist common stock . . . at a ***total cost*** of $435,229 and at an ***average price*** of $40.94 per share" and "suffered a loss of $158,704."  *Id.* at 7–8 (emphasis added);

- "is the 'most adequate plaintiff' pursuant to the PSLRA based on losses of $158,704."  *Id.* at 1;

- "believes that it has the largest financial interest in the relief sought by the Class in this action, with losses suffered from Defendants' misconduct of $158,704."  *Id.* at 3; and

- "UPR['s] [] $158,704 loss related to its investment in Twist common stock provides a sufficient interest in the outcome of this litigation, thus ensuring 'vigorous advocacy.'"  *Id.* at 9.

UPR also showed the Court how it calculated its financial interest based off the actual purchase price and total cost of the stock:

- UPR had five "Purchases" of Twist stock at actual prices per share of: (1) "$43.3021"; (2) "$43.4377"; (3) "$45.2518"; (4) "$32.9413"; and (5) "$33.6701."  ECF No. 26-4 at 2;

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION
CASE NO. 5:22-CV-08168-EJD

- UPR itself certified the accuracy the "Price Per Share" for those "Transactions." ECF No. 26-3 at 1–2;

- UPR's actual total "Cost" of those "Purchases" was: (1) "$107,346"; (2) "$103,382"; (3) "$121,908"; (4) "$45,624"; and (5) "$56,970." ECF No. 26-4 at 2;

- UPR's "Net Funds Expended" was "$435,229." *Id.*; and

- UPR's "Loss Using 90-Day Average Closing Price" was "($158,704)" *Id*.

The financial interest methodology for which UPR advocated in its motion was consistent with its historical practice. In **all ten** Lead Plaintiff applications it has filed over the past **ten years** in which UPR calculated a loss amount, it used the actual purchase price of the stock. *See* Weaver Decl. Exs. 1 – 12. Critically, UPR has even repeatedly adopted the specific *Dura* LIFO methodology that PABF suggests in this case (using the actual purchase price of the stock), describing it as "the most appropriate for evaluating the financial interests of competing movants" citing to *CannaVest* which specifically *rejects* a method like *View* that ignores purchase price. Weaver Decl. Ex. 1 at 2. UPR never suggested that any court should disregard the actual purchase price or total cost of the stock as it does here, but rather, repeatedly adopted the specific financial interest metrics it now urges this Court to disregard:

- "the '*Dura* LIFO' methodology is the most appropriate for evaluating the financial interests of competing movants for purposes of selecting a lead plaintiff. *See, e.g., Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (Gardephe, J.); . . . This approach conforms with the Supreme Court's ruling in *Dura Pharma., Inc. v. Broudo*, 125 S. Ct. 1627 (2005)," Weaver Decl. Ex. 1 at 2.;

- "Losses were calculated using the *Dura* Last in First Out ('LIFO') method by subtracting the 90 day average share price – post class period – from the amount expended on those shares," Weaver Decl. Ex. 2 at 2.;

- "Courts generally prefer calculating losses under the Dura and last-in, first-out ('Dura LIFO') method of calculating losses in securities fraud actions." *See, e.g., Sallustro v. CannaVest*, 93 F. Supp. 3d 265, 272 n.10 (S.D.N.Y. 2015)," Weaver Decl. Ex. 13 at 2 n.3.; and

- "using the LIFO method of accounting for losses along with a strict interpretation of *Dura*, the losses for the movants are as follows…," Weaver Decl. Ex. 3 at 2 n. 2.

