# WEAVER DECLARATION EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| WARREN GANUES and DOMINIC VARRIALE, on Behalf of Themselves and All Others Similarly Situated,<br><br>   Plaintiffs,<br><br>    v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. MCMAHON, and GEORGE A. BARRIOS,<br><br>   Defendants. | Case No. 5:14-cv-01070-AWT<br><br><br>Dated: October 14, 2014 |
| CURTIS SWANSON, on Behalf of Himself and All Others Similarly Situated,<br><br>   Plaintiff,<br><br>    v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. MCMAHON, and GEORGE A. BARRIOS,<br><br>   Defendants. | Case No. 3:14-cv-01228-JCH |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION BY UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF <u>LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  ARGUMENT .................................................................................................................2

     A.   UPR Has The Largest Financial Interest Of Any Lead Plaintiff Movant Who
          Also Satisfies Fed.R.Civ.P. 23 ................................................................................2

     B.   The Competing Movants Do Not Satisfy Rule 23's Typicality
          and/or Adequacy Requirements ...............................................................................3

          1.   The WWE Group Does Not Have Authority or Standing
               to Bring The Claims ......................................................................................4

          2.   The WWE Group Is An Impermissible Group ...........................................8

          3.   WWE Group's Multiple Options Trades Makes It Atypical .....................10

          4.   WWE Group's Trading Makes It Atypical .................................................10

          5.   Adnan Shefeeq Is Not An Adequate Lead Plaintiff ...................................11

     C.   UPR Is An Institutional Investor, Which Satisfies Congressional Intent ..............12

     D.   The Other Movants Have Less Of A Financial Interest Than UPR .......................13

III. CONCLUSION ............................................................................................................13

**TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Amchem Products, Inc. v. Windsor*,
        521 U.S. 591 (1997)..............................................................................................................3

*Andrada v. Atherogenics, Inc.*,
        05-00061, 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 18, 2005) ...................................9

*Burch v. SLM Corp.*,
        08 Civ. 1029 (WHP), 2008 U.S. Dist. LEXIS 55423 (S.D.N.Y. July 23, 2008).............6, 8

*Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998)  .....................................................................................4, 11

*In re Bank One Shareholders Class Actions*,
        96 F. Supp. 2d 780 (N.D. Ill. 2000) ...................................................................................10

*In re Cendant Corp. Litig.*,
        264 F.3d 201 (3d Cir. 2001)................................................................................................12

*In re Crayfish Co. Sec. Litig.*,
        No. 00-6766, 2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. June 6, 2002) ...............................3

*In re eSpeed, Inc. Sec. Litig.*,
        232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................................5, 6

*In re Gemstar-TV Guide Int'l., Sec. Litig.*,
        209 F.R.D. 447 (C.D. Cal. 2002)  ........................................................................................7

*In re MicroStrategy Inc. Sec. Litig.*,
        110 F. Supp. 2d 427 (E.D. Va. 2000) ..................................................................................10

*In re Olsten Corp. Sec. Litig.*,
        3 F. Supp. 2d 286 (E.D.N.Y. 1998) ......................................................................................2

*In re Oxford Health Plans, Inc. Sec. Litig.*,
        182 F.R.D 42 (S.D.N.Y. 1998) ...........................................................................................11

*In re Safeguard Scientifics*,
        216 F.R.D. 577 (E.D. Pa. 2003)..........................................................................................10

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
        209 F.R.D. 353 (S.D.N.Y. 2002) ..........................................................................................6

*In re UBS Auction Rate Sec. Litig.*,
   No. 08-2967, 2008 U.S. Dist. LEXIS 56016 (S.D.N.Y. July 16, 2008) ............................11

*In re Vecco Instruments, Inc. Sec. Litig.*,
   233 F.R.D. 330 (S.D.N.Y. 2005) .....................................................................................7

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) .......................................................................................6

*Margolis v. Caterpillar, Inc.*,
   815 F. Supp. 1150 (C.D. Ill. 1991) .................................................................................9

