# WEAVER DECLARATION EXHIBIT 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICK SIMCO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> AEGEAN MARINE PETROLEUM NETWORK INC., E. NIKOLAS TAVLARIOS and SPYROS GIANNIOTIS, <br><br> Defendants. | Case No. Case 1:18-cv-04993-NRB |
| ROBERT STROUGO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> AEGEAN MARINE PETROLEUM NETWORK INC., E. NIKOLAS TAVLARIOS and SPYROS GIANNIOTIS, <br><br> Defendants. | Case No. Case 1:18-cv-05165-NRB <br><br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW OF UTAH RETIREMENT SYSTEMS
IN RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS**

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 3

    A.    THE COURT SHOULD REJECT SILVERBACK'S PROPOSED
        METHODOLOGY FOR CALCULATING FINANCIAL INTEREST ................. 3

        1.    Silverback Lacks Legal Support for Its Novel Loss Calculation
             Methodology ........................................................................................ 4

        2.    Applying Silverbacks' Methodology At This Time is Premature .............. 6

        3.    Contrary to the PSLRA, Silverback's Methodology Improperly Limits
             Damages ............................................................................................. 7

    B.    EVEN ACCEPTING SILVERBACKS' METHODOLOGY AS AN
        ACCEPTABLE MEANS OF CALCULATING LOSSES, UTAH STILL HAS
        THE LARGEST FINANCIAL INTEREST UNDER THE *LAX* FACTORS ......... 9

III.  CONCLUSION .................................................................................................. 10

<u>**TABLE OF AUTHORITIES**</u>

<u>**PAGE(S)**</u>

**Cases**

*Ash v. PowerSecure Int'l, Inc.,*
  No. 4:14-CV-92-D, 2014 WL 5100607 (E.D.N.C. Oct. 10, 2014) ....................................... 6

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
  No. 1: 17 CV 1958, 2017 WL 6028213 (N.D. Ohio Dec. 5, 2017)...................................... 10

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
  269 F.R.D. 291 (S.D.N.Y. 2010) ....................................................................................... 1, 2

*Cortina v. Anavex Life Scis. Corp.*,
  No. 15-CV-10162 (JMF), 2016 WL 1337305 (S.D.N.Y. Apr. 5, 2016) ............................... 10

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)............................................................................................................... 2

*Espinoza v. Whiting,*
  No. 4:12CV1711 SNLJ, 2013 WL 171850 (E.D. Mo. Jan. 16, 2013)................................... 5

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................... 1, 2, 6, 9

*Gronich v. Omega Healthcare Inv'rs, Inc.,* No. 17 Civ. 8983 (NRB),
  2018 WL 1626078 (S.D.N.Y. Mar. 27, 2018) ....................................................................... 2

*In re Barrick Gold Corp. Sec. Litig.*,
  No. 17 Civ. 3507 (NRB), 2017 WL 4862779 (S.D.N.Y. Oct. 4, 2017) .............................. 1, 2

*In re Comverse Tech., Inc. Sec. Litig.,*
  No. 06-CV-1825 NGG RER, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ............................ 4

*In re Dynex Capital, Inc. Sec. Litig.*,
  No. 05 Civ. 1897 HB, 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011)........................................ 7

*In re Forcefield Energy Inc. Sec. Litig.*,
  No. 15 Civ. 3020 NRB, 2015 WL 4476345 (S.D.N.Y. July 22, 2015) .................................. 2

*In re K-V Pharm. Co. Sec. Litig.,*
  No. 11CV01816 AGF, 2012 WL 1570118 (E.D. Mo. May 3, 2012).................................... 4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  962 F. Supp. 2d 606 (S.D.N.Y. 2013) ................................................................................... 4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 MDL 2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ............................ 4

*In re LightInTheBox Holding Co., Ltd. Sec. Litig.*,
No. 13 Civ. 6016 PKC, 2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013) ................................. 4

*In re Pfizer Inc. Sec. Litig.*,
819 F.3d 642 (2d Cir. 2016) ................................................................................................. 6

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................................... 1

*Kux-Kardos v. VimpelCom, Ltd.*,
151 F. Supp. 3d 471 (S.D.N.Y. 2016) ................................................................................. 4

*Maliarov v. Eros Int'l PLC*,
No. 15-CV-8956 (AJN), 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) .................................. 6

