**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Bar No. 191305)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

*Counsel for Lead Plaintiff Policemen's
Annuity and Benefit Fund of Chicago and
Lead Counsel for the Putative Class*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

ANTHONY JOSEPH PETERS, Individually and on Behalf of All Others Similarly Situated,

               Plaintiff,

         v.

TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN,

               Defendants.

Case No. 5:22-cv-08168-EJD

<u>CLASS ACTION</u>

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

Date:    April 18, 2024
Time:   9:00 A.M.
Judge:  Honorable Edward J. Davila
Dept:   4, 5th Floor

Plaintiff respectfully submits this memorandum of law in opposition to Defendants' Request for Judicial Notice.[1]  To support improper factual arguments in their Motion to Dismiss, Defendants have asked the Court to consider hundreds of pages of extrinsic material, including:  (1) selected excerpts from two SEC filings never referenced in the Complaint (Exhibits 28 and 29); (2) a "transcript" of verbal statements made by Defendants at a healthcare conference, as reported by third-party Bloomberg LP (Exhibit 4); and (3) selected excerpts from twelve SEC filings referenced in the Complaint (Exhibits 5–16).

Defendants' request should be denied because it improperly injects factual disputes and seeks to have this Court prematurely resolve those disputes.  Indeed, Defendants are guilty of exactly what the Ninth Circuit sought to root out when it struck down the "concerning pattern in securities cases" where defendants "exploit[] these procedures" and make "unscrupulous use of extrinsic documents to resolve competing theories against the complaint."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Here, discovery has not yet begun because the PSLRA precludes discovery prior to the resolution of a motion to dismiss.  15 U.S.C. § 78u–4(b)(3)(B).  Thus, Plaintiff has had no opportunity to develop a full factual record—yet Defendants insist that the Court must accept their version of the facts as true and resolve factual disputes in their favor.  That is not the law.

# I.    LEGAL STANDARD

Ordinarily, when "matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion converts into a motion for summary judgment" and "both parties must have the opportunity 'to present all the material that is pertinent to the motion.'"  *Khoja*, 899 F.3d at 998.  The two exceptions to this rule are "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201."  *Id.*

---

[1] Capitalized terms not defined herein have the meanings in the Amended Complaint ("Complaint") (ECF 83).  Citations to "¶_" are to the Complaint.  Emphasis is added and citations are omitted unless otherwise stated.

1

With respect to incorporation by reference, on a motion to dismiss a court can consider an extrinsic document "not physically attached to the complaint" only if its "authenticity is not contested and the plaintiff's complaint necessarily relies on [it]." *Matter of Ferrante*, 2023 WL 8449198, at *1 (9th Cir. 2023). Critically, incorporation by reference may not be used by defendants to "insert their own version of events" or "disput[e] the factual allegations in the complaint." *Khoja*, 899 F.3d at 1002–03. Further, "[t]he incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Khoja*, 899 F.3d at 1014.

As to judicial notice, Rule 201 of the Federal Rules of Evidence permits courts to notice an adjudicative fact if it is "not subject to reasonable dispute," meaning the fact is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, judicial notice is only permissible as to "***undisputed*** matters," and a district court abuses its discretion when it takes "judicial notice of ***disputed*** facts." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original).

## II.    DEFENDANTS' REQUEST AS TO EXHIBITS 28 AND 29 SHOULD BE DENIED

Defendants argue that their own self-serving statements ***after this*** lawsuit was filed should be assumed true, and that this "demolishes Plaintiff's" allegations. Mot. at 28; ECF 87 at 4.) Specifically, Defendants request that this Court take judicial notice of two of their post-Class Period SEC filings to make sweeping factual assertions, including that "Twist's business has continued to prosper" following the corrective disclosure, that Twist has in fact earned greater "annual revenue," the number or frequency of "repeat customers" after the Class Period, the success of shipments and manufacturing at Twist's "Oregon facility," and the "shares of Twist stock" held by Individual Defendants on the dates of insider sales. Mot. at 1, 3, 26, 28 (citing Defs. Exs. 28 and 29).)

Plaintiff disputes each of Defendants' factual contentions and Exhibits 28 and 29 should be stricken. Defendants concede that these exhibits are not referenced in the Complaint, and solely request consideration by this Court under the doctrine of judicial notice. ECF 87 at 4. However, such documents can only be considered for the purpose of determining what statements they contain, not

2

to prove the truth of their contents. *Khoja*, 899 F.3d at 999–1000 ("a court cannot take judicial notice of disputed facts" and "[i]t is improper to judicially notice a [document] … subject to varying interpretations, and [where] there is a reasonable dispute as to what the [document] establishes"). Judicial notice must be denied where, like here, defendant relies on such documents to determine factual issues at the pleading stage. *See, e.g.*, *Evans v. NBCUniversal Media, LLC*, 2021 WL 4513624, at *2 (C.D. Cal. July 23, 2021) (denying "[d]efendants' request for the Court to take judicial notice of DreamWorks Animation's 2007 10-K SEC filing because the Court cannot take judicial notice of the truth of the contents therein").

