**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Bar No. 191305)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

*Counsel for Lead Plaintiff Policemen's*
*Annuity and Benefit Fund of Chicago and*
*Lead Counsel for the Putative Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

ANTHONY JOSEPH PETERS, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

        v.

TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN,

        Defendants.

Case No. 5:22-cv-08168-EJD

CLASS ACTION

**PLAINTIFF'S SUPPLEMENTAL SUBMISSION REGARDING DEFENDANTS' MOTION TO DISMISS**

PLAINTIFF'S SUPPLEMENTAL SUBMISSION REGARDING DEFENDANTS' MOTION TO DISMISS
5:22-cv-08168-EJD

Pursuant to Local Rule 7-3(d), Plaintiff respectfully submits this Supplemental Submission regarding Defendants' Motion to Dismiss (ECF No. 86).[1]  Specifically, this submission addresses Defendants' reliance in their Reply brief on *Ng v. Berkeley Lights, Inc.*, 2024 WL 695699 (N.D. Cal. Feb. 20, 2024) (*see* ECF No. 93, at 4), a decision that was issued on February 20, 2024, almost a month after Plaintiff's opposition was filed on January 26, 2024.  Although Defendants concede, as they must, that the November 15, 2022, Scorpion Capital report "achieved its goal, and caused Twist's stock price to decline by 20% on the day the Report was published," (*see* ECF No. 86, at 3), they nonetheless argue in their Reply that the report cannot constitute a loss causation event, citing *Berkeley Lights*.  But the Ninth Circuit prohibits the application of a bright line rule and instead directs the courts to examine the facts and circumstances of each case.  *In re BofI Holdings, Inc., Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020).  Here, unlike *Berkeley Lights*, the facts establish that the Scorpion Report "was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff."  *Berkeley Lights*, 2024 WL 695699, at \*15 (quoting *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1119 (9th Cir. 2013)). This is a material and dispositive difference, and the Court should reject Defendants' loss causation argument.

First, the express reaction of investors at the time of the Scorpion Report makes clear that the nature of the Report was ***not*** one that investors took with a "healthy grain of salt."  *BofI*, 977 F.3d at 797.  In stark contrast to *Berkeley Lights*, investors here specifically said that the information uncovered in the Scorpion Report caused the stock drop and resulted in an "overhang on the story and investor sentiment." (¶ 202.) This is because the Scorpion Report "provided new information to the market that was not yet reflected in the company's stock," *see BofI*, 977 F.3d at 795, which Defendants do not dispute.

---

[1] Capitalized terms not defined herein have the meanings in the Amended Complaint ("Complaint") (ECF No. 83).  Citations to "¶_" are to the Complaint.  Emphasis is added and citations are omitted unless otherwise stated.

1

Specifically, Wall Street analysts connected the information disclosed for the first time in the Scorpion Report to the loss investors suffered:

- On November 18, 2022, an analyst report from Evercore ISI stated that "[t]he recent short report noted that TWST dismissed PWC as its auditor and had hired E&Y. . . . The general investor feedback has been that accounting firm change is not a good sign." (¶ 201.)

- On November 18, 2022, JP Morgan noted that "[Twist's] management had limited commentary regarding the [Scorpion] short report" and "the short report will continue to be an overhang on the story and investor sentiment for a number of quarters." (¶ 202.)

- On November 18, 2022, SVB Securities stated that the "[t]he stock reaction . . . suggests that there is significant doubt on whether TWST can deliver on its now higher FY24 guide and steep gross margin improvements" and that Twist's reaction to the Scorpion report "is likely to be perceived as aggressive and reactionary to the short report given an uncertain macro backdrop next year." (¶ 203.)

- On December 7, 2022, CrispIdea Equity Research reported that "[r]ecently, it has also been labelled as 'cash burning inferno' by a short selling company Scorpion Capital. The stock of the company reacted soon to this news and it tumbled." (¶ 204.)

Accordingly, Plaintiff here has adequately alleged that the "market treat[ed] the allegations in [the Scorpion Report] as sufficiently credible to be acted upon as truth, and the inflation in the stock price attributable to the defendant[s'] misstatements [was] dissipated as a result." *BofI*, 977 F.3d at 792.

Critically, neither *Berkeley Lights*, nor any of the other cases cited in Defendants' papers, contains similar facts demonstrating the market's clear reliance on the short-seller's report. *See Berkeley Lights*, 2024 WL 695699, at *16–17;[2] *see also BofI*, 977 F.3d at 797; *In re Nektar*

---

[2] A copy of the operative complaint in *Berkeley Lights* is attached to the accompanying Declaration of George N. Bauer as Exhibit 2.

