JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
M. TODD SCOTT (SBN 226885)
tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:      +1 415 773 5700
Facsimile:      +1 415 773 5759

JAMES C. RUTTEN (SBN 201791)
james.rutten@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

ACHYUT J. PHADKE (SBN 261567)
achyut.phadke@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Defendants
TWIST BIOSCIENCE CORPORATION, EMILY M.
LEPROUST, and JAMES M. THORBURN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY JOSEPH PETERS, Individually and on Behalf of All Others Similarly Situated, | Case No. 5:22-cv-08168-EKL |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO NON-PARTIES JOANNA LIPINSKI AND ERIC OSADA** |
| v. | |
| TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN, | |
| Defendants. | Date:     March 24, 2026<br>Time:     10:00 a.m.<br>Judge:    Honorable Susan van Keulen<br>Ctrm:     6, 4th Floor |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION....................................................................................................... 1

II.     BACKGROUND.......................................................................................................... 3

     A.      Plaintiff's Complaint Is Founded Solely On Anonymous Former Employee Allegations.................................................................................................... 3

     B.      Another Former Employee Has Already Denied Making The Statements Attributed To Him In The Complaint.................................................................... 3

     C.      The Depositions Are Important To Upcoming Mediation And Class Certification Proceedings ..................................................................................... 4

     D.      Plaintiff And The Deponents' Counsel Are Jointly Trying To Delay The Depositions Until After The Mediation and Class Certification Deadlines .............5

III.    ARGUMENT ............................................................................................................ 8

     A.      Defendants' Subpoenas Are Relevant And Proportional To The Case................... 9

     B.      Plaintiff And The Deponents Should Not Be Permitted To Delay The Depositions ................................................................................................ 11

     C.      The Deponents Should Be Directed To Comply With The Narrowed Document Subpoenas .......................................................................................... 12

IV.     CONCLUSION ........................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**                                                                            **Page(s)**

*Activerain Corp. v. Move, Inc.*,
2008 WL 11343023 (C.D. Cal. Apr. 29, 2008).............................................................. 11

*C.R. Laurence Co., Inc. v. Frameless Hardware*,
2022 WL 2035955 (C.D. Cal. Jan. 13, 2022)............................................................... 11

*Crews v. Rivian Automotive, Inc.*,
2023 WL 9420834 (N.D. Cal. Sept 11, 2023)........................................................... 9, 11

*Dykes v. BNSF Ry. Co.*,
2018 WL 1456931 (W.D. Wash., Mar. 23, 2018)....................................................... 12

*Houserman v. Comtech Telecomms. Corp.*,
2019 WL 6052407 (W.D. Wash. Nov. 15, 2019) ....................................................... 12

*In re Millennial Media, Inc. Sec. Litig.*,
2015 WL 3443918 (S.D.N.Y. May 29, 2015) ............................................................ 10

*SPINS LLC, et al., v. Bedrock Analytics LLC*,
2024 WL 4031045 (N.D. Cal. Sept. 2, 2024)........................................................... 8, 10

*In re: Subpoena to Third Party Sentieon, Inc.*,
2022 WL 17477092 (N.D. Cal. Dec. 6, 2022) ......................................................... 8, 10

*Weston v. Docusign, Inc.*,
2026 WL 194400 (N.D. Cal. Jan. 26, 2026) ........................................................ 2, 9, 10

*Zamora v. D'Arrigo Bros. Co.*,
2006 WL 931728 (N.D. Cal. Apr. 11, 2006)............................................................... 11

**Statutes and Rules**

15 U.S.C.
§ 77k, Securities Act of 1933 Section 11 ............................................................... 3, 4
§ 78j(b), Securities Exchange Act of 1934 Section 10(b)....................................... 3, 4

Fed. R. Civ. P.
Rule 23(a)(4) ........................................................................................................ 4, 10
Rule 23(g)(1)(A)(i).................................................................................................... 10
Rule 26(d)................................................................................................................. 11
Rule 26(d)(3) ............................................................................................................ 8, 9
Rule 37(a)(1) .............................................................................................................. 1
Rule 45(d)(2)(B)........................................................................................................ 12

