JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
M. TODD SCOTT (SBN 226885)
tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

JAMES C. RUTTEN (SBN 201791)
james.rutten@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

ACHYUT J. PHADKE (SBN 261567)
achyut.phadke@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Defendants
TWIST BIOSCIENCE CORPORATION, EMILY M.
LEPROUST, and JAMES M. THORBURN

[Additional parties and counsel on signature pages]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY JOSEPH PETERS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN,<br><br>Defendants. | Case No. 5:22-cv-08168-EKL (SVK)<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTE**<br><br>Judge:   Honorable Susan van Keulen<br>Ctrm:    6, 4th Floor |

Pursuant to the Court's February 12, 2026 Order, Defendants Twist Bioscience Corporation ("Twist"), Emily Leproust, and James Thorburn; Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago ("Plaintiff"); and Non-Parties Joanna Lipinski and Eric Osada (collectively, the "FEs") respectfully submit this Joint Statement re Discovery Dispute.

The FEs are former employees of Twist who are cited in the Amended Complaint as sources of Plaintiff's allegations. The principal dispute is whether Defendants' depositions of the FEs can occur before Defendant Twist has produced records in its possession regarding the FEs. Mediation is scheduled for March 31, 2026, Defendants' class certification opposition is due May 8, 2026, fact discovery closes on September 16, 2026, and trial is set for September 13, 2027.

Defendants' compromise proposal is that the depositions go forward now but (i) Defendants will not introduce any documents at the FE depositions that have not already been produced to Plaintiff, (ii) Defendants will substantially narrow their request for documents from the FEs to just communications with Plaintiff or its representatives; and (iii) Defendants will agree to defer two other former employee depositions at Plaintiff's request.

Plaintiff's proposed compromise is that Defendants complete production, prior to the FE depositions, of (i) the responsive documents and communications that these FE witnesses authored, sent, received during their employment at Twist (the FE "Witness Files"); and (ii) documents pertinent to these individuals' depositions that are responsive to Plaintiff's RFPs 2, 10, 13, 17, and 25, which were served on Defendants on October 17, 2025.

**DEFENDANTS' STATEMENT**[1]

This is a putative securities class action in which Plaintiff premises its accusations of securities fraud on statements Plaintiff attributes to six former employees of Twist, including the two FEs at issue here. The Court denied Defendants' motion to dismiss on grounds that the former employee allegations, standing alone, sufficed to state a claim under the heightened pleading

---

[1] Defendants disagree that Plaintiff is a party to this discovery dispute, which concerns Defendants' effort to require the third-party FEs to sit for deposition. But FE counsel is admittedly being paid by Plaintiff's counsel, and has elected to give three of the FEs' five allotted pages in this letter brief to Plaintiff, who is attempting to cloud the dispute by interjecting newly contrived arguments about Defendants' responses to Plaintiff's requests for document production (the "RFPs"). Defendants object to Plaintiff's effort to change the subject. Defendants also object to Plaintiff's proposed order, which attempts to smuggle in rulings pertaining to other former employees not at issue in this joint submission.

JOINT STMT. RE DISCOVERY DISPUTE,
NO.: 5:22-cv-08168-EKL (SVK)

standards applicable in securities actions. (ECF No. 117 at 5, 32.)

There is reason to doubt that the statements attributed to the former employees were accurately reported. One of Plaintiff's sources, Faris Abdelaziz (identified in the Amended Complaint as "FE-2"), has provided a sworn declaration attesting that his "words [were] fabricated or mischaracterized [by Plaintiff] to unfairly accuse Twist, Dr. Leproust, and Mr. Thorburn of wrongdoing." (Decl. of Faris Abdelaziz (ECF No. 140-3) at ¶ 16.) Whereas Plaintiff alleges that Mr. Abdelaziz (as FE-2) said that Dr. Leproust and Mr. Thorburn presented financial metrics at Company meetings that "contradicted Defendants' public statements" (ECF No. 83 at ¶ 67(a)), Mr. Abdelaziz declares under oath that he "never stated, and do[es] not believe, that Dr. Leproust or Mr. Thorburn presented any information at Twist's internal meetings that 'contradicted Defendants' public statements.'" (ECF No. 140-3 at ¶ 9.)