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION
CASE NO. 5:22-CV-08168-EJD

Then, **two weeks** after realizing that UPR lacked the largest financial interest under **every** metric and **every** methodology it adopted in its motion under this Court's precedent, it engaged in a transparent effort to reverse engineer its financial interest so that it could attempt to topple PABF. However, given PABF's vastly superior interest, the only way UPR could do this was to jettison this Court's ruling in *Chegg*, walk-back the representations it made to this Court in its motion and others in prior cases, and advocate for a new, outlier method in *View* that **ignores the actual purchase price and total cost of the shares** and that this Court has **never** adopted over opposition. *See* ECF No. 62 at 6. PABF has been entirely consistent and presented its financial interest under the same metrics in its papers.[3]

Courts in this District and throughout the country reject the precise type of gamesmanship UPR attempts here. *See Gopro*, 2016 WL 1718217, at *3 ("Only after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare . . ., did [one movant] argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology . . . This fact alone counsels in favor of adopting the LIFO methodology, as opposed to the retained shares methodology"); *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (refusing to apply "retained shares calculation" when movant made "no reference" to the method in its motion, "shifting its argument only after [another movant] came forward with larger LIFO losses"); *In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *2 (C.D. Cal. Jan 7, 2021) (refusing to adopt loss methodology that "makes purchase price irrelevant" when "he himself raised the [] calculation

_____

[3] In an attempt to draw an equivalence between a traditional *Dura* analysis and the esoteric method UPR advocates under *View*, UPR states that "[t]his Court should use the *Dura* approach acknowledged by PABF." ECF No. 62 at 7. For purposes of clarity, PABF has a larger loss under *Dura* LIFO and FIFO and there are significant differences between "the *Dura* approach acknowledged by PABF" and the contorted *View* approach that UPR uniquely proposes. *Id.* The primary difference is that PABF's methodologies apply the actual purchase price of the stock, consistent with economic reality, whereas UPR's method assigns an artificial value.

only in opposition and finding [opposing movant] had a greater LIFO loss"); *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *4 (S.D.N.Y. Feb. 4, 2021) ("Presenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline for moving to be appointed Lead Plaintiff has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs"); *CannaVest*, 93 F. Supp. 3d at 276 (refusing to adopt method where "purchase price is irrelevant" given that it was "entirely inconsistent with the traditional calculation method [movant] relied on in his moving brief" and "appears to be a transparent 'attempt to manipulate the size of [movant's] losses"); *Cook v. Allergn PLC*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (rejecting new arguments where movant "used the same methodology as [another movant] in its original moving papers – only to alter its calculation when it learned that [the movant] had a larger loss"); *Marquez v. Bright Health Group*, *Inc.*, 2022 WL 1314812, at *6 (E.D.N.Y. Apr. 26, 2022) ("[C]ourts are especially skeptical of a movant who initially presents one position in their opening brief and switch[es] to another in their opposition after a new movant comes in alleging a greater loss"); *Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *5 (S.D. Fla. Apr. 18, 2008) ("a different rule would 'encourage parties seeking lead plaintiff status to manipulate the size of their financial loss'").

Critically, by belatedly urging the Court to adopt this method, UPR is forced to argue against its own pecuniary interests, which calls into question whether it is sufficiently overseeing the litigation or has relinquished control to its lawyers. Congress enacted the PSLRA to prevent this scenario. *See* H.R. Conf. Rep. 104–369, at *31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730 (1995) (PSLRA enacted to prevent "the manipulation by class action lawyers of the clients whom they purportedly represent"). Specifically, in its motion filed on February 10, 2023, UPR claimed a loss of $158,704 (LIFO/FIFO). *See* ECF No. 26 at 8 n.2. Then, in UPR's search for *any* methodology in which it could possibly concoct a scenario in which it asserts a larger loss than PABF, it is forced to rely in its opposition brief on a misapplication of *View* that ***reduces its own loss by 28%*** from $158,704 to $113,859. *See* ECF Nos. 61 at 1, 62 at 2. UPR's sole purpose appears to be to drastically reduce the financial interest of PABF, but in doing so, risks limiting its own recovery and that of absent class members as well. *See Finova,* 2000 WL 34524743, at *8 (rejecting movant that took positions against interests of the class and "pose[d] a

significant risk that the complete interests of all class members would not be fairly and adequately protected"); *Fialkov v. Celladon Corp.*, 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015) (refusing to adopt method that ignored purchase price of stock because it "prevents a rift between class members who may seek or assert entitlement to a greater amount of damages than those sought by the lead plaintiff"). Crediting UPR's tactics would in the future not only reward the proverbial moving of the goal posts, but also undermine the interests of the putative class that UPR seeks to represent.