*Olsen v. New York Community Bancorp, Inc.*,
   233 F.R.D. 101 (E.D.N.Y. 2005).....................................................................................11

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) .....................................................................................12

*Piven v. Sykes Enters. Inc.*,
   137 F. Supp. 3d 1295 (M.D. Fla. 2000) ...........................................................................7

*Shi v. Sina Corp.*,
   No. 05-2154, 2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005) ........................11, 12

*Smajlaj v. Brocade Communications Systems Inc.*,
   No. C 05-02042 CRB, 2006 U.S. Dist. LEXIS 97618 (N.D. Cal. Jan. 12, 2006) ..............8

*Weikel v. Tower Semiconductor, Ltd.*,
   183 F.R.D. 377 (D.N.J. 1998)...........................................................................................9

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) .....................................................................................5

**Statutes and Rules**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .......................................................................................2

Fed. R. Civ. P. 23 ............................................................................................ *passim*

Movant, the University of Puerto Rico Retirement System ("UPR"), by its counsel, respectfully submits this Memorandum in Opposition to the competing motions for consolidation, appointment as lead plaintiff and approval of selection of lead counsel and in further support of UPR's motion.  Five motions were filed with all movants agreeing that the Actions should be consolidated.[1]

## I.      PRELIMINARY STATEMENT

UPR is the presumptive lead plaintiff because it is has the largest financial interest in the litigation among the movants for lead plaintiff which also satisfies the requirements of Fed.R.Civ.P. 23.  Moreover, UPR is an institutional investor, which are particularly favored for appointment as lead plaintiff because they are the type of investor which Congress, when enacting the PSLRA, sought to have selected as lead plaintiff, as the legislative intent of the PSLRA demonstrates.  For these reasons, UPR should be appointed lead plaintiff.

The competing lead plaintiff movants either have less of a financial interest in the litigation than UPR or have significant questions about their applications which make them atypical of the Class they seek to represent and/or they are unable to otherwise satisfy the Rule 23 requirements.  Specifically, the WWE Group did not provide any evidence that it has the authority to move for appointment as lead plaintiff and it is also an impermissible group, and the other movants have demonstrated their lack of adequacy by failing to perform any analysis of the WWE Group's motion, but instead quickly succumbed when challenged, a characteristic that would not bode well for the Class they seek to represent.

---

[1] Capitalized terms have the same meaning as in the Memorandum of Law in Support of UPR's Motion For Consolidation, Appointment As Lead Plaintiff and Approval of Its Selection of Lead Counsel ("Memo in Support").

Because there are no infirmities with UPR's motion and because it otherwise satisfies Rule 23, it should be appointed lead plaintiff and its selection of Abraham, Fruchter & Twersky, LLP as lead counsel should be approved.

## II.    ARGUMENT

### A.    UPR Has The Largest Financial Interest Of Any Lead Plaintiff Movant Who Also Satisfies Fed.R.Civ.P. 23

When competing motions for lead plaintiff are filed, the Court is to adopt a presumption that the most adequate plaintiff is the person or group of persons who "has the largest financial interest in the relief sought by the class" and who "otherwise satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998).

Here, five separate motions were filed for appointment as lead plaintiff.  Two of those movants, the so-called WWE Group and Adnan Shefeeq purport to have larger losses from their transactions in WWE securities than UPR.  Neither of those competing movants is an institutional investor and neither can satisfy the requirements of Rule 23, and therefore they cannot serve as lead plaintiff.  The other two movants - Wayne County Employees' Retirement System ("Wayne County") and the Howard Group – each have less of a loss than UPR.[2]  Thus, UPR is the presumptive lead plaintiff.

As explained in its opening brief, UPR timely filed its lead plaintiff motion and has thus satisfied the procedural requirements of the PSLRA.  *See* Memo in Support at 4.  Beyond its financial interest, UPR *prima facie* satisfies the adequacy and typicality requirements of Rule 23.