*Marjanian v. Allied Nevada Gold Corp.*,
No. 2:14-CV-0650-JCM-VCF, 2014 WL 12769810 (D. Nev. Nov. 7, 2014)......................... 6

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
No. 06-CV-5797 (PAC), 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) .............................. 10

*Sallustro v. CannaVest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015) ................................................................................... 5

*Strougo v. Barclays PLC*,
312 F.R.D. 307 (S.D.N.Y. 2016) ......................................................................................... 6

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
546 F.3d 196 (2d Cir. 2008) ................................................................................................. 7

*Teran v. Subaye, Inc.*,
No. 11 Civ. 2614 (NRB), 2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011).............................. 2

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) ................................................................................... 4

**Statutes**

15 U.S.C. § 78u-4(e)(i) ............................................................................................................ 8

**Other Authorities**

Eric Reichenberg and Carl Tichler, *Evaluating the Evaluations Vendors* (Jan. 8, 2018)............... 7

Utah Retirement Systems ("Utah"), which is a public pension fund serving over 200,000 participants and about 470 public employers, respectfully submits this reply in response to the Mem. of Law of Silverback Opportunistic Credit Master Fund ("Silverback") in Opp. to Competing Lead Plaintiff Mots. [ECF No. 58] ("Silverback Opp.") and in further support of Utah's Mot. for Consolidation, Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel [ECF No. 28].

## I.     INTRODUCTION

Eight of the ten movants seeking appointment as lead plaintiff have either withdrawn their motions, filed non-oppositions or have failed to file any opposition papers.[1] No movant – including Silverback – disputes that:

- Utah *expended more net funds* ($4,189,676) than any other movant from April 28, 2016 through June 4, 2018 (the "Class Period"), including Silverback who had net expenditures of $3,896,173;

- Utah *purchased more shares* of Aegean Marine Petroleum Network Inc. ("Aegean" or "Company") common stock (562,654 shares) during the Class Period than any other movant – including Silverback who purchased 6,067 Convertible Notes and sold shares short;

- Utah *purchased more net shares* (544,921) during the Class Period than any other movant and sold a smaller percentage of its holdings during the Class Period than Silverback; and

- Utah *sustained more Last-In-First-Out ("LIFO") losses*[2] ($3,474,721) from its purchases of Aegean common stock, including Silverback who had losses of

---

[1] Movant Andreas Litsas did not file an opposition to the competing motions.

[2] *See City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 293, 296 (S.D.N.Y. 2010) (Buchwald, J.) ("LIFO [was] the most accurate measure of actual losses suffered by stockholders in that it takes into account any gains accrued from sales during the class period"); *In re Barrick Gold Corp. Sec. Litig.*, No. 17 Civ. 3507 (NRB), 2017 WL 4862779, at *2 (S.D.N.Y. Oct. 4, 2017) (using LIFO calculation to determine largest financial interest); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011) ("courts in this district and others have stated a preference for LIFO over FIFO in assessing loss for purposes of the appointment of lead plaintiff"); *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 n.7 (S.D.N.Y. 2007) (Buchwald, J.) ("[m]any courts have stated a preference for LIFO over FIFO in securities cases").

1

$1,073,273.[3]

This Court has made clear that in determining a lead plaintiff movant's financial interest it will consider of "**all of the Lax factors** with a special emphasis on approximate losses."[4]

Upon consideration of all of the *Lax* factors, Utah has demonstrated that it has the largest financial interest in this action. Also, no movant disputes that Utah's claims are typical of all other members of the class and that it would fairly and adequately represent the class.[5] Utah is therefore the presumptive lead plaintiff, and there is no evidence to overcome that presumption.

In its Opposition, Silverback ignores the *Lax* factors analysis consistently followed by this Court over the past ten years (including since the Supreme Court's ruling in *Dura*)[6] and ignores this Court's finding that "LIFO [was] the most accurate measure of actual losses suffered by stockholders in that it takes into account any gains accrued from sales during the class period." *See City of Monroe*, 269 F.R.D. at 293. Instead, Silverback urges the Court to (i) adopt a new and unsupported approach to calculate financial interest and (ii) rely *solely* on that novel calculation to determine lead plaintiff.[7]

Silverback's methodology seeking to minimize class-wide damages at this early stage of

---

[3] *See* Mem. of Law of Utah in Resp. to Competing Lead Plaintiff Mots. [ECF No. 60] ("Utah Opp." or "Utah's Opposition Memorandum"), at 5-7.