That is precisely what Defendants do here: they rely on extrinsic documents to establish factual truths and have the Court resolve factual issues in their favor. For example, Defendants urge this Court to take judicial notice of Exhibit 28 (excerpts from Twist's Proxy Statement filed with the SEC on January 6, 2023) for "the ***fact that*** the Individual Defendants both retained substantial shares of Twist stock after their alleged trades." Mot. at 26. But that is not a "fact" at all, and Plaintiff vigorously contests Defendants' assertion. Moreover, nothing in Exhibit 28 identifies what shares and options Leproust and Thorburn ***retained*** on the dates of the insider sales alleged in the Complaint. Instead, Exhibit 28 solely purports to state the number of shares and options Leproust and Thorburn happened to be holding as of December 9, 2022, with no indication of when they were granted, acquired, or vested, or as to what portion was held and available to be sold on the dates of their earlier insider sales during the Class Period. Defs. Ex. 28 at 51. Indeed, as Plaintiff alleges in the Complaint, Leproust and Thorburn sold more than 76% and 85%, respectively, of their Twist holdings during the Class Period reaping over $85 million in insider proceeds, and, tellingly, neither of them ever sold a single share of stock on the open market before or after the Class Period. ¶¶179–184. Similarly, Defendants' request that the Court take judicial notice of Exhibit 29 (excerpts from Twists 2022 10-K filed November 21, 2023) to disprove "Scorpion's accusations" with factual assertions about "Twist's business" and activity in its "Oregon facility," Mot. at 3, would inappropriately resolve disputed facts for Defendants.

Such factual issues cannot be resolved on the current record, particularly since discovery is statutorily stayed under the PSLRA. 15 U.S.C. § 78u–4(b)(3)(B). Indeed, as the Ninth Circuit has

3

cautioned, "[i]f defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Khoja*, 899 F.3d at 999.

## III.    DEFENDANTS' REQUEST AS TO EXHIBIT 4 SHOULD BE DENIED

In the Complaint, Plaintiff challenges Defendant Leproust's March 12, 2019, statement regarding Twist's manufacturing process that the company "ha[d] actually perfect quality," and "ship[ped] perfect DNA," ¶158. Leproust's remarks appear in a transcript published by Thomson Reuters. *See* Bauer Decl., Ex. 4 at p.3. On their motion to dismiss, however, Defendants request this Court to instead adopt a competing Bloomberg transcript that reports her statement differently: that Twist "see[s] perfect DNA" rather than "ships perfect DNA." Mot. at 15 (citing Defs. Ex. 4 at 2))

In doing so, Defendants are plainly injecting a factual dispute as to which transcript the Court should accept. Defendants are unclear about which the doctrine they are relying on—in their motion requesting consideration they solely invoke incorporation by reference, ECF 87 at 1–2, while in their motion to dismiss brief they suggest instead that Exhibit 4 is "subject to judicial notice," ECF 86 at 15. In either event, their request is improper as it requires the Court to accept Defendants' proffered transcript for the purported truth of its contents and to determine disputed facts. As the Ninth Circuit has held, "[i]t is improper to judicially notice a transcript when the substance of the transcript 'is subject to varying interpretations, and there is a reasonable dispute as to what the [transcript] establishes.'" *Khoja*, 899 F.3d at 1000 (quoting *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011)); *see also Khoja*, 899 F.3d at 1002-03 (incorporation by reference may not be used by defendants to "insert their own version of events" or "disput[e] the factual allegations in the complaint"); *Unlockd Media, Inc. Liquidation Tr. v. Google LLC*, 2023 WL 6226379, at *3 (N.D. Cal. Sept. 22, 2023) (denying defendants' request to find documents incorporated by reference because "even if the Court were to consider these documents as 'extensively relied upon,' it could not take [d]efendants' next requested step and rely on them to undermine the substantive truth of Plaintiffs' allegations").

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

5:22-cv-08168-EJD

## IV.   DEFENDANTS' REMAINING SEC FILINGS (EXHIBITS 5–16) CANNOT BE CONSIDERED FOR THEIR TRUTH

Plaintiff references Exhibits 5–16 in the Complaint for the purpose of identifying Defendants' Class Period statements.  That is not a basis for the Court to incorporate these documents by reference for purposes of taking all of the facts therein as true and assuming Defendants' version of disputed facts on a motion to dismiss.  *See, e.g.*, *Khoja*, 899 F.3d at 1002–03 (incorporation by reference may not be used by defendants to "insert their own version of events" or "disput[e] the factual allegations in the complaint").

Yet Defendants do just that. For example, Defendants cite Exhibits 5-9 to make each of the following disputed factual assertions:

- "For its fiscal year ("FY") 2022, the Company served approximately 3,300 customers … with 98% of the revenue from repeat customers."  Mot. at 2 (citing Defs. Ex. 9 at 50).

- "Notably, there has not been any regulatory action against Twist."  Mot. at 3 (citing Defs. Exs. 5 at 76, 6 at 78, 7 at 75-77, 8 at 65-67, 9 at 64-66, 29 at 65-67.1); *see also* Mot. at 1 ("Twist is not the subject of any regulatory enforcement action, whether related to Scorpion's accusations or otherwise."); Mot. at 28 ("The fact that there has been no government investigation or other action related to the allegations in the Scorpion Report or otherwise further weighs against any inference of scienter.").