*Therapeutics Sec. Litig.*, 34 F.4th 828 (9th Cir. 2022); *In re eHealth, Inc., Sec. Litig.*, 2023 WL 6390593 (N.D. Cal. 2023); *Leacock v. IonQ, Inc.*, 2023 WL 6308045 (D. Md. 2023).  In fact, investors had the exact opposite reaction in *Berkeley Lights*.  The *Berkley Lights* complaint alleged that "[c]ontemporaneous analyst reports confirm the effectiveness of Berkeley Lights's PR strategy" to dispel the information in the short report.  And those analysts concluded, among other things, that "we see little merit in most of the accusations made in the short report."  (Bauer Decl., Ex. 2 (*Berkeley Lights* complaint), at ¶147.)

Second, unlike in *Berkeley Lights*, the investors' reaction to and reliance on the Scorpion Report in this case was reasonable because it is accurate and reliable.  In *Berkeley Lights*, the court expressed "reservations as to the reliability of the Scorpion Report" because it was the sole source of the plaintiff's allegations.  *Berkeley Lights*, 2024 WL 695699, at *9.  By contrast, the allegations in Plaintiff's Amended Complaint are not based solely on the Scorpion Report, but rather a variety of sources, including, but not limited to, various former employees whose statements independently corroborate nearly all the misconduct revealed for the first time in the Scorpion Report (*see* ¶ 199). These include, but are not limited to:

- FE-1, a former Twist engineer and manager responsible for manufacturing and QC, who provided first-hand information about Twist's practice of categorizing production costs as R&D (¶¶ 57–58), reporting false error rates and turnaround times (¶ 61), and Twist's lack of automation (¶¶ 59–60).

- FE-2, a former Twist manufacturing associate and supervisor, who provided details about the individual defendant's access to real-time manufacturing data and first-hand accounts of internal discussions contradicting the Defendants' false and misleading statements (¶¶ 65–69).

- FE-3, a former Twist director of bioinformatics and data science, who provided first-hand information about Twist's lack of automation and production deficiencies (¶ 79).

- FE-4, a former Twist application scientist, who reported on "hundreds" of conversations directly with the individual defendants about customer complaints and received instructions on how to minimize or ignore such complaints  (¶¶ 80-83).

3

PLAINTIFF'S SUPPLEMENTAL SUBMISSION REGARDING DEFENDANTS' MOTION TO DISMISS
5:22-cv-08168-EJD

- FE-5, a former Twist sales specialist, who provided information about Twist's inability to meet turnaround times  (¶ 87).
- FE-6, a former Twist employee engaged in shipping and manufacturing, who reported on Twist's practice of manipulating reported turnaround times (¶ 92), and recounted Twist's history of production errors (¶ 94).

For the reasons stated herein and in Plaintiff's opposition brief, Defendant's motion to dismiss should be denied.

Dated: April 25, 2024                                    Respectfully submitted,

                                                        By: */s/ Joseph A. Fonti*
                                                        **BLEICHMAR FONTI & AULD LLP**
                                                        Joseph A. Fonti (*pro hac vice*)
                                                        jfonti@bfalaw.com
                                                        George N. Bauer (*pro hac vice*)
                                                        gbauer@bfalaw.com
                                                        Nancy A. Kulesa (*pro hac vice*)
                                                        nkulesa@bfalaw.com
                                                        Benjamin Burry (*pro hac vice*)
                                                        bburry@bfalaw.com
                                                        Joseph W. Baier (*pro hac vice*)
                                                        jbaier@bfalaw.com
                                                        7 Times Square, 27th Floor
                                                        New York, New York 10036
                                                        Tel: (212) 789-1340
                                                        Fax: (212) 205-3960

                                                        – and –

                                                        Lesley E. Weaver (Bar No. 191305)
                                                        lweaver@bfalaw.com
                                                        1330 Broadway, Suite 630
                                                        Oakland, California 94612
                                                        Tel.: (415) 445-4003
                                                        Fax: (415) 445-4020

                                                        *Counsel for Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago and Lead Counsel for the Putative Class*

                                                        John A. Kehoe (*pro hac vice*)
                                                        **KEHOE LAW FIRM, P.C.**

4

41 Madison Avenue, 31st Floor
New York, NY 10010
Telephone: (215) 792-6676
jkehoe@kehoelawfirm.com

*Additional Counsel for Lead Plaintiff*
*Policemen's Annuity and Benefit*
*Fund of Chicago*

5

### CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 25, 2024.

*/s/ Joseph A. Fonti*
Joseph A. Fonti

6

PLAINTIFF'S SUPPLEMENTAL SUBMISSION REGARDING DEFENDANTS' MOTION TO DISMISS
5:22-cv-08168-EJD