### **MEMORANDUM OF POINTS AND AUTHORITIES**[1]

### **I.    INTRODUCTION**

This motion seeks to compel deposition testimony and document production from non-parties Joanna Lipinski and Eric Osada (collectively, the "Deponents").[2] The Deponents are two of six anonymous "former employee" ("FE") witnesses cited by Plaintiff in its Amended Complaint ("AC") to support accusations of securities fraud against Twist Bioscience Corporation ("Twist"), its CEO Emily Leproust, and its former CFO James Thorburn. When the Court denied in part Defendants' motion to dismiss the AC, it held that the statements Plaintiff attributed to the FEs, including the Deponents, enabled Plaintiff to state a claim under the heightened pleading standards that apply in securities fraud actions.

But there is reason to doubt that the statements attributed to the Deponents and the other FEs were accurately reported. Notably, another of the FE witnesses has provided a sworn declaration attesting that that his "words [were] fabricated or mischaracterized [by Plaintiff] to unfairly accuse Twist, Dr. Leproust, and Mr. Thorburn of wrongdoing." Ex. 1 ¶ 16 (Declaration of Faris Abdelaziz, "Abdelaziz Decl."). Defendants have the right to depose the Deponents to determine whether the statements attributed to them were likewise misrepresented.

Accordingly, Defendants subpoenaed the Deponents to take their depositions. Though Defendants offered the Deponents multiple weeks for their limited-scope depositions, they have refused to appear unless and until Twist produces to Plaintiff all of the Deponents' custodial files from their tenures at the Company. But Defendants do not seek to question the Deponents about unproduced Twist documents. Instead, Defendants want to ask them whether they actually made the statements attributed to them in the AC, and if so, what basis they had for those statements. Defendants have stipulated that they will not ask the Deponents about any unproduced Twist

---

[1] Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, Defendants certify that they have in good faith conferred with Deponents in an effort to obtain the requested discovery without court action.

[2] "Ex. _" refers to the exhibits attached to the Declaration of Todd Scott in Support of Defendants' Motion to Compel Compliance with Subpoena to Non-Parties Joanna Lipinski and Eric Osada ("Scott Decl."), filed herewith. "Dismissal Order" refers to the Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, ECF No. 117, dated September 3, 2025.

documents.

Now is the time to take the Deponents' testimony. Plaintiffs in securities cases typically rely on anonymous FE testimony, and on that basis, often get past the pleading stage. Plaintiffs then frequently do everything they can to prevent or delay the FEs from getting deposed, because the FEs often disavow the statements attributed to them. Early discovery of FEs can seriously affect the trajectory of a case, including by reopening the pleadings. Indeed, just last month, Judge Chhabria dismissed a securities case in its entirety after the FEs disavowed the statements attributed to them in the complaint. *See Weston v. Docusign, Inc.*, 2026 WL 194400, at *1 (N.D. Cal. Jan. 26, 2026). Misuse of anonymous FE allegations also bears on Plaintiff's class certification motion, which is due March 13, 2026, and on the parties' Court-ordered mediation, which is scheduled for March 31, 2026.[3]

Plaintiff's and the Deponents' argument for delaying the deposition is plainly pretextual. Until this dispute arose, neither Plaintiff nor Defendants had identified either Deponent as a custodian for purposes of Twist's document production, reflecting that neither party expected their Company files to contain information that was relevant and proportional to the case. But now Plaintiff is suddenly insisting that Twist collect and produce the Deponents' custodial files before any deposition may proceed, asserting that absent such production, Plaintiff itself may seek to depose the Deponents a second time following document production. The Deponents—who are being represented by a lawyer paid for *by Plaintiff's counsel*, and who is marching in lockstep with Plaintiff—cite Plaintiff's own new threat to depose them on Company documents as the reason the depositions cannot proceed until the document production issue is resolved.