Because Plaintiff's claims for securities fraud are premised on the allegations attributed to the former employees, it is crucial that Defendants quickly determine whether other former employees likewise had statements misrepresented by Plaintiff. Defendants served deposition and document subpoenas on the two FEs covered by this motion, and another former employee witness in Maine. (*See* Decl. of Todd Scott ("Scott Decl.") (ECF No. 140-2) at ¶ 5.) As noted, Plaintiff's counsel is paying the fees of counsel for these former employees, and the two firms have taken coordinated positions in an effort to delay the depositions until after the Court-ordered mediation on March 31, and indeed, until after Defendants' deadline to oppose Plaintiff's class certification motion on May 8, as further discussed below. (*See* ECF No. 129 (scheduling order).)[2]

This is a common tactic in securities cases. Plaintiffs typically rely on anonymous employee statements to buttress their claims, and on the basis of such alleged statements, often survive a motion to dismiss. They then frequently do everything they can to delay those former employees from being deposed and having the veracity of their alleged statements tested under oath.

---

[2] Though the Court's scheduling order requires the parties "to complete [an] initial ADR session" by March 4, the parties were not able to schedule a mediation until March 31. (ECF No. 129 at 2.) The parties agreed on a stipulation to extend the deadline, but after Defendants filed a Motion to Compel the FE depositions (ECF 140), Plaintiff's counsel wrote, "[I]n view of your motion this evening, Plaintiff rescinds consent to this [stipulation] pending further consideration." (Feb. 10, 2026 E-mail from Plaintiff's Counsel (ECF No. 143-3 at 2).)

JOINT STMT. RE DISCOVERY DISPUTE,
NO.: 5:22-CV-08168-EKL (SVK)

Early depositions of former employees to test the truthfulness of the allegations ascribed to them can seriously affect the trajectory of a case. Just last month, Judge Chhabria dismissed a securities case with prejudice after the former employee witnesses disavowed the statements attributed to them. *See Weston v. Docusign, Inc.*, 2026 WL 194400, at *1 (N.D. Cal. Jan. 26, 2026). Falsely attributed former employee allegations can also have a material effect on settlement negotiations, which is presumably why Plaintiff is trying to delay the depositions past the scheduled mediation. False confidential witness allegations also significantly bear on class certification issues, including whether the plaintiff and its counsel are adequate representatives of the class. *See* Fed. R. Civ. P. 23(a)(4), (g)(1)(A)(i) (requiring the court to determine whether the plaintiff and its counsel will "fairly and adequately" represent the class, and to "consider . . . the work counsel has done in identifying or investigating potential claims in the action"); *In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918, at *1 (S.D.N.Y. May 29, 2015) ("[I]t is a best practice—if not an ethical imperative—for counsel, before designating a person as a CW [confidential witness] in a Complaint, to notify that person of counsel's intent to do so and to *verify the statements that counsel propose to attribute to him or her.*") (emphasis added).

Plaintiff and FE counsel have done everything they can to avoid having the depositions proceed now. First, when Plaintiff was served with notice of the subpoenas on the FEs and the former employee in Maine, Plaintiff forwarded it to the FEs' counsel, who immediately said that all his clients were completely unavailable on any of the noticed dates. (*See* Scott Decl. (ECF No. 140-2) at ¶ 6.) Despite Defendants offering to reschedule the depositions *at any time* during a multi-week period in February and March, counsel has refused to offer any alternative dates. (*See id.*)

Plaintiff then began insisting that the FE depositions could not occur unless and until Twist searched for and produced all of the relevant files in its possession regarding the FEs (their "custodial files). (*See id.* ¶ 10.) But Plaintiff had never sought production of the FEs' custodial files before, and only included the FEs in its list of requested document custodians *after* Defendants said they intended to depose them. (*See id.*) FEs' counsel, coordinating with Plaintiff's position, has objected to the deposition proceeding based on the professed fear that after Plaintiff acquires the FEs' custodial records from Twist, Plaintiff might demand the FEs to sit for deposition a second

- 3 -

time. (*See* Feb. 8, 2026 E-mail from FEs' Counsel (ECF No. 140-10 at 1).)

Although the point of the FE depositions is solely to test the allegations in the pleadings (making document productions unnecessary), in a final attempt to avoid burdening the Court with this discovery dispute, Defendants proposed a compromise regarding document productions. Defendants proposed to commit additional resources to document collection and review, search the FEs' custodial files using the search terms Plaintiff requested, and produce responsive documents on a hurry-up basis, provided that Plaintiff and FE counsel would agree the depositions could occur withing three weeks of the production—in time to complete the depositions before the mediation.