### C.    PABF Has The Largest Financial Interest Under *View*

As important, UPR misapplies *View* by slicing and dicing different accounting ideas and then grafting them onto *View*'s methodology so that UPR can arrive at its desired outcome. When *View* is properly applied, PABF's loss is almost ***11% larger*** than UPR's, approximately $142,000 for PABF as compared to roughly $128,000 for UPR. *See* Weaver Decl. Ex. 14. UPR contorts *View* in two significant ways in an attempt to minimize PABF's financial interest.

First, UPR admits that PABF has a larger loss under *View* when LIFO is applied. *See* ECF No. 62-2 at 3–4. As such, UPR is forced to resort to FIFO accounting, which is unsupported by *View* and settled precedent from this Court and others across the country that universally apply LIFO to calculate losses in securities fraud cases. *See View*, 2022 WL 377406, at *1–8 (referencing LIFO 25 times and never mentioning FIFO); *Unity*, 2023 WL 1927739, at *2 (applying LIFO); *Chegg*, 2022 WL 4099454, at *2 (same); *see also Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021) ("Most courts in this district use the LIFO method to calculate a movant's estimated losses"); *Gopro*, 2016 WL 1718217, at *3 ("[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a 'last in, first out ('LIFO') methodology"); *Hewlett Packard*, 2013 WL 792642, at *4 (same); *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *7 (N.D. Cal. Aug. 19, 2002) ("courts have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases"); *In re Paysafe Ltd.*, 2022 WL 1471122, at *5 n.6 (S.D.N.Y. May 10, 2022) ("LIFO is the preferred and most-widely-accepted methodology for calculating movants' losses"); *Bright Health*, 2022 WL 1314812, at *5 ("[T]he overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses"); *CannaVest*, 93 F. Supp. 3d at 270 n.5 (same).

UPR fails to cite a single case that applies FIFO and its assertion that LIFO "exaggerates PABF's asserted financial interest" (ECF No. 62 at 9) is wrong. As courts have repeatedly held, it is FIFO (not LIFO) that may inflate financial interest. UPR's own cited authority recognizes as much. *See* ECF No. 62 at 9 citing *In re Fastly, Inc. Sec. Litig.*, 2021 WL 493386, at *4–5 (N.D. Cal. Feb. 10, 2021) ("The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price, whereas FIFO . . . ignores sales occurring during the class period and hence may exaggerate losses"). *Fastly* specifically explains that "[c]ourts have preferred LIFO and have generally rejected FIFO," and does not even suggest a situation in which FIFO may be more appropriate than LIFO. *Id.* Simply because PABF's loss is larger under LIFO does not mean that it is "exaggerate[d]" (ECF No. 62 at 9) and UPR offers no legal support for the proposition.

Second, after explaining *View*'s methodology and discussing how "Judge Freemen [sic] 'consider[ed] the value of each party's retained stock just before the [c]orrective [d]isclosure and subtract[ed] the party's sale proceeds for that stock . . .,'" UPR then contends that this Court should ***not*** use that value for shares purchased at prices lower than the price before the disclosure. ECF No. 62 at 6–7. This is because, according to UPR, the scenario "was not addressed by Judge Freeman." *Id.* at 7. However, that same scenario occurred before Judge Gilliam in *Markette v. XOMA Corp.*, 2016 WL 2902286 (N.D. Cal. May 13, 2016)—which UPR cites in its brief and is relied upon by Judge Freeman in *View*—and Judge Gilliam did ***not*** adjust the purchase price. *See* Weaver Decl. Ex. 15.