---

[2] Based on the Class Period ending on May 15, 2014, and using the LIFO method of accounting for losses along with a strict interpretation of *Dura*, the losses for the movants are as follows: WWE Group - $2,474,624; Shefeeq - $349,730; UPR - $180,870; Howard Group - $124,791; and Wayne County - $123,005.

*Id.* at 6-7.  UPR is typical of other Class members because it purchased WWE common stock based on publicly available information and was damaged by Defendants' materially false and misleading statements and omissions.  UPR is familiar with the claims in this litigation and aware of its obligations as lead plaintiff.  *See* UPR Certification at ¶¶1, 3, 7.  UPR does not have any claims that are antagonistic to the other members of the Class, will vigorously represent the Class and has selected experienced, qualified class counsel, which is able to conduct the litigation.  Thus, UPR is entitled to the statutory presumption that it is the most adequate plaintiff.  *See, e.g.*, *In re Crayfish Co. Sec. Litig.*, No. 00-6766, 2002 U.S. Dist. LEXIS 10134, at *12-16 (S.D.N.Y. June 6, 2002).

> **B.**      **The Competing Movants Do Not Satisfy Rule 23's Typicality**
> **and/or Adequacy Requirements**

In addition to the financial interest in the action, a lead plaintiff must satisfy the traditional Rule 23 notions of typicality and adequacy to meet the PSLRA standards.  The other movants for lead plaintiff will have problems trying to satisfy the Rule 23 requirements.  Typicality requires that the representative's claims not be markedly different from the other class members such that the representative will be subject to any unique defenses.  Even a defense that is only arguably applicable to a representative may destroy typicality.  If the representative's claims are not typical, then they cannot adequately protect the interests of the class.  The representative's claims must be sufficiently interrelated to and not antagonistic with the class' claims to ensure fair and adequate representation.  *See, e.g.*, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626-27 (1997) (someone who already had contracted illness could not represent those plaintiffs who had not contracted illness).

In addition, a representative must be able to protect the interests of the class adequately.  The lead plaintiff and its counsel must be prepared to vigorously present their claims, support

their contentions and oppose the contentions of their opponents. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (movant and his counsel must prosecute action vigorously). If they cannot meet that standard, the Class will not receive the best representation that it deserves, and the adequacy standard will not be met.

The motion by the WWE Group should be denied because it does not satisfy the typicality or adequacy requirements of Rule 23. Its trading in WWE securities makes it atypical of the other Class members for a variety of reasons, including: 1) it did not properly provide authorization for its trades in its certifications, which were therefore flawed, and it may include trades that it made, as an advisor, for others; 2) it engaged in multiple option trades; and 3) it has the characteristics of being a day-trader. Whether or not these issues regarding the WWE Group's trading could meet the typicality standard is not the issue. The issue is that the WWE Group's trading may subject it to unique defenses that would unnecessarily raise distracting issues into the class certification process to the detriment of the proposed Class.

Moreover, the WWE Group is not adequate because it did not provide the proper authority for its actions to pursue this litigation or to serve as a lead plaintiff. It is also an impermissible group.

The other movants are also not adequate because they each gave up when faced with the WWE Group's lead plaintiff motion rather than perform any analysis and seek to contest that motion as UPR is doing here.

### 1. The WWE Group Does Not Have Authority or Standing to Bring The Claims

The WWE Group, which claims to be the presumptive lead plaintiff because it has the largest loss, has not submitted sufficient information to be appointed lead plaintiff. In its motion, the WWE Group claims it is comprised of a single family which purchased WWE shares through

six accounts.  WWE Memorandum in Support at 1, n.1 (Dkt. No. 20).  The information provided

is deficient.  Among those six accounts are two IRA accounts and a corporate account called

Ansari 3 Twelve LLC II (the "LLC").  No information about these accounts is provided with the

certifications.  No declaration or other evidence was provided that these accounts are related in

any way and no information was provided as to the authority over the accounts.  A footnote in a

memorandum without any support is insufficient to establish the authority over the accounts or

that any type of relationship exists among the accounts.  Without such proof, the WWE Group's

motion must be denied.  *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005)

(representative's authority must be provided).