[4] *Transocean*, 272 F.R.D. at 128; *see also City of Monroe*, 269 F.R.D. at 293, 296 (applying *Lax* factors to determine which plaintiff has the largest financial interest"); *Barrick*, 2017 WL 4862779, at *2 (same); *Gronich v. Omega Healthcare Inv'rs, Inc.,* No. 17 Civ. 8983 (NRB), 2018 WL 1626078, at *2-3 (S.D.N.Y. Mar. 27, 2018); *Teran v. Subaye, Inc.*, No. 11 Civ. 2614 (NRB), 2011 WL 4357362, at *2 (S.D.N.Y. Sept. 16, 2011) (same); *In re Forcefield Energy Inc. Sec. Litig.,* No. 15 Civ. 3020 NRB, 2015 WL 4476345, at *2 (S.D.N.Y. July 22, 2015) (same).

[5] *Omega Healthcare*, 2018 WL 1626078, at *3 ("typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA") (citations omitted).

[6] *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

[7] Indeed, nowhere in Silverback's Opposition does it even acknowledge the *Lax* factors.

the proceedings is antithetical to the role it seeks as a class representative.  Rather than seeking to

preserve arguments that maximize the class's potential recovery, Silverback has stepped into the

role of defense counsel making arguments to curtail the class's potential recovery.  This is

particularly inappropriate here when all of the facts concerning Aegean's alleged financial

improprieties have not been disclosed and the parties have not engaged in discovery.  Indeed, the

Company stated on June 4, 2018:

> At this time, the Company ***cannot determine the full impact on the financial
> statements*** or how this adjustment will be recorded.  In addition, there could be
> other adjustments that result from the Audit Committee's review that could impact
> the financial statements. . . . The Audit Committee is ***continuing its review and
> investigation of the Transactions and other matters***, with the assistance of
> independent counsel and forensic accounting advisors, and expects to recommend
> to the Company that it pursue claims against individuals and entities involved in
> the Transactions.[8]

Accordingly, this is a case where the "other shoe has not dropped," and it is premature to be

conducting any artificial inflation style damages analysis, far less for the unsupportable one

proffered by Silverback.

As discussed in more detail below, Silverback's novel methodology should be rejected by

the Court, and the Court should appoint Utah as lead plaintiff and approve its selection of Berman

Tabacco as lead counsel.

## II.     ARGUMENT

### A.     THE COURT SHOULD REJECT SILVERBACK'S PROPOSED METHODOLOGY FOR CALCULATING FINANCIAL INTEREST

Silverback urges this Court to adopt a novel methodology for calculating losses allegedly

based on *Dura* to determine a lead plaintiff's financial interest.   However, Silverback's

---

[8] Aegean Marine Petroleum Network Inc. Provides Update on Financial Reporting Internal Review
(June 4, 2018), https://globenewswire.com/news-release/2018/06/04/1516584/0/en/Aegean-
Marine-Petroleum-Network-Inc-Provides-Update-on-Financial-Reporting-Internal-Review.html

methodology is without legal support, is premature and is contrary to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

> **1.** **Silverback Lacks Legal Support for Its Novel Loss Calculation Methodology**

Silverback argues that this Court should supplant the well-established LIFO loss calculation in this district for its novel damages methodology. In support of this argument, Silverback relies on a misguided interpretation of cases that do not provide a sufficient basis for this Court to adopt Silverback's methodology.[9]

***First***, while some courts in the cases cited by Silverback have found that "in-and-out trading" prior to an alleged corrective disclosure may be removed pursuant to *Dura* when calculating a movant's financial interest,[10] this *Dura* methodology has no material impact on Utah's losses here. Removing Utah's 17,733 shares of "in-and-out" trading before the alleged

---

[9] Silverback also points to this Court's decisions in *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 622 (S.D.N.Y. 2013), and *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2016 WL 7378980, at *22 (S.D.N.Y. Dec. 20, 2016) as support for its methodology. Those cases are inapposite. Neither of those decisions involved the determination of "financial interest" for the selection of a lead plaintiff under the PSLRA.