- "[T]he fact that Twist's financial statements were audited by prominent accounting firms and that these outside auditors gave clean audit opinions and did not identify any misallocation of costs of revenue or R&D expenses, or inflated gross margins refutes any inference [of scienter]."  Mot. at 27–28 (citing Mot. at 3, which relies on Defs. Exs. 5 at 76, 6 at 78, 7 at 75–77, 8 at 65–67, 9 at 64–66, 29 at 65–67).

Not only do Defendants improperly inject factual disputes, their exhibits do not actually support their factual assertions.  For example, nothing in the SEC filings cited by Defendants states that there has not been—or is not currently—a "regulatory action," "regulatory enforcement action," or "government investigation or other action" against Twist for its misclassification of costs, inflated gross margins, or issues revealed by the Scorpion Report.  Moreover, if Twist were the subject or

5

target of an investigation, it's unlikely this would be public, particularly if Twist is cooperating with the enforcement authorities investigating its conduct. *See, e.g.*, U.S. Securities & Exchange Commission, "How Investigations Work" ("All SEC investigations are conducted privately.")[2]; U.S. Dep't of Justice Manual, Disclosure of Information Concerning Ongoing Criminal, Civil, or Administrative Investigations, Justice Manual § 1-7.400 ("DOJ generally will not confirm the existence of or otherwise comment about ongoing investigations.")[3]. This naked factual assertion by Defendants' lawyers cannot be accepted on a motion to dismiss.

Similarly, the purported "fact" that PwC issued unqualified audit opinions on Twist's financial statements is not determinative that those financial statements and accompanying disclosures complied with applicable accounting standards and SEC financial reporting rules. As noted in PwC's audit reports, Twist's "management is responsible" for the "consolidated financial statements." *See, e.g.*, Defs. Ex. 7, Twist 2020 10-K at p.75. PwC audited Twist's financial statements on a "test-basis,"[4] and such testing does not address all aspects of Twist's financial statements, and may not have even pertained to the misstatements identified. At this stage, Plaintiff does not have access to PwC's audit workpapers and related discovery and thus has no opportunity to substantively respond to Defendants' "new version of the facts." *Khoja*, 899 F.3d at 1003.

Moreover, there is particularly good reason to question Defendants' assertions here given that PwC found that, throughout the Class Period, Twist did not maintain effective internal control over financial reporting due to three material weaknesses, including related to "the accuracy and occurrence … [of] revenues," the "accuracy" of "customer order" data, "revenue processes," and "preparation of the financial statements." *See, e.g.*, Defs. Ex. 7, Twist's 2020 10-K at p.75, Ex. 8, Twist's 2021 10-K at p.65. PwC's audit report emphasized that even one material weakness creates a "reasonable

---

[2] Available at https://www.sec.gov/enforcement/how-investigations-work (last visited Jan. 25, 2024).

[3] Available at https://www.justice.gov/jm/jm-1-7000-media-relations#1-7.530#1-7.530 (last visited Jan. 25, 2024).

[4] *See, e.g.*, Defs. Ex. 7, Twist 2020 10-K at p.76.

6

possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis." *Id.* Put differently, PwC disclosed to investors that, even after completing its audit, a reasonable possibility continued to exist of a material error involving Twist's costs, expenses, and gross margins.

The same principles apply to Exhibits 10–16: they may only be considered for the existence of Defendants' Class Period statements and cannot be accepted for the truth of the statements therein or for factual assertions which Plaintiff vigorously disputes. At this stage—well before any discovery has begun—Defendants' approach is improper and their request should be denied.

## V.  CONCLUSION

For the foregoing reasons, Defendants' request for judicial notice should be denied.

Dated: January 26, 2024                          Respectfully submitted,

By: */s/ Joseph A. Fonti*
**BLEICHMAR FONTI & AULD LLP**
Joseph A. Fonti (*pro hac vice*)
jfonti@bfalaw.com
George N. Bauer (*pro hac vice*)
gbauer@bfalaw.com
Nancy A. Kulesa (*pro hac vice*)
nkulesa@bfalaw.com
Benjamin Burry (*pro hac vice*)
bburry@bfalaw.com
Joseph W. Baier (*pro hac vice*)
jbaier@bfalaw.com
7 Times Square, 27th Floor
New York, New York 10036
Tel: (212) 789-1340
Fax: (212) 205-3960

– and –

Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020

7

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION                          5:22-cv-08168-EJD
TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

*Counsel for Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago and Lead Counsel for the Putative Class*

John A. Kehoe (*pro hac vice*)
**KEHOE LAW FIRM, P.C.**
41 Madison Avenue, 31st Floor
New York, NY 10010
Telephone: (215) 792-6676
jkehoe@kehoelawfirm.com

*Additional Counsel for Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago*

8

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION          5:22-cv-08168-EJD
TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 26, 2024.

*/s/ Joseph A. Fonti*
Joseph A. Fonti

9