The Court should reject these coordinated delay tactics and compel the Deponents to appear for depositions no later than March 10, 2026. Additionally, the Court should direct the Deponents to comply with the document subpoenas, as narrowed during the meet-and-confer process as set forth below.

---

[3] The parties are in the process of finalizing and filing a Joint Stipulation and Proposed Order to Extend the ADR Deadline from March 4, 2026 to April 3, 2026 to accommodate the parties' March 31, 2026 mediation date.

MPA ISO Defs' Motion to Compel
Compliance with Subpoena,
No.: 5:22-cv-08168-EKL

## II.    BACKGROUND

### A.    Plaintiff's Complaint Is Founded Solely On Anonymous Former Employee Allegations

This lawsuit is a putative securities class action alleging violations of Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933. Plaintiff's fraud claims are founded on statements attributed to six FE witnesses who are not identified by name in the AC, but whom Plaintiff does not deny include Ms. Lipinski as "FE-3" and Mr. Osada as "FE-6." *See* Dismissal Order at 13 n.7 (citing AC ¶¶ 57-94); Scott Decl. ¶ 3. The Court denied Defendants' motion to dismiss on the grounds that the FE allegations, standing alone, were sufficient to state claims under Sections 10(b) and 11. *See* Dismissal Order at 5, 32. Regarding the Section 10(b) claim, the Court specifically relied on allegations attributed to the Deponents to find that Plaintiff sufficiently had alleged that Defendants made false statements, *see id.* at 14-15 (citing AC ¶¶ 79, 94(a)), and that Defendants acted with scienter, or intent to defraud, *id.* at 19 (citing AC ¶ 79 ("Plaintiff plausibly alleges facts giving rise to a strong inference of scienter based on facts provided by . . . FE-3.")).

### B.    Another Former Employee Has Already Denied Making The Statements Attributed To Him In The Complaint

Faris Abdelaziz, identified by Plaintiff as "FE-2" in the AC, *see* Scott Decl. ¶ 3, has submitted a sworn declaration disclaiming the statements that Plaintiff attributed to him in the AC. *See* Ex. 1 (Abdelaziz Decl.). As Mr. Abdelaziz explains under oath, he received a phone call from one of Plaintiff's representatives asking him "about [his] time working at Twist in connection to a lawsuit," *id.* ¶ 4, but he "never received a copy of any complaint" before it was filed and was "never asked to review the accuracy of any statements attributed to [him]." *Id.* ¶ 6. Indeed, "[u]ntil recently, [he] did not know that statements attributed to [him] had been included in any lawsuit against Twist." *Id.*

Mr. Abdelaziz attests that his "words [were] fabricated or mischaracterized [by Plaintiff] to unfairly accuse Twist, Dr. Leproust, and Mr. Thorburn of wrongdoing." *Id.* ¶ 16. For example, while Plaintiff alleges in the AC that Mr. Abdelaziz, as FE-2, said that Dr. Leproust and Mr.

- 3 -

Thorburn presented financial metrics at Company meetings that "contradicted Defendants' public statements," AC ¶ 67(a), Mr. Abdelaziz declares under oath that he "never stated, and do[es] not believe, that Dr. Leproust or Mr. Thorburn presented any information at Twist's internal meetings that 'contradicted Defendants' public statements.'" Ex. 1 ¶ 9 (Abdelaziz Decl.). To the contrary, Mr. Abdelaziz understood "the information that Twist leadership presented at internal meetings was consistent with its public statements." *Id.*

Likewise, while Plaintiff alleges that Mr. Abdelaziz, as FE-2, said that "Twist's [t]rue [product] [e]rror [r]ate was 10%'" and "one in ten of Twist's products failed quality control," AC ¶ 69, Mr. Abdelaziz declares that he "never stated that 'Twist's true error rate was 10%' or that 'one in ten of Twist's products failed quality control.'" *Id.* ¶ 11. Mr. Abelaziz further states under oath that those allegations are untrue: "These statements are incorrect . . . . No product that failed any part of the quality control process, including first pass yield, would be sent to a customer." *Id.*

It is small wonder that Plaintiff does not want the remaining FEs to be deposed, and is paying a lawyer to represent them and resist the depositions.