But Plaintiff rejected this proposal too, and moved the goalposts again, announcing for the first time that the FE depositions could not go forward until Defendants produced (1) the FEs' custodial files, and, as Plaintiff now argues below, (2) *all* documents across *all* Twist custodians and from *all* document repositories to be searched in the case, in response to four palpably overbroad document requests in Plaintiff's first set of RFPs.[3] Suddenly, it was no longer enough for Defendants to produce just the FEs' personal files—Plaintiff now demands that Defendants produce, for example, all "Documents and Communications of, with, among, or concerning Leproust and/or Thorburn [the CEO and former CFO of Twist] related to" any human involvement whatsoever in "produc[ing] or manufactur[ing] Twist Product[s]," "efforts to automate Twist's production or manufacturing," and," "customer satisfaction or customer experience." The Court-ordered schedule for Defendants to complete production of those documents is not until July 31, 2026, but Plaintiff is insisting they must be produced before Defendants can ask the FEs whether Plaintiff misrepresented them, too.

Alternatively, Plaintiff demands that Defendants produce not just all FE "Witness Files" but also both individual defendants' "Witness Files" before FE depositions may commence. But they broaden the definition of "Witness File" to go well beyond what the parties contemplated for any other custodian in any prior discussions about production, demanding nearly every document the

---

[3] Though Plaintiff now argues the scope of its RFPs are at issue in this letter brief, and attempts to improperly convert Defendants' motion to compel the FE depositions into a motion to compel production of Plaintiff's RFPs, *see* below, the parties have not completed the meet and confer process with regard to Plaintiff's RFPs. If the parties ever reach impasse on those RFPs, they can present the issue to the Court via a joint statement at the proper time. In any event, Defendants have already stipulated they will not introduce unproduced documents at the FEs' depositions.

JOINT STMT. RE DISCOVERY DISPUTE,
NO.: 5:22-CV-08168-EKL (SVK)

FEs or individual defendants ever "had access to," regardless of relevance. Plaintiff doubtless understands that its newest demand not only poses an unreasonable burden on Defendants, but is impossible to comply with on any timeframe (whether before mediation or by the end of fact discovery). That is the point, of course: to create an excuse for why the depositions cannot proceed.

This obstructionism must cease. Courts in this Circuit allow preliminary depositions to test the statements of confidential witnesses in securities actions, particularly where, as here, the accuracy of their cited statements is in question. *See, e.g.*, *Crews v. Rivian Automotive, Inc.*, 2023 WL 9420834, at \*1 (N.D. Cal. Sept 11, 2023). The "methods of discovery may be used in any sequence" and the "discovery by one party does not require any other party to delay its discovery." *Id.* (denying motion to stay former employee depositions pending completion of document discovery, citing Fed. R. Civ. P. 26(d)(3) and Advisory Committee Notes thereto).

Indeed, a recent decision in this District demonstrates the importance of testing such allegations. In *Weston v. Docusign, Inc.*, the complaint survived a motion to dismiss on the basis of anonymous former employee allegations, just as Plaintiff's complaint partly did here. Later, after defendants successfully challenged the accuracy of the former employee allegations, *see* 2026 WL 194400, at \*1, the plaintiffs were forced to replead *without* the FE allegations. Judge Chhabria then held that the remaining allegations did not state a claim, and ordered that, "[g]iven the history of this case . . . the case is dismissed with prejudice." *Id.* at \*3.

Nor is there any merit to Plaintiff's position that these threshold depositions cannot go forward until Defendants complete their production of vast categories of documents. "[T]here is nothing improper with [parties] seeking depositions prior to the completion of other discovery." *C.R. Laurence Co., Inc. v. Frameless Hardware*, 2022 WL 2035955, at \*3 (C.D. Cal. Jan. 13, 2022). To the contrary, what "is improper [is] for plaintiffs to refuse to attend depositions until after [document] discovery is completed," because Federal Rule of Civil Procedure 26(d) provides that "methods of discovery may be used in any sequence, and the fact that a party is conducting discovery . . . does not operate to delay any other party's discovery." *Zamora v. D'Arrigo Bros. Co.*, 2006 WL 931728, at \*5 (N.D. Cal. Apr. 11, 2006); *see also Activerain Corp. v. Move, Inc.*, 2008 WL 11343023, at \*4 (C.D. Cal. Apr. 29, 2008) ("Plaintiff essentially argues that because . . .