While UPR's improvisations take *View* into the realm of the unprecedented, it is worth noting that *View* itself is an outlier and similar methodologies that ignore actual purchase price have been rejected and heavily criticized by courts as well as one of UPR's ***own counsel*** in this case. The *View* court's primary response to the claim that its approach "has not been consistently applied" is that it "previously adopted this approach in the *Enphase* case," thus essentially agreeing with itself and one other case, *Markette* (which favors PABF). *See View*, 2022 WL 377406, at *7; *see also Celladon Corp.*, 2015 WL 11658717, at *5 (method that "declines to account for the purchase price of shares purchased at the allegedly artificially inflated prices prior to the first corrective disclosure, thereby limiting potential

recovery of class members" "does not appear to be the majority view of financial interest in this district or this circuit"); *CannaVest Corp.*, 93 F. Supp. 3d at 276.  Tellingly, one of UPR's law firms representing it in this case (Berman Tabacco) successfully argued that a similar method that fails to account for the purchase price of the stock:

- was an "unsupported approach to calculate financial interest," *see* Weaver Decl. Ex. 16 at 2;

- "is antithetical to the role [] as a class representative" that would "curtail the class's potential recovery," *id.* at 3;

- "is contrary to the express terms of the PSRLA," *id.* at 8;

- "has been harshly criticized," *id.* at 5; and

- "is [p]remature" and "can only be credibly accomplished with discovery and expert analysis such as an event study which is a statistical regression analysis that examines the effect of an event on a dependent variable, such as a company's stock price," *id.* at 6; *see also Simco v. Aegean Marine Petroleum Network Inc.*, 2018 WL 11226076, at *2–3 (S.D.N.Y. Oct. 30, 2018) (adopting, in part, Berman Tabacco's arguments and finding that "this methodology, which renders purchase price irrelevant, is inconsistent with the statutory scheme and the Supreme Court's reasoning in Dura").[4]

PABF agrees.  There is no good reason to apply *View*.

**D.    UPR's "Total Alleged Inflation" Method Is Unsupported**

Unable to identify a legally supported methodology under which it can claim the largest loss, UPR invents its own.  It suggests that "the Court can also compare apples to apples" (ECF No. 62 at 2) "by comparing the total amount of alleged inflation in their retained shares by matching shares with the

---

[4] UPR's contention that "Judge Freeman's approach was approved by the Ninth Circuit in *Sonthalia*" is wrong.  *See* ECF No. 62 at 6.  *Sonthalia* was a non-precedential order in which the Ninth Circuit simply held that *View*'s approach was not so irrational to warrant "[a] writ of mandamus" which "is a 'drastic and extraordinary remedy reserved for really extraordinary causes.'"  *In re: Sonthalia*, 2022 WL 3445815, at *1–2 (9th Cir. 2022).  Likewise, while *Jaszczyszyn v. SunPower Corp.*, 2022 WL 10208559, at *2 (N.D. Cal. Oct. 13, 2022) applied principles of *Dura*, it did not apply *View*.

---

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION
CASE NO. 5:22-CV-08168-EJD

same levels of inflation." ECF No. 62 at 9. This makes no sense. Suffice it to say that there is no information in the complaint or the record about "the total amount of alleged inflation" (*id.*), which is generally adduced through expert testimony late in the litigation, UPR cites no authority that has ever applied the method and PABF is unaware of any. The method is neither "rational" nor "consistently applied" and as such does not satisfy *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) ("the court may select accounting methods that are both rational and consistently applied").