While the WWE Group decided not to provide information about itself, it appears that

Mohsinuddin Ansari, who signed the certifications, is a money manager for an investment

advisor.  *See* Declaration of Joseph P. Guglielmo in Further Support of the University of Puerto

Rico Retirement System's Motion For Consolidation, Appointment As Lead Plaintiff and

Approval of Its Selection of Counsel and in Opposition to Competing Motions ("Guglielmo

Opposition Decl."), Exhibit A.  No information was provided as to whether Mr. Ansari acts as an

investment advisor to the WWE Group's accounts, especially the LLC, who provided the funds

for the various accounts or who comprises the LLC.  If it is now claimed that the funds are solely

Mr. Ansari's funds, it is unusual that an individual would invest such a large amount in one

company in order to have incurred the amount of losses claimed.  Whether the LLC (and the

WWE transactions therein) is comprised of investors for whom Mr. Ansari provides advice is not

disclosed.  Proof of whether Mr. Ansari or anyone else has authority over the LLC account is not

provided.  While the WWE Group motion claims Mr. Ansari is a member, manager and

authorized agent of the LLC, such statement, with absolutely no proof, is insufficient to support those assertions.

The overwhelming authority is that in order for someone, such as Mr. Ansari, to have standing to bring a motion for lead plaintiff, the manager, advisor or agent must submit evidence that it is the attorney-in-fact for its clients with full power to bring suit for their investment losses.  *See In re eSpeed,* 232 F.R.D. at 98 (stating an investment advisor "must be the attorney in fact for his clients, and he must be granted both unrestricted decision-making authority and the specific right to recover on behalf of his client." (citing *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003) ("When the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities law with standing to sue in its own name.")); *see also Burch v. SLM Corp.*, 08 Civ. 1029 (WHP), 2008 U.S. Dist. LEXIS 55423, at *13-14 (S.D.N.Y. July 23, 2008) (advisor must show its unrestricted authority); *Kaplan v. Gelfond*, 240 F.R.D. 88, 95 (S.D.N.Y. 2007) (same); *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 358 (S.D.N.Y. 2002) (advisor was not the legal purchaser of shares and could not be lead plaintiff).

In *SLM Corp.*, the chief compliance officer of two investment advisors submitted a certification stating that the investment advisors had "full discretion and control over the investment of their funds and are authorized to commence legal action on behalf of the funds." *Burch v. SLM Corp.*, 2008 U.S. Dist. LEXIS 55423, at *5.  The court, however, found that an investment advisor's declaration was not enough to establish authority.  Specifically, the court required submission of further evidence of unrestricted decision-making authority over each client and authority to maintain the action on behalf of its clients.  *Id.* at *5-6.

- 6 -

In light of these authorities, the WWE Group's submission is woefully insufficient.  It provided no information on LLC and no information on anyone's authority to act on its behalf or to file a lead plaintiff motion.  Because of the WWE Group's failure to put forth any evidence of its authority or that it is acting as attorney-in-fact on behalf of the LLC and has been granted unrestricted decision-making authority and the specific right to recover on its behalf, it lacks standing to litigate on behalf of LLC and its motion should be denied on that basis alone.  *In re Gemstar-TV Guide Int'l., Sec. Litig.*, 209 F.R.D. 447, 450-52 (C.D. Cal. 2002), citing *Piven v. Sykes Enters. Inc.*, 137 F. Supp. 3d 1295, 1304-05 (M.D. Fla. 2000) (a lack of information concerning plaintiff's "identity, resources, and experience" prevented appointment as lead plaintiff).