[10] *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 476-77 (S.D.N.Y. 2016) (Carter, J.) ("when calculating movants' financial interests on a lead plaintiff motion, courts should not include losses resulting from 'in-and-out' transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public") (citations omitted); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 618 (S.D.N.Y. 2015) (Ramos, J.) (courts should not include "losses result[ing] from 'in-and-out' transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public") (alteration in original) (citation omitted); *In re LightInTheBox Holding Co., Ltd. Sec. Litig.,* No. 13 Civ. 6016 PKC, 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013) (Casel, J.) (excluding trading losses incurred prior to the corrective disclosure); *In re K-V Pharm. Co. Sec. Litig.,* No. 11CV01816 AGF, 2012 WL 1570118, at *4 (E.D. Mo. May 3, 2012) (Fleissig, J.) (excluding "losses resulting from stock trades that occurred prior to any disclosure of fraud"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 NGG RER, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (Garaufis, J.) (excluding "losses result[ing] from 'in-and-out' transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public").

corrective disclosure has a negligible impact on Utah's LIFO loss calculation. *See* Decl. of Nicole Lavallee in Further Supp. of the Mot. of Utah for Consolidation, Appointment as Lead Plaintiff and Approval of Its Choice of Lead Counsel ("Lavallee Decl."), filed herewith, Ex. A. Without "in-and-out" trading, Utah still has approximately three times the losses of Silverback.[11]

**Second**, the remaining decisions cited by Silverback do not provide sound support for the Court to ignore the application of the LIFO loss analysis extensively supported under the decisions throughout this Circuit and implement the flawed and premature methodology proposed today. For example, Silverback relies on a Missouri trial court decision, *Espinoza v. Whiting,* No. 4:12CV1711 SNLJ, 2013 WL 171850, at *2 (E.D. Mo. Jan. 16, 2013). In that case, the court found that "[t]he *Dura* loss is equal to the number of shares times the price drop, and the statutory damage cap loss is equal to the number of shares multiplied by the difference between the purchase price and the ninety-day average price." *Espinoza*, however, has been harshly criticized in this District.

In *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, at 276 (S.D.N.Y. 2015) (emphasis added), Judge Gardephe stated:

> [Movant] alleged approximate losses of $35,200, calculated using the traditional and statutory method for calculating loss: *i.e.*, total share purchase price minus value of shares sold after corrective disclosure…. In his brief opposing [competing] motions…, however, [Movant] suggests a different and novel method for calculating loss. Under [his] new model, "*Dura* loss is calculated by crediting only the stock price declines caused by the alleged corrective disclosures," and purchase price is irrelevant…. ***[Movant's] case law support for his new loss model is Espinoza…. Espinoza contains little analysis***, however, and – despite [Movant's] case citation indicating that *Espinoza* "collect[s] cases" in which this loss model has allegedly been utilized … in reality, ***Espinoza cites no supporting cases. Espinoza itself has never been cited or relied on by another court.***

Similarly, the other cases relied upon by Silverback (i) do not apply the methodology

---

[11] *See* Lavallee Decl. Exs. A & B.

proposed by Silverback, (ii) do not involve Convertible Notes, and (iii) have not been cited or relied upon by another court.[12] Silverback has simply failed to show this Court why it should adopt this new loss model.[13]

### 2.    Applying Silverbacks' Methodology At This Time is Premature

The type of "artificial inflation" analysis that Silverback proposes here can only be credibly accomplished with discovery and expert analysis such as an event study which is a statistical regression analysis that examines the effect of an event on a dependent variable, such as a company's stock price.[14]  *Pfizer Inc. Sec. Litig.*, 819 F.3d at 649.

---

[12] *See Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246, at *2 (S.D.N.Y. Apr. 5, 2016) (the court determined financial interest by multiplying stock drops by shares held through the stock drop without applying the PSLRA limitation to "conduct a rough estimate of each movant's loss"); *Ash v. PowerSecure Int'l, Inc.,* No. 4:14-CV-92-D, 2014 WL 5100607, at *3 (E.D.N.C. Oct. 10, 2014) (where one would-be lead plaintiff, Maguire, alleged losses of $2,182,170 by multiplying shares held by the stock drop on the corrective disclosure, and two movants alleged losses of $11,680 and $34,658 under a traditional methodology" and neither of the two movants with smaller losses challenged the method of calculation); *Marjanian v. Allied Nevada Gold Corp.*, No. 2:14-CV-0650-JCM-VCF, 2014 WL 12769810, at *5 (D. Nev. Nov. 7, 2014) ("To determine losses on the retained shares, the Court multiplies 92,710 by the difference between the price of the shares at closing on August 5, 2013, ($5.90) and the average closing price of Allied Nevada stock during the ninety days following their disclosure ($4.4152).").