### C.    The Depositions Are Important To Upcoming Mediation And Class Certification Proceedings

Plaintiff's motion for class certification and appointment of class counsel is due March 13, 2026, and marks the next stage of this lawsuit. ECF No. 129 at 2. Class certification is predicated on the allegations in the operative complaint and generally presumes the legitimacy of factual allegations on which it is premised. Yet Mr. Abdelaziz's testimony shows that at least some portion of Plaintiff's FE allegations are "fabricated or mischaracterized." Ex. 1 ¶ 16 (Abdelaziz Decl.). That concern directly impacts class certification, because it bears on the adequacy of Plaintiff and its counsel to "fairly and adequately" represent the class. Fed. R. Civ. P. 23(a)(4). The issue also potentially will impact the size of any certified class. As noted, the Court specifically relied on statements attributed to the Deponents to find that Plaintiff sufficiently alleged a Section 10(b) claim, and the Deponents' rejection of those statements could collapse that claim, thereby preventing a class from being certified under Section 10(b). That would leave only the Section 11 claim, for which the putative class is likely much smaller.

The parties are also scheduled to participate in a Court-ordered mediation on March 31, 2026. Plaintiff's claims of fraud are premised *exclusively* on the alleged statements of the FEs, and Defendants need to test the bona fides of those statements in order to fairly consider any resolution of the case. It is difficult to see how the parties can have a productive mediation without Defendants having an opportunity to test the allegations that got the case past the pleading stage.

### D.    Plaintiff And The Deponents' Counsel Are Jointly Trying To Delay The Depositions Until After The Mediation and Class Certification Deadlines

When the AC was filed, Defendants identified the cited FEs and reached out to them, including the Deponents, to ask if Defendants' counsel could speak with them informally about the allegations attributed to them in the AC. Scott Decl. ¶ 4. The Deponents did not respond, and after Mr. Abdelaziz disclaimed the statements attributed to him, Defendants forwarded document and deposition subpoenas for the Deponents to Plaintiff's counsel, giving Plaintiff notice that Defendants would soon be serving the subpoenas. Scott Decl. ¶ 5; Ex. 3 (Osada Notice); Ex. 2 (Lipinski Notice). Defendants noticed Mr. Osada's deposition for February 18, 2026 in San Francisco, Ms. Lipinski's deposition for February 20, 2026 in San Francisco, and another FE's deposition for February 23, 2026 in Maine. Plaintiff and the Deponents' counsel then began deploying a series of delay tactics:

The "We're Not Available" Claim: Fewer than 90 minutes after Defendants gave notice to Plaintiff—and Plaintiff alone—the Deponent's counsel emailed Defendants out of the blue to claim that the Deponents (and the FE in Maine) uniformly were "not available on any of the noticed dates." Ex. 4 at 8-9 (Jan. 15, 2026 E-mail Chain with Deponents' Counsel Kevin Homiak). Counsel did not disclose how he had learned of the subpoenas without yet having been served with them, nor did he say how he was able to determine so quickly that each and every one of his clients was categorically unavailable on the selected dates. Indeed, he admitted a few minutes later that he still needed to "go through the hassle of finding dates for us and our clients." *Id*. at 7. Notably, counsel later acknowledged that Plaintiff's counsel "Bleichmar Fonti & Auld LLP is paying his attorneys' fees and costs in connection with this matter." Ex. 6 at 7 n.4 (Osada Objections to Subpoena).

MPA ISO DEFS' MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA,
NO.: 5:22-CV-08168-EKL

Defendants informed Plaintiff and the Deponents' counsel that, to accommodate the Deponents' professed scheduling conflicts (none of which has ever been specified), Defendants were willing to reschedule the depositions for any time during the period February 16 to March 10. Scott Decl. ¶¶ 6; Ex. 4 at 7 (Jan. 15, 2026 E-mail Chain with Deponents' Counsel Kevin Homiak). The Deponents' counsel has never taken Defendants up on this offer, and has never proposed any alternative date for any of the depositions. Scott Decl. ¶¶ 6.