- 5 -

JOINT STMT. RE DISCOVERY DISPUTE,
No.: 5:22-CV-08168-EKL (SVK)

document discovery in general has not concluded, plaintiff should not have to produce its principals or its financial advisor for deposition. Plaintiff has not shown good cause for a protective order."). FE counsel argues the FEs should not be required to sit for a second deposition, but the law is clear they cannot be required to absent a showing from Plaintiff of good cause. Put simply, the FEs are already shielded from the threat of having to sit for deposition twice.

Defendants intend to use the FE depositions to test the integrity of the Amended Complaint. Defendants seek to ask about the FEs' communications with Plaintiff and its agents, whether the FEs actually made the allegations Plaintiff attributes to them, and if they did, what their basis for those allegations was at the time. And Defendants will not introduce any unproduced documents at the depositions (other than publicly available documents). There is no reason these limited-scope depositions cannot go forward at this time, and it is important that they do so.

Defendants request that the Court order the depositions to proceed now. Defendants also request that the FEs be directed immediately to comply with the document production commitments they made in response to Defendants' document subpoenas, which they have not done.

## THE FORMER EMPLOYEES' STATEMENT

Mr. Osada and Dr. Lipinski (collectively, the "Former Employees") do not object to producing the documents responsive to Defendants' narrowed document requests, and they intend to complete their document production by March 2, 2026. Nor do the Former Employees object to being deposed. Their only objection is to being deposed more than once in this case.

To avoid that possibility, the Former Employees asked that the parties delay scheduling their depositions until after the Court resolves the parties' outstanding disputes regarding the Former Employees' Twist documents. The Former Employees performed their work with a Twist email address on a Twist-issued laptop—which they returned upon leaving Twist. They have not had access to their Twist email account or their Twist devices for several years, so nearly all of their communications regarding their work at Twist (including those responsive to Defendants' document requests) are possessed and controlled exclusively by Twist.

The Former Employees raised these concerns in an email to all counsel on January 20, and again in a conferral call with Defendants on January 21. On that call, the Former Employees agreed

- 6 -

to produce all non-privileged documents responsive to Defendants' narrowed document requests—but said it may take some time to collect them, given that the requests implicated electronically stored information. No production date was discussed, and no compromises were reached on deposition timing. Defendants insisted on proceeding with depositions before March 10 regardless of the unresolved dispute over the Twist documents. The Former Employees said that, given the risk that they would be deposed twice unnecessarily, they would have no choice but to object to the deposition subpoenas and, if they weren't withdrawn, move to quash them.

On February 2 and 5, the Former Employees served objections to Defendants' deposition and document subpoenas. Those objections reiterated that the Former Employees (i) intended to produce all non-privileged documents responsive to Defendants' narrowed requests, and (ii) did not object to being deposed but did object to unnecessarily being deposed more than once. On February 5, Defendants offered via email to move forward with the Former Employees' depositions without using "any documents at the depositions that are not also available to Plaintiff." But Defendants did not explain how that proposal would avoid the Former Employees being deposed more than once, nor did they explain when they planned to raise the outstanding dispute over the Former Employees' Twist documents with the Court. On February 8, the Former Employees emailed all parties to reiterate that they did not object to being deposed, and that their "only objection is to scheduling these depositions before the Court decides the outstanding issues regarding Defendants' document productions." Defendants did not respond to that email. Instead, without any warning or further conferral, they filed their motion to compel on February 10.

The Former Employees' position remains the same: They object to being deposed twice unnecessarily. *See, e.g.*, *Graebner v. James River Corp.*, 130 F.R.D. 440, 442 (N.D. Cal. 1989) (allowing the defendant to take the plaintiff's "deposition a second time would subject her to undue burden . . . ."); *PlayUp, Inc. v. Mintas*, 344 F.R.D. 429, 433 (D. Nev. 2023) ("Repeated depositions are generally disfavored."). They therefore ask that the Court stay their depositions until it resolves the parties' outstanding disputes over the Former Employees' Twist documents. If the Court agrees with Plaintiffs, the Former Employees can schedule their depositions to occur after Defendants produce the documents at issue. If the Court agrees with Defendants, the Former Employees can

- 7 -

schedule their depositions immediately after the Court issues its ruling. In either case, a brief stay avoids the Former Employees being deposed twice. *Cf. Tremblay v. OpenAI, Inc.*, 2024 WL 2699884, at *2 (N.D. Cal. May 24, 2024) (staying a Rule 30(b(6) deposition under similar circumstances).