### E.    PABF Still Has The Largest Financial Interest Even When Crediting UPR's Arguments

Even assuming for the sake of argument that UPR's unique methodologies advanced for the first time on opposition shed any light on the movants' losses, PABF would ***still*** have the largest financial interest given that it purchased, by far, the most shares, net shares, expended the most net funds to purchase its shares, and incurred the largest loss (as calculated under LIFO, FIFO, and *Dura*). *See supra* at 5. The *de minimis* difference in losses between UPR and PABF even when crediting all UPR's contentions like accepting FIFO—approximately $1,400 to $32,000 (depending on the method, *see* ECF No. 62 at 8–10)—does not outweigh the fact that the remaining *Lax* factors this court applied in *Chegg* overwhelmingly favor PABF. To place dispositive weight on the amount of loss in such a scenario would render the remaining three *Lax* factors superfluous and cull this Court's four-factor test into a one-factor test. *See Alkhoury v. Lululemon Athletica, Inc.*, 2013 WL 5496171, at *1 (S.D.N.Y. Oct. 1, 2013) ("negligible difference" in losses "insufficient to outweigh the substantial financial interest of [movant] evidenced by the other factors"); *SafeNet*, 2007 WL 7952453, at *2 (holding that small difference in losses "cannot dictate such an important result" and appointing movant that claimed $40,000 less in loss than competing movant but purchased more shares, net shares, and expended more funds); *In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at *1 (S.D.N.Y. May 11, 2009) (appointing movant with lesser claimed loss over another movant explaining approximate $21,000 difference in losses "basically equal").

### F.    The Presumption Has Not Been Rebutted

To rebut the presumption that PABF is the most adequate plaintiff, an opposing movant must submit "proof" that PABF will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  No movant submitted any such proof, which ends the inquiry.  PABF's loss of $834,761 (LIFO) / $814,517 (*Dura* LIFO)—a loss more than five times greater than UPR's—assures that PABF will actively oversee the litigation and ensures that this case will be prosecuted in the best interests of the putative class.  *See* ECF No. 63 at 4.  The excellent results that PABF achieved on behalf of investors in securities litigation further confirm that PABF is a paradigmatic Lead Plaintiff under the PSLRA and is more than adequate to represent the purported class here.  *Id.* at 6.  And PABF retained one of the foremost securities class action law firms in the country as its proposed Lead Counsel, having achieved well over $1 billion in recoveries for investors in securities class actions, including hundreds of millions of dollars in the past year alone, including in this District, thus ensuring that the purported class will receive the best possible representation in this case.  *See* ECF Nos. 43-5, 63 at 6–7.

## III.    CONCLUSION

For the foregoing reasons, PABF respectfully requests that the Court appoint it as Lead Plaintiff, approve its selection of BFA as Lead Counsel for the Class, and grant such other relief as the Court may deem just and proper.

DATED: March 3, 2023                    Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

  */s/ Lesley E. Weaver*
Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
555 12th Street, Suite 1600
Oakland, California 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

Javier Bleichmar (admitted *pro hac vice*)
jbleichmar@bfalaw.com
Nancy A. Kulesa (admitted *pro hac vice*)
nkulesa@bfalaw.com
7 Times Square, 27th Floor

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION
CASE NO. 5:22-CV-08168-EJD

New York, NY 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960

Ross Shikowitz (admitted *pro hac vice*)
rshikowitz@bfalaw.com
75 Virginia Road
White Plains, NY 10603
Telephone: (212) 789-1349
Facsimile: (212) 205-3960

*Counsel for Proposed Lead Plaintiff*
*Policemen's Annuity and Benefit Fund of*
*Chicago, and Proposed Lead Counsel for the*
*Class*

John A. Kehoe (admitted *pro hac vice*)
**KEHOE LAW FIRM, P.C.**
41 Madison Avenue, 31st Floor
New York, NY 10010
Telephone: (215) 792-6676
jkehoe@kehoelawfirm.com

*Additional Counsel for Proposed Lead*
*Plaintiff Policemen's Annuity and Benefit*
*Fund of Chicago*

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION
CASE NO. 5:22-CV-08168-EJD

15

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the court's CM/ECF system.

*/s/ Lesley E. Weaver*
Lesley E. Weaver

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION
CASE NO. 5:22-CV-08168-EJD

16