While the WWE Group may contend in its response that Mr. Ansari is not an investment advisor to the LLC but is authorized to take actions with respect to the account, nothing in its motion provides proof of those claims.  No information about LLC is provided, no declaration about Mr. Ansari's authority is submitted and no support was given for Mr. Ansari's authority as to LLC's request to be lead plaintiff.

Moreover, the relationship between LLC and the other accounts that comprise the WWE Group is also not provided.  The certifications do not provide necessary information on the various accounts, including who has the authority to sign the certifications and the sources of that authority.  In addition, the certifications do not provide information on other accounts for which Mr. Ansari has authority and for which he traded WWE securities.  As a money manager and one who purportedly controlled multiple accounts, it seems likely that there are other accounts in which Mr. Ansari traded WWE securities.  Because such information was not provided, it cannot be known at this stage whether those trades were inconsistent and possibly conflicting.  Even the

- 7 -

possibility of such issue being raised by Defendants exposes the Class to an unnecessary risk where an appropriate lead plaintiff candidate can be appointed instead.

**2.        The WWE Group Is An Impermissible Group**

The WWE Group is composed of six accounts, including the LLC.  The only information provided about this group is contained in a brief footnote in the Memorandum submitted in support of its motion.  WWE Memo at 1, n.1 (Dkt. No. 20).  That footnote seems to claim that these accounts are connected because of Mr. Ansari, but insufficient details are provided about the LLC to conclude that it has a connection to the other accounts or that the LLC and its unidentified members agreed to take part in this litigation and/or agreed to be appointed lead plaintiff.  Whether LLC even agreed to be part of the WWE Group is not provided.  Such deficiencies are fatal to the WWE Group's motion.

On lead plaintiff motions, groups are disfavored by courts.  *See In re Vecco Instruments, Inc. Sec. Litig.*, 233 F.R.D. 330, 334 (S.D.N.Y. 2005) (groups disfavored).  While the WWE Group may claim that it is a permissible group because the six accounts comprising the WWE Group are related, there is no evidence to support such a claim.  The LLC is a corporation. Details about the corporation and its members are not provided.  While the WWE Group in its motion papers claims that Mr. Ansari is a member and the agent for the LLC, that statement is not supported by any evidence.  No declaration is proffered from Mr. Ansari and no proof of Mr. Ansari's authority is submitted.  The unsubstantiated statement of counsel is insufficient to supply the necessary authority for the LLC actions.  Without authorization, the LLC cannot be regarded as having joined the WWE Group or having approved of its appointment as lead plaintiff.  *See Burch v. SLM Corp.*, 2008 U.S. Dist. LEXIS 55423, at *5 (even investment

advisor's declaration was insufficient to establish authority with further information from each client regarding authority).

Moreover, the various accounts that comprise the WWE Group are separate accounts for separate types of investors, with separate goals and separate investment strategies.  Two of the accounts are transfer accounts created for minors, two accounts are IRAs, one account is for an individual and one is a corporation.  Four of the accounts (other than the two transfer accounts) had multiple purchases and sales of WWE stock during the Class Period, some of the accounts were buying and selling WWE stock on the same day or reversing a transaction on the next day, some of the accounts engaged in option transactions and some of the transactions were claimed to be impacted by wash sales.  These differing strategies raise questions about its typicality and adequacy.  *See*, *e.g.*, *Smajlaj v. Brocade Communications Systems Inc.*, No. C 05-02042 CRB, 2006 U.S. Dist. LEXIS 97618, at *11-12 (N.D. Cal. Jan. 12, 2006) (hedge fund management company not appointed as lead plaintiff because of too many questions surrounding its structure and other issues that may give rise to unique defenses and are atypical of the class).