[13] *Cf. Transocean*, 272 F.R.D. at 130 (requiring **"credible argument that a different calculation method should apply"**) (emphasis added).

[14] "Performing an event study can thus help an expert to determine at least two things.  First, assuming that the defendant company fraudulently concealed information, the event study shows how much money the fraud caused shareholders to lose.  Identifying residual returns on days when allegedly concealed information reached the market indicates that the supposedly withheld information caused the company's stock price to change.  If the release of allegedly withheld information causes a stock price decrease, shareholders who purchased the defendant company's stock after the alleged fraud but before the revelation may have paid a higher price than they would have but for the defendant's fraudulent conduct—known as an 'artificial[ly] inflat[ed]' price.  Second, the event study helps the expert 'calculat[e] what the price of [the defendant company's] security would have been had the alleged wrongful conduct not occurred,' by estimating the amount of artificial inflation in the company's stock price over time." *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 649 (2d Cir. 2016) (alteration in original) (citations omitted); *see also Strougo v. Barclays PLC*, 312 F.R.D. 307, 317 (S.D.N.Y. 2016) ("An event study is 'a statistical regression analysis that examines the effect of an event … on a dependent variable, such as a company's stock price.'  An event study has four parts: defining the event (e.g., an earnings announcement),

Silverback's methodology is further complicated by the fact that its calculation of losses on its Convertible Notes is not based on prices for actual market transactions, but instead on Bloomberg's pricing service, BVAL. *See* Utah Opp. at 5 n.5. In addition to BVAL, there are other vendors that provide evaluated prices for corporate bonds through subscription-based services including: Thomson Reuters, ICE Data Services (a/k/a IDS), IHS Markit, Advantage Data and Cambridge Financial Information Services.[15] Although the Second Circuit has approved the use of these types of evaluated prices (a/k/a matrix prices),"[16] there is no expert testimony here that explains why Bloomberg pricing should be used over actual market transactions or other pricing services. While these issues concerning the Convertible Notes can certainly be addressed through expert testimony, it casts doubt as to whether the Court should adopt Silverback's proposed calculation at the lead plaintiff stage.

### 3.    Contrary to the PSLRA, Silverback's Methodology Improperly Limits Damages

Silverback's methodology limits damages to the difference between the price on June 4, 2018 (last closing price prior to the alleged corrective disclosure) and the 90-day lookback price:

> damages on shares purchased during the Class Period and sold within 90 days following the conclusion of the Class Period are calculated as the ***difference between (a) the lesser of the purchase price, and the <u>last closing price immediately preceeding [sic] the corrective disclosure ($2.85)</u>,*** and (b) the greater of the sale price, the first closing price immediately following the disclosure ($0.70), and the average closing price from the end of the Class Period through the

---

establishing the announcement window (*i.e.,* the period over which stock price changes are calculated), measuring the expected return of the stock, and computing the abnormal return (which is the actual return minus the expected return).") (alteration in original) (footnote omitted).

[15] *See* Eric Reichenberg and Carl Tichler, *Evaluating the Evaluations Vendors* (Jan. 8, 2018), https://www.ssctech.com/blog/evaluating-the-evaluations-vendors.

[16] *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 HB, 2011 WL 781215, at *5 (S.D.N.Y. Mar. 7, 2011) (matrix prices must be "shown to be consistent and reliable proxies for transaction prices" (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 209 (2d Cir. 2008))).

date of sale.

ECF No. 62-3 n.6 (emphasis added).  Silverback's calculation, however, is contrary to the express

terms of the PSRLA which states:

> ***the award of damages to the plaintiff shall not exceed the difference between the
> purchase or sale price paid*** or received, as appropriate, by the plaintiff for the
> subject security ***and the mean trading price of that security during the 90-day
> period*** beginning on the date on which the information correcting the misstatement
> or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(i) (emphasis added).