The "A Forensic Consultant Will Take Months" Claim: Deponents' counsel then shifted gears, insisting that the depositions not go forward *at all* until the witnesses collected the documents sought in the document portions of the subpoenas. Incredibly, the Deponents' counsel insisted on "retaining an outside forensic expert" to gather documents from his clients—all individuals, not vast companies—while saying that it could take as long as "mid-April" to complete that process. Scott Decl. ¶ 7; Ex. 4 at 6 (Jan. 15, 2026 E-mail Chain with Deponents' Counsel Kevin Homiak). Additionally, he indicated that, even after the productions finally occurred, the depositions would need to be further delayed "to make sure everyone has sufficient time to review [the FEs'] document productions." Ex. 4 at 6 (Jan. 15, 2026 E-mail Chain with Deponents' Counsel Kevin Homiak). Of course, that conveniently would put the depositions *after* the Court-ordered mediation, and presumably *after* Defendants' May 8, 2026 deadline to oppose Plaintiff's class certification motion.

In response, Defendants informed the Deponents' counsel that they would not require the thoroughness of a forensic search to comply with the subpoenas. *Id*. at 1, 4; Scott Decl. ¶¶ 7-8. Then, in what could be a litigation first for a subpoenaed third party, counsel insisted that his clients were going to incur the expense of a forensic consultant *anyway*—with all the delay that would engender. *Id*. To forestall this gamesmanship, Defendants said they would withdraw virtually every document request in the subpoenas, and would *only* seek "communications with Plaintiff, its counsel, or any investigator, agent, or other person acting on behalf of Plaintiff or its counsel, that concern Twist Bioscience Corporation or this lawsuit (including all documents provided in connection with such communications)." Scott Decl. ¶ 9; Ex. 4 at 1 (Jan. 15, 2026 E-mail Chain with Deponents' Counsel Kevin Homiak). Defendants further agreed that they will not "seek the production of texts and will not otherwise require the witnesses to image their phones." *Id.* Given

MPA ISO DEFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA, NO.: 5:22-cv-08168-EKL

Defendants' drastic limitations of the document subpoenas, there is no reason Deponents cannot simply peruse their own e-mails, and produce the presumably tiny handful of responsive documents without delay. Though the Deponents' counsel said his clients would comply with this narrowed document request, to date, the Deponents have not produced a single document. Scott Decl. ¶ 13; *see also* Ex. 6 at 8 (Osada Objections to Subpoena) (committing to comply with the narrowed request); Ex. 5 at 8 (Lipinski Objections to Subpoena) (same).

The "Document Custodian" Argument: No longer having any basis for using a forensic consultant to generate months of delay, Plaintiff and the Deponents' counsel are now deploying another tactic. Plaintiff has demanded that Twist include all the FEs as custodians for purposes of Twist's *own* document production, and that the FE depositions be deferred until their custodial documents are produced from Twist's files. Scott Decl. ¶ 10. For two of the FEs (not at issue on this motion), Twist agreed to do so as a compromise in an attempt to resolve the overall dispute. *Id.* However, the two Deponents are not witnesses who otherwise could be included as custodians based on principles of relevance and proportionality, and indeed, *Plaintiff itself* did not ask to include them as custodians until Defendants announced their intent to take their depositions. *Id.* Yet Plaintiffs now are insisting that their documents be produced, and that their depositions not occur until after that production. And the Deponents' counsel, meanwhile, is refusing to make Deponents available for depositions until after the issue of whether to include them as custodians is resolved. Ex. 6 at 1 (Osada Objections to Subpoena) ("[W]e will not be producing Mr. Osada for a deposition" until "the Court resolves the parties' outstanding disputes regarding Twist's documents related to Mr. Osada"); Ex. 5 at 1 (Lipinski Objections to Subpoena) (same).