**PLAINTIFF'S STATEMENT**

Plaintiff does not oppose the depositions of Lipinski and Osada (the "Targeted FEs"), but simply seeks symmetrical access to the relevant documents.  Defendants have exclusive control over documents relevant to the Targeted FEs' testimony.  Rather than produce that discovery and put the parties on equal footing, they instead seek to prejudice both Plaintiff and the Targeted FEs by prematurely deposing these witnesses.  Defendants have explained that this strategy is directed by their insurance carriers, who seek to leverage an incomplete discovery record at mediation.

Defendants' "asymmetrical access" to the relevant documents would be "unfair and contrary to the truth-seeking purpose of civil discovery." *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 4460751, at *4 (S.D. Cal. Sept. 29, 2021).  Moreover, the only proper use of discovery is to test a witness's "knowledge of the *underlying facts* of the alleged fraud and not their participation— months or even years later—in plaintiff's counsel's prefiling investigation." *In re Bofi Holding, Inc. Sec. Litig*., 2021 WL 3700749, at *4 (S.D. Cal. July 27, 2021) (emphasis in original) ("there is a difference between information that is relevant to the disposition of the action (which is discoverable) and information that would facilitate a *post hoc* investigation into the sourcing of a complaint's allegations (which is not)").  To test the underlying facts, the Court should order Defendants to produce, prior to the FE depositions, the FEs' Witness Files and relevant documents responsive to Plaintiff's RFPs 2, 10, 13, 17, and 25.

Most recently, Defendants offered to produce unspecified "custodial files" for the Targeted FEs.  While Plaintiff agrees those documents should be produced prior to the Targeted FE depositions, their proposal still excludes relevant documents and does not cure the prejudice to Plaintiff for three reasons:

First, the asymmetry remains; to prepare to examine the FEs, Defendants indisputably have access to every relevant and responsive document these witnesses sent, received, or had access to

- 8 -

while employed at Twist, irrespective of the custodian or centralized source. Further, Defendants' assurance that they will only introduce at the deposition documents that have been produced is a red herring; this does not remedy that their preparation and examination will be informed by documents beyond "custodial files." Plaintiff is simply asking to have the same access to the relevant documents as Defendants.

Second, Defendants' proposal is a complete black box, and may prove to be an illusion. Defendants have been entirely silent concerning retention or preservation for *any* of the FEs' documents during their tenures at Twist. And they have not provided any hit reports or any other data indicating the extent of the FE "custodial files," or even their existence.

Third, Defendants' proposal wholly excludes key documents responsive to Plaintiff's RFPs that bear directly on the FEs' deposition testimony. Plaintiff's compromise offer seeks Defendants' production limited to five Requests:

- RFP 2: "sufficient to show request" for FE-identified processes that were not fully automated resulting in delays, poor quality, and customer complaints (¶¶59-60, 63, 72, 79, 94(a));

- RFP 10: contract terms for FE-identified price concessions (¶¶70(a), 82-84, 88, 91);

- RFP 13: "sufficient to show request" for FE-identified discounts, price reductions, replacement or complementary products (¶¶70(a), 82-84, 88, 91);

- RFP 17: recordings and other materials for FE-identified executive meetings on lack of automation, quality concerns, production errors, customer complaints, and contamination (¶¶59-60, 63, 69, 76-79, 90); and

- RFP 25: Defendants Leproust's and Thorburn's documents, which Defendants have already agreed to prioritize, relating to FE allegations concerning issues with production automation, errors, and quality; customer complaints and contracts; and price reductions (*see* ECF 129 at 2) (¶¶59-60, 63, 69, 70(a), 76-79, 82-84, 88, 90, 91).

Plaintiff made this compromise offer on the parties' February 2 meet and confer videoconference and again on a February 17 meet and confer video conference, as well as follow up correspondence. Defendants have not agreed to Plaintiff's compromise offer.

JOINT STMT. RE DISCOVERY DISPUTE,
No.: 5:22-CV-08168-EKL (SVK)

Finally, Defendants assert a false urgency tied to the timing of mediation and class certification, but they have had the RFPs since October 17, 2025, and the parties have been conferring on this issue since January.  Even assuming the relevance of these FE depositions to mediation and class certification, asymmetrical discovery aimed at gaining improper leverage is not the solution.  Instead, orderly discovery should proceed, and the mediation and class certification schedules should be adjusted to put both parties on equal footing on the facts.