Although these distinctions may be claimed not to be relevant, the differing philosophies and differing holdings of these entities may cause a conflict as to the strategy that should be pursued during the litigation.  For example, it may benefit one of the accounts to resolve the litigation at a particular juncture (for distribution purposes to its investors, for example) while the other may prefer to take the case to trial.  Even if it were determined that Mr. Ansari is the decision-maker for the accounts, he is still subject to the dictates of the LLC's investment goals, which may dictate litigation strategy.[3]

---

[3] Moreover, Mr. Ansari does not reveal whether he or any of the other funds he manages or controls have WWE investments, including any short sales or unusual trading patterns in WWE

### 3.      WWE Group's Multiple Options Trades Makes It Atypical

WWE Group purchased options during the Class Period, which renders it atypical and precludes it from representing WWE common shareholders.  Indeed, courts have repeatedly found that call options may not properly be considered in connection with the representation of a class of stock purchasers.  *See, e.g., Andrada v. Atherogenics, Inc.*, 05-00061, 2005 U.S. Dist. LEXIS 6777, at *14-15 (S.D.N.Y. Apr. 18, 2005) (if options purchasers were appointed lead plaintiff then option trading would likely "threaten to become the focus of the litigation.") (citing *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998) (rejecting option purchaser where factual issues would divert focus from securities litigation); *Margolis v. Caterpillar, Inc.*, 815 F. Supp. 1150, 1156 (C.D. Ill. 1991) (option holder's claim was not typical of stock purchaser's claim and thus, could not represent stock holders, only a class of option holders)).

Here, WWE Group lists the purchase of numerous option contracts in more than one of its accounts.  It is not a typical Class member and it should not be appointed lead plaintiff.

### 4.   WWE Group's Trading Makes It Atypical

The various accounts that comprise the WWE Group cannot meet the typicality requirements of Rule 23.  Unlike typical Class members, WWE Group bought and sold large volumes of shares on multiple days during the Class Period, sometimes buying and selling shares on the same day.  As such, WWE Group fails to satisfy Rule 23 and is subject to unique defenses which would disqualify it.  *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000); *In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000).  Further, defendants will likely argue that the WWE Group's investment strategy is

stock, or if the transactions in those other accounts conflict with the transactions among the accounts in the WWE Group.

not the approach of typical investor members of the Class who purchased WWE shares in

reliance on publicly available information.  Because such an investment strategy has nothing to

do with defendants' fraudulent public statements and/or omissions, WWE Group cannot be

appointed as lead plaintiff in this Action.  *See*, *e.g.*, *In re Safeguard Scientifics*, 216 F.R.D. 577,

582-83 (E.D. Pa. 2003) (intra-class conflicts may subject proposed class representative to unique

defenses).  As the court in *MicroStrategy* explained:

> [E]ven assuming Wolverine Trading's evidence of loss was sufficient, its application
> did not satisfy the statutory requirements of typicality and adequacy . . . . Evidence
> presented . . . confirmed that Wolverine Trading was an atypical investor that engages
> in transactions far beyond the scope of what a typical investor contemplates . . . .
> Accordingly, Wolverine Trading may [be] subject to unique defenses based on its method
> of doing business.  For these reasons, Wolverine Trading [is] not an adequate class
> representative.

110 F. Supp. 2d at 436-37.

> **5.      Adnan Shefeeq Is Not An Adequate Lead Plaintiff**

Adnan Shefeeq is not adequate to be appointed lead plaintiff.  A lead plaintiff is

responsible for looking out for and advocating on behalf of the absent class members.  *Hanlon v.*

*Chrysler Corp.*, 150 F.3d at 1020.  Here, rather than fulfull the responsibilities Mr. Shefeeq

seeks, he abandoned them at the first opportunity.  Given the chance to contest the lead plaintiff

motion filed by the WWE Group, Mr. Shefeeq apparently did no analysis and decided not to

contest the WWE motion.  *See* Response of Adnan Shefeeq to Competing Lead Plaintiff Motions

(Dkt No. 35).  Had he performed an analysis of the WWE Group's submission, he may have

discovered the flaws that are being pointed out here by UPR.  Given that Mr. Shefeeq sought not

to contest this motion on behalf of the Class, he is inadequate to be the lead plaintiff.[4]

---

[4] The same is true for the other two movants – Wayne County and the Howard Group - but they
also each purport to have losses that are less than UPR.