Even assuming that Silverback's calculation of damages based on artificial inflation is

appropriate at this time, Silverback's formula is nonetheless wrong because it does not apply the

PSLRA limitation properly and improperly curtails class-wide damages.  For example, under the

PSLRA's express language and the current Class Period, common stock purchased during the

Class Period at $6.23 would have per-share damages of $2.15 (*i.e.*, the decline in the price of the

stock on June 5, 2018):

$$
\begin{aligned}
\text{Per-Share Damage} &= \text{minimum (Inflation at Purchase, (Purchase Price)} - \text{(90 Day Look-Back))} \\
&= \text{minimum (\$2.15, \$6.23 - \$1.36)} \\
&= \text{minimum (\$2.15, \$4.87)} \\
&= \$2.15
\end{aligned}
$$

However, applying Silverback's formula improperly limits per-share damages for a share

purchased at $6.23 by linking damages to the "last closing price immediately preceeding [sic] the

corrective disclosure":

$$
\begin{aligned}
\text{Per-Share Damage} &= \text{minimum (Purchase Price, Price on 6/4)} - \text{maximum (90 Day Look-Back, Price on 6/5)} \\
&= \text{minimum (\$6.23, \$2.85)} - \text{maximum (\$1.36, \$0.70)} \\
&= \$2.85 - \$1.36 \\
&= \$1.49
\end{aligned}
$$

Given that, in this example, the purchase price of the stock well exceeds the 90-day look back

price, the PSLRA when applied properly does not limit per-share damages.  Accordingly, should

the Court adopt the Silverback's proposed methodology, Silverback's calculation must be

modified to correctly apply the PSLRA limitation.[17]  *See Transocean*, 272 F.R.D. at 130 ("PSLRA's 90-day 'lookback period,' which governs the calculation of damages, should apply to estimating losses in determining the presumptive lead plaintiff, at least in the absence of any credible argument that a different calculation method should apply.").  Properly applying the PSLRA limitation, Utah has the larger losses, as set forth below.[18]

### B.    EVEN ACCEPTING SILVERBACKS' METHODOLOGY AS AN ACCEPTABLE MEANS OF CALCULATING LOSSES, UTAH STILL HAS THE LARGEST FINANCIAL INTEREST UNDER THE *LAX* FACTORS

Under the first three *Lax* factors, Utah has a larger financial interest in this action than Silverback:

- **Net Expenditures.**  Utah had the largest net expenditures during the Class Period of over $4,189,676 for its net purchases of Aegean common stock (the third *Lax* factor), compared to Silverback's net expenditures of $4,008,099 Convertible Notes and *short* sales of common stock of $111,926 (for a profit).  Taken together, Silverback had net expenditures of $3,896,173, below that of Utah.[19]

- **Purchases and Net Shares Purchased.**  Utah purchased 562,654 Aegean common shares and had 544,921 net purchases of Aegean common shares. Silverback did not purchase any common stock during the Class Period but, rather, it sold off common stock at a profit and purchased 6,067 Convertible Notes and 5,667 net Convertible Notes.  In addition to having greater net expenditures on Aegean securities, ***Utah also retained a larger percentage of the securities it purchased***.  That is, Silverback sold off a greater percentage of its Convertible Notes (6.59%) than Utah did of its common stock (3.15%).

As to approximate losses, Utah's losses well exceed the losses of Silverback under the widely-accepted LIFO calculation and under the *Dura* loss calculation removing in-and-out trading.[20]  Even assuming that Silverback's novel approach were acceptable (which it should not

---

[17] Utah has recalculated Silverback damages applying the PSLRA limitation as stated in the statute. *See* Lavallee Decl. Ex. B.

[18] The standard LIFO analysis that Utah proffers properly adjusts for the PSLRA limitation.

[19] Utah Opp. at 5-7.

[20] Utah and Silverbacks calculations are attached as Exhibits A and B to the Lavallee Decl.

be), Utah's losses are greater than Silverback when the PSLRA damages limitation is properly applied, as discussed above.[21]

| | LIFO Losses[22] | *Dura* LIFO Losses (excluding In-and-Out Trading) | Silverback's So-called *Dura* Methodology (LIFO) with Properly Applied PSLRA Limitation[23] |
|---|---|---|---|
| Utah | ($3,474,721) | ($3,478,622) | ($1,149,195) |
| Silverback | ($1,073,273) | ($1,092,818) | ($1,092,818) |
| % Difference | 224% | 218% | 5% |

Utah has demonstrated that it has the largest financial interest under the *Lax* factors and meets the Rule 23 requirements. Accordingly, Utah is presumptively the lead class plaintiff. Since there is no evidence to overcome this presumption, the Court should appoint Utah lead plaintiff.