But Defendants do not seek to depose Deponents about unproduced documents. Indeed, Defendants did not name either Deponent as a witness in their initial disclosures, and they do not believe either of them has percipient knowledge about Plaintiff's allegations. Scott Decl. ¶ 10. Defendants merely seek to depose Deponents about whether they made the statements attributed to them in the AC, and if so, their bases for the supposed statements. To that end, Defendants stipulated to both Plaintiff's counsel and the Deponents' counsel that, at the depositions, Defendants "may use the Complaint and publicly available documents" to question them, but "*would not use internal*

MPA ISO DEFS' MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA,
NO.: 5:22-CV-08168-EKL

*Twist documents that have not [already] been produced to Plaintiff.* Ex. 7 (Feb, 4, 2026 E-mail from Defendants' Counsel to Plaintiff's Counsel) (emphasis added); Ex. 8 (Feb. 5, 2026 E-mail from Defendants' Counsel to Deponents' Counsel); *see also* Scott Decl. ¶¶ 14-15. Defendants asked Deponents' counsel to confirm that, in light of that commitment, his "clients will appear for depositions on the noticed dates (or alternatively, if those dates are inconvenient, that they are willing to reschedule within the four-week period [Defendants] previously offered." Ex. 8 at 2 (Feb. 5, 2026 E-mail from Defendants' Counsel).

Of course, Plaintiff immediately rejected this proposal, continuing to insist that Defendants add the Deponents as custodians and produce their custodial documents prior to any depositions. Ex. 8 (Feb. 6, 2026 E-mail from Plaintiff's Counsel). And, as one might expect of someone being paid by Plaintiff's lawyers, Deponents' counsel marched in lockstep, adding that he too "object[s] to scheduling their depositions before the parties resolve (or the Court decides) the outstanding issues regarding Defendants' document productions—as doing so risks our clients being deposed multiple times." Ex. 8 at 1-2 (Feb. 8, 2026 E-mail from Deponents' Counsel).

In short, Plaintiff's FE allegations got it past the pleading stage, and have already cratered in part. And now Plaintiff, along with the supposedly independent counsel on its payroll, are doing everything they can to prevent the remaining FEs from being deposed prior to the upcoming mediation and class certification deadline.

## III.    ARGUMENT

"The scope of allowable discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)." *In re: Subpoena to Third Party Sentieon, Inc.*, 2022 WL 17477092, at *1 (N.D. Cal. Dec. 6, 2022). Thus, parties may obtain discovery from non-parties where it is "relevant" to the party's claim or defense and "proportional to the needs of the case." *SPINS LLC, et al., v. Bedrock Analytics LLC*, 2024 WL 4031045, at *2 (N.D. Cal. Sept. 2, 2024) (quoting Fed. R. Civ. P. 26(b)(1)). Importantly, unless the Court orders otherwise, "methods of discovery may be used in any sequence," and "discovery by one party does not require any other party to delay its discovery." Fed. R. Civ. P. 26(d)(3).

### A.  Defendants' Subpoenas Are Relevant And Proportional To The Case

There is no dispute that even though the Deponents might not otherwise be relevant to the claims and defenses, Plaintiff has made them relevant by citing them in its AC. Plaintiff's allegations of fraud are premised on Plaintiff's representations about what Deponents purportedly said. At the motion to dismiss phase, the Court found that the statements Plaintiff attributes to the Deponents and other FEs were enough to state a claim for securities fraud. *See* Dismissal Order at 14-19. Obviously, whether the FEs actually said those things, and if so, their bases for them, are acutely relevant.