As for the Abdelaziz Declaration drafted on Defendants' counsel's letterhead (ECF 140-3), it does not relate to the Targeted FEs, let alone show why their depositions are *more* urgent than Abdelaziz's, which Defendants agree should occur only *after* relevant document production. Defendants' tactic reaffirms that their only objective is an improper *post hoc* investigation into the sourcing of the Complaint's allegation, and not underlying facts.  As to substance, Abdelaziz notably leaves untouched the core factual predicates of the Complaint's allegations—including direct evidence of scienter.  Thus, this case is not *Weston v. Docusign, Inc.*, where plaintiffs agreed to exclude the former employee allegations.  2026 WL 194400, at *1 (N.D. Cal. Jan. 26, 2026).  Plaintiff will develop the necessary record and depose him in due course.

None of Defendants' cited authority supports their arguments that these depositions must occur now, prior to the requested document productions.  For example, in *Crews v. Rivian Auto., Inc.*, 2023 WL 9420834 (C.D. Cal. Sept. 11, 2023), the Court simply declined to delay former employee depositions until after the substantial completion of defendants' entire document production.  In contrast, Plaintiff seeks limited categories of documents that are specifically tied to the FEs.  Defendants' remaining cases pertain to party depositions, not third parties.  And none involve the same party seeking to compel depositions while withholding documents relevant to the deponents.  *See C.R. Laurence Co., Inc. v. Frameless Hardware*, 2022 WL 2035955, at *3 (C.D. Cal. Jan. 13, 2022) (plaintiff chose to depose defendants without defendants completing production, thereby assuming "some risk" that the "Court may not permit a second deposition"); *Zamora v. D'Arrigo Bros. Co.*, 2006 WL 931728, at *5 (N.D. Cal. Apr. 11, 2006) (plaintiff refused to testify before defendants completed production); *Activerain Corp. v. Move, Inc.*, 2008 WL 11343023, at *4 (C.D. Cal. Apr. 29, 2008) (same).

JOINT STMT. RE DISCOVERY DISPUTE,
NO.: 5:22-CV-08168-EKL (SVK)

Dated: February 20, 2026                 ORRICK, HERRINGTON & SUTCLIFFE LLP
                                         MUNGER, TOLLES & OLSON LLP


                                         _/s/ M. Todd Scott_
                                         M. TODD SCOTT

                                         *Attorneys for Defendants Twist Bioscience
                                         Corporation, Emily M. Leproust, and James M.
                                         Thorburn*


Dated: February 20, 2026                 BLEICHMAR FONTI & AULD LLP


                                         _/s/ Joseph A. Fonti_
                                         JOSEPH A. FONTI

                                         JOSEPH A. FONTI (*pro hac vice*)
                                         jfonti@bfalaw.com
                                         300 Park Avenue, Suite 1301
                                         New York, New York 10022
                                         Tel: (212) 789-1340
                                         Fax: (212) 205-3960

                                         – and –

                                         ADAM C. MCCALL (SBN 302130)
                                         amccall@bfalaw.com
                                         1330 Broadway, Suite 630
                                         Oakland, CA 94612
                                         Tel.: (415) 445-4003
                                         Fax: (415) 445-4020

                                         *Attorneys for Lead Plaintiff Policeman's Annuity
                                         and Benefit Fund of Chicago*

- 11 -                                   JOINT STMT. RE DISCOVERY DISPUTE,
                                         No.: 5:22-CV-08168-EKL (SVK)

Dated: February 20, 2026                    WHEELER TRIGG O'DONNELL LLP


                                                  */s/ Galen Bellamy*
                                                  GALEN BELLAMY

                                            GALEN BELLAMY (*pro hac vice forthcoming*)
                                            bellamy@wtotrial.com
                                            KEVIN D. HOMIAK (*pro hac vice forthcoming*)
                                            homiak@wtotrial.com
                                            ALISON CONNAUGHTY (*pro hac vice forthcoming*
                                            Connaughty@wtotrial.com
                                            370 Seventeenth Street, Suite 4500
                                            Denver, CO 80202-5647
                                            Telephone: 303-244-1800
                                            Facsimile: 303-244-1879

                                            *Attorneys for Non-Parties Joanna Lipinski
                                            and Eric Osada*


## ATTESTATION OF CONCURRENCE

I, M. Todd Scott, attest pursuant to Civil Local Rule 5-1(i)(3) that all other signatories to this document, on whose behalf this filing is submitted, concur with the filing's content and have authorized this filing.


Dated: February 20, 2026                         */s/ M. Todd Scott*
                                                 M. TODD SCOTT

JOINT STMT. RE DISCOVERY DISPUTE,
                                                 No.: 5:22-CV-08168-EKL (SVK)