**C.      UPR Is An Institutional Investor, Which Satisfies Congressional Intent**

UPR is a large institutional investor.  In addition to having a large financial interest in the litigation, the appointment of UPR as lead plaintiff also fulfills a critical legislative goal behind enacting the PSLRA - to encourage sophisticated institutions to serve as lead plaintiff in securities class actions.  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45-46 (S.D.N.Y. 1988) (naming group of three unrelated individual investors and two institutional investors as lead plaintiff); *see also Olsen v. New York Community Bancorp, Inc.*, 233 F.R.D. 101, 107 (E.D.N.Y. 2005) (naming an institution and an individual as lead plaintiff given PSLRA's preference for institutional investors and manageable number of members in group).

Indeed, the framers of the PSLRA clearly intended that institutional investors serve as lead plaintiffs in class action lawsuits arising under the federal securities laws.  *See*, *e.g.*, *In re UBS Auction Rate Sec. Litig.*, No. 08-2967, 2008 U.S. Dist. LEXIS 56016, at *11 (S.D.N.Y. July 16, 2008) ("[T]he PSLRA reflects a preference on the part of the Congress that passed it that institutional investors are the most desirable lead plaintiffs"); *Shi v. Sina Corp.*, No. 05-2154, 2005 U.S. Dist. LEXIS 13176, at *15 (S.D.N.Y. July 1, 2005) ("In enacting the PSLRA, Congress expressed an intention to encourage institutional investors to step forward and assume the role of lead plaintiff") (quoting *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004)).  *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 243-44 (3d Cir. 2001) ("[T]he PSLRA's legislative history expressly states that Congress anticipated and intended that [institutional] investors would serve as lead plaintiffs.") (citation omitted).  As recognized by the court in *Shi*, "[b]ecause the size and experience of institutional investors can be of significant assistance to the prosecution of the action, a number of courts 'have understood

- 12 -

[the PSLRA] to favor large institutional investors' as lead plaintiff." *Shi*, 2005 U.S. Dist. LEXIS 13176, at *15 (citing *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 402).

Here, UPR is just such an institutional investor.  It has the size and experience to serve as lead plaintiff.  UPR is a sophisticated institutional investor that manages assets of almost $1.2 billion with more than 11,000 active employees enrolled.  It is precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA and sought to encourage institutions to seek to become lead plaintiffs.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").  UPR is the institutional investor with the largest loss and should be appointed as lead plaintiff.

**D.      The Other Movants Have Less Of A Financial Interest Than UPR**

The other two competing movants, Wayne County and Howard Group, have less of a financial interest than UPR because they each have less of a loss.  *See* Wayne County Declaration, Ex. 3 (Dkt. No. 24); Howard Group Declaration, Ex. B (Dkt. No. 30).

**III.      CONCLUSION**

For the reasons discussed above and in its Motion, the University of Puerto Rico Retirement System respectfully requests that the Court: (i) consolidate the above-captioned

actions; (ii) appoint it as Lead Plaintiff; and (iii) approve the selection of AF&T as Lead

Counsel.

Dated: October 14, 2014

**SCOTT + SCOTT, ATTORNEYS AT LAW, LLP**


s/ Joseph P. Guglielmo
Joseph P. Guglielmo (CT 27481)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537- 432
jguglielmo@scott-scott.com

**Proposed Local Counsel**

**ABRAHAM, FRUCHTER
 & TWERSKY, LLP**
Mitchell M.Z. Twersky
Lawrence D. Levit
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile:  (212) 279-3655
mtwersky@aftlaw.com
llevit@aftlaw.com

**Counsel for the Proposed Lead Plaintiff
University of Puerto Rico
Retirement System**

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 14, 2014.

    s/ Joseph P. Guglielmo
Joseph P. Guglielmo (CT 27481)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537- 432
jguglielmo@scott-scott.com

- 15 -