## III.  CONCLUSION

For all of the foregoing reasons, Utah respectfully requests that the Court: consolidate all related actions; appoint Utah to serve as lead plaintiff in the action; and approve Utah's selection of Berman Tabacco as lead counsel.

---

[21] Assuming that Silverback's methodology properly resulted in the purported losses on page 6 of Silverbacks' Opposition, Utah submits that the difference between the calculated losses is negligible and insufficient to prevail when considering all of the *Lax* factors. *See Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162 (JMF), 2016 WL 1337305, at *2 (S.D.N.Y. Apr. 5, 2016) (appointing movant with most net shares purchased and net funds expended where "at best, the total loss factor only slightly favors" the competing movant); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, No. 06-CV-5797 (PAC), 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (appointing as lead a plaintiff whose losses were $1.78 million versus $1.82 million based on the other *Lax* factors); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1: 17 CV 1958, 2017 WL 6028213, at *3 (N.D. Ohio Dec. 5, 2017) ("[$35,406] difference in the approximate losses does not overcome the combined weight of the first three factors").

[22] Calculations may differ from the opening papers because the 90-day look back has been updated.

[23] These calculations properly apply the PSLRA limitation. *See* Lavallee Decl. Exs. A & B.

Dated:  August 27, 2018                    Respectfully submitted,

                                           **BERMAN TABACCO**

                                           By:  */s/ Joseph J. Tabacco, Jr.*
                                                    Joseph J. Tabacco, Jr. (JT1994)

                                           Nicole Lavallee
                                           A.   Chowning Poppler
                                           44 Montgomery Street, Suite 650
                                           San Francisco, CA  94104
                                           Telephone: (415) 433-3200
                                           Facsimile: (415) 433-6382
                                           Email:  jtabaccom@bermantabacco.com
                                                    nlavallee@bermantabacco.com
                                                    cpoppler@bermantabacco.com

                                           Jay W. Eng
                                           One Liberty Square
                                           Boston, MA 02109
                                           Telephone: (617) 542-8300
                                           Facsimile: (617) 542-1194
                                           Email: jeng@bermantabacco.com

                                           *Counsel for Movant Utah Retirement Systems*

11

## CERTIFICATE OF SERVICE

I am employed by Berman Tabacco, 44 Montgomery Street, Suite 650, San Francisco, California, 94104. I am over the age of 18 years and am not a party to this action. On August 27, 2018, using the U.S. District Court for the Southern District of New York's CM/ECF Electronic Filing system ("ECF system"), with the ECF ID registered to Joseph J. Tabacco, Jr. and at his direction, I filed and electronically served true and correct copies of the foregoing document(s) on the recipients designated on the Electronic Mail Notice List for this case. The ECF system is designed to automatically generate an e-mail Notice of Electronic Filing ("NEF") message to all parties in the case, which constitutes service. The attached Manual Notice List generated by CM/ECF indicates that no participants require service by mail.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at San Francisco, California, on August 27, 2018.

_____
Kathy Becker

1

**Mailing Information for a Case 1:18-cv-04993-NRB Simco v. Aegean Marine Petroleum Network Inc. et al**

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Naumon A Amjed**
  namjed@ktmc.com,rdegnan@ktmc.com,hpaffas@ktmc.com,iyeates@ktmc.com,creese@ktmc.com,4980043420@filings.docketbird.com,mswift@ktmc.com

- **Peretz Bronstein**
  peretz@bgandg.com,soloveichik@bgandg.com,ashi@bgandg.com

- **Jason N. Kleinwaks**
  jkleinwaks@gibsondunn.com

- **Eduard Korsinsky**
  ek@zlk.com

- **Nicole Catherine Lavallee**
  nlavallee@bermantabacco.com,ysoboleva@bermantabacco.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Christopher Lometti**
  clometti@cohenmilstein.com,efilings@cohenmilstein.com

- **Kim Elaine Miller**
  kim.miller@ksfcounsel.com,dawn.hartman@ksfcounsel.com,kimmiller225@yahoo.com

- **Lesley Frank Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com

- **Ira M. Press**
  ipress@kmllp.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,2879289420@filings.docketbird.com,e_file_sd@rgrdlaw.com

- **Daniel Sadeh**
  dsadeh@bernlieb.com

- **Joseph J. Tabacco , Jr**
  jtabacco@bermantabacco.com,ysoboleva@bermantabacco.com

- **Matthew L Tuccillo**
  mltuccillo@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)