As noted, there is reason to doubt the statements Plaintiff ascribes to the Deponents. Another of Plaintiff's cited FEs disclaims making the statements attributed to him, denies their truth, and reports that Plaintiff never told him his statements would be used in a complaint, let alone asked him to verify the accuracy of the statements attributed to him. Ex. 1 ¶ 6 (Abdelaziz Decl.). Courts in this Circuit allow discovery to test the statements of confidential witnesses in securities actions, particularly where, as here, the accuracy of their cited statements is in question. *See, e.g.*, *Crews v. Rivian Automotive, Inc.*, 2023 WL 9420834, at \*1 (N.D. Cal. Sept 11, 2023) (denying motion to stay FE depositions pending completion of document discovery in a securities class action because "methods of discovery may be used in any sequence" and the "discovery by one party does not require any other party to delay its discovery," citing Fed. R. Civ. P. 26(d)(3) and Advisory Committee Notes thereto).

A recent decision in this District demonstrates the importance of testing FE allegations cited in a securities class action complaint. In *Weston v. Docusign, Inc.*, the complaint survived a motion to dismiss on the basis of anonymous FE allegations, just as Plaintiff's AC partly did here. Later, "the defendants sent a Rule 11 letter to the plaintiffs asserting that the complaint's description of the allegations of two confidential witnesses was not accurate," whether because "the confidential witnesses recanted their allegations" or because "the complaint misrepresented what the witnesses said in the first place." 2026 WL 194400, at \*1. The plaintiffs were forced to replead *without* the FE allegations. Judge Chhabria then held that the remaining allegations did not state a claim, and ordered that, "[g]iven the history of this case . . . the case is dismissed with prejudice." *Id.* at \*3.

Here, one of Plaintiff's FEs already has disclaimed the statements attributed to him, and if one or more of the other FEs likewise does so, Plaintiff's claims here also could collapse, as the claims did in *Weston*.

The Deponents' testimony is particularly important given Plaintiff's impending class certification motion, which is premised on the allegations contained in the AC. A central question at class certification is whether lead counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court "must consider . . . the work counsel has done in identifying or investigating potential claims in the action." *Id*., Rule 23(g)(1)(A)(i). If Deponents' testimony were to reveal a *second* or even *third* former employee who rejects the statements Plaintiff attributed to them, it would call into question whether Plaintiff is an adequate representative of the class, and whether counsel is adequate as well. *See In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918, at *1 (S.D.N.Y. May 29, 2015) ("[I]t is a best practice—if not an ethical imperative—for counsel, before designating a person as a CW [confidential witness] in a Complaint, to notify that person of counsel's intent to do so and to verify the statements that counsel propose to attribute to him or her."). As noted, Defendants should also be allowed to test the only source of Plaintiff's allegations for securities fraud—the testimony of the FEs—before the Court-ordered mediation occurs on March 31, 2026.

Defendants' discovery of Deponents is also proportional to the needs of the case, not just because their testimony is important to the integrity of the pleadings, to class certification, and to mediation, but because the information they possess about the accuracy of the AC's allegations is (i) already known to Plaintiff, and (ii) not available from any other source. *See Bedrock Analytics*, 2024 WL 4031045, at *2 (proportionality considers, among other things, the "parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

In short, discovery of the Deponents is plainly relevant, and the limited documents and limited-scope depositions that Defendants seek are proportional to the needs of the case.

MPA ISO DEFS' MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA,
NO.: 5:22-CV-08168-EKL

## B.    Plaintiff And The Deponents Should Not Be Permitted To Delay The Depositions

Plaintiff and the Deponents do not argue that the Deponents' depositions would be an undue burden, and indeed, do not object to the depositions as a general matter. *See* Ex. 6 at 1 (Osada Objections to Subpoena); Ex. 5 at 1 (Lipinski Objections to Subpoena). Instead, Plaintiff objects to the depositions prior to Twist producing the Deponents' custodial documents. This is despite the fact that when Plaintiff and Twist were initially negotiating document custodians, Plaintiff never requested either Deponent as a custodian. Scott Decl. ¶ 10. Plaintiff only decided to demand that they be included as custodians once Defendants named them as deponents. *Id.* Now, Plaintiff is using its own late-breaking request as a basis for delaying the depositions Defendants wish to take. And the lawyer Plaintiff's counsel is paying to represent the Deponents is locking arms with Plaintiff, refusing to proceed until the custodian dispute is resolved. There are two fundamental problems with this coordinated argument.

*First*, Plaintiff's professed desire for *more* document discovery than it initially sought is not a basis for the Deponents to avoid sitting for deposition. "[T]here is nothing improper with [parties] seeking depositions prior to the completion of other discovery." *C.R. Laurence Co., Inc. v. Frameless Hardware*, 2022 WL 2035955, at *3 (C.D. Cal. Jan. 13, 2022). Indeed, "it is improper for plaintiffs to refuse to attend depositions until after [document] discovery is completed," because Federal Rule of Civil Procedure 26(d) provides that "methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, does not operate to delay any other party's discovery." *Zamora v. D'Arrigo Bros. Co.*, 2006 WL 931728, at *5 (N.D. Cal. Apr. 11, 2006); *see also Activerain Corp. v. Move, Inc.*, 2008 WL 11343023, at *4 (C.D. Cal. Apr. 29, 2008) ("Plaintiff essentially argues that because defendant has not responded to discovery in a satisfactory manner and because document discovery in general has not concluded, plaintiff should not have to produce its principals or its financial advisor for deposition. Plaintiff has not shown good cause for a protective order."); *Crews*, 2023 WL 9420834, at *2 (same).

MPA ISO DEFS' MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA,
NO.: 5:22-CV-08168-EKL

*Second*, as Defendants have already stipulated, Twist's unproduced documents will not be at issue in Deponents' depositions, because "the purpose of a fact deposition like this is to question [the Deponents] about [their] personal knowledge about [their] allegations against Defendants, *which [they] laid out in [the] Complaint without access to any documents [Plaintiff] subsequently has sought in discovery.*" *Houserman v. Comtech Telecomms. Corp.*, 2019 WL 6052407, at \*2 (W.D. Wash. Nov. 15, 2019) (allowing noticed deposition to proceed despite document discovery not being "substantially complete") (emphasis added). In other words, Plaintiff was able to plead alleged statements from the Deponents in its AC without access to document discovery, and there is no reason Defendants should not reciprocally be permitted to test those allegations apart from any such document discovery.

Defendants' questioning of Deponents will not use Twist's unproduced documents, and Plaintiff will suffer no prejudice if the depositions proceed without any such documents being produced. Thus, "[w]hat Plaintiffs are really asking the Court to do is prioritize their request for written discovery over Defendants' request for depositions. The Federal Rules, however, specifically prohibit this kind of tit-for-tat discovery." *Dykes v. BNSF Ry. Co.*, 2018 WL 1456931, at \*3 (W.D. Wash., Mar. 23, 2018) (denying plaintiff's motion for protective order). To the extent Plaintiff later wants to question its own FEs about documents Defendants produce, Plaintiff can coordinate with their counsel, who is on Plaintiff's payroll.

### C.    The Deponents Should Be Directed To Comply With The Narrowed Document Subpoenas

Although Defendants drastically narrowed the scope of the document subpoenas as described above, the Deponents still objected to them, thereby obviating any obligation to produce absent an order compelling production. *See* Fed. R. Civ. P. 45(d)(2)(B). And, although the Deponents committed to comply with the narrowed document request, to date they have yet to produce a single document even though there is unlikely to be anything more than a small handful of responsive documents. Scott Decl. ¶ 13. The Deponents should be compelled to comply with their commitment forthwith.

MPA ISO DEFS' MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA,
NO.: 5:22-CV-08168-EKL

## IV.    CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court order Ms. Lipinski and Mr. Osada to comply with their subpoenas by producing documents forthwith, and sitting for depositions no later than March 10, 2026.

Dated:   February 10, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP
MUNGER, TOLLES & OLSON LLP


*/s/ James N. Kramer*
JAMES N. KRAMER

Attorneys for Defendants Twist Bioscience Corporation Emily M. Leproust, and James M. Thorburn

MPA ISO DEFS' MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA,
NO.: 5:22-CV-08168-EKL