**BLEICHMAR FONTI & AULD LLP**
Adam C. McCall (Bar No. 302130)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020
amccall@bfalaw.com

Joseph A. Fonti (*pro hac vice*)
Nancy A. Kulesa (*pro hac vice*)
George N. Bauer (*pro hac vice*)
Benjamin Burry (*pro hac vice*)
Thayne Stoddard (*pro hac vice*)
300 Park Avenue, Suite 1301
New York, New York 10022
Tel: (212) 789-1340
Fax: (212) 205-3960
jfonti@bfalaw.com
nkulesa@bfalaw.com
gbauer@bfalaw.com
bburry@bfalaw.com
tstoddard@bfalaw.com

*Counsel for Lead Plaintiff Policemen's*
*Annuity and Benefit Fund of Chicago and*
*Lead Counsel for the Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

ANTHONY JOSEPH PETERS, Individually and on Behalf of All Others Similarly Situated,

           Plaintiff,

        v.

TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN,

           Defendants.

Case No. 5:22-cv-08168-EKL

<u>CLASS ACTION</u>

**LEAD PLAINTIFF'S NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Courtroom: 7, 4th Floor
Judge: Honorable Eumi K. Lee

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES TO BE DECIDED...................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................2

I.     PRELIMINARY STATEMENT ....................................................................................2

II.    RELEVANT BACKGROUND ......................................................................................4

    A.     History of the Litigation......................................................................................4

    B.     The Parties' Mediation Efforts............................................................................4

    C.     The Proposed Settlement ....................................................................................5

III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ..................6

    A.     Applicable Legal Standards ................................................................................6

    B.     The Court "Will Likely Be Able to" Approve the Proposed Settlement,
        Satisfying Rule 23(e)(1)(B)(i)............................................................................6

        1.     Lead Counsel and Lead Plaintiff Have Adequately Represented the
            Class – Rule 23(e)(2)(A) and *Hanlon* Factors 5 and 6 ...............................7

        2.     The Settlement Is the Product of Arm's-Length Negotiations –
            Rule 23(e)(2)(B).........................................................................................9

        3.     The Proposed Settlement Provides Adequate Relief –
            Rule 23(e)(2)(C) and *Hanlon* Factors 1, 2, 3, and 4 .................................10

            a.     The Costs, Risks, and Delay of Trial and Appeal.........................13

            b.     The Proposed Method for Distributing Relief Is Effective............14

            c.     The Terms and Timing of Attorneys' Fees and Expenses
               and an Award to Lead Plaintiff Are Reasonable ..........................16

            d.     Lead Plaintiff Has Identified All Agreements Made in
               Connection with the Proposed Settlement ....................................17

        4.     The Plan of Allocation Treats Class Members Equitably –
            Rule 23(e)(2)(D) .......................................................................................17

    C.     The Court "Will Likely Be Able to" Certify the Proposed Settlement Class,
        Satisfying Rule 23(e)(1)(B)(ii) .........................................................................18

        1.     Numerosity – Rule 23(a)(1).......................................................................19

        2.     Commonality – Rule 23(a)(2).....................................................................19

        3.     Typicality – Rule 23(a)(3) ..........................................................................20

        4.     Adequacy – Rule 23(a)(4)...........................................................................21

        5.     Predominance and Superiority – Rule 23(b)(3) ..........................................21

    D.     The Notice Plan Satisfies Rule 23(e), Due Process, and the PSLRA ...................22

IV.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................25

V.     CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) .......................................................................................................20

*Amans v. Tesla, Inc.*,
    2024 WL 1024735 (N.D. Cal. Mar. 8, 2024)..................................................................................9

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................................21, 22

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)......................................................................................................................7

*In re Banc of Cal. Sec. Litig.*,
    2019 WL 6605884 (C.D. Cal. Dec. 4, 2019).................................................................................9

*Baron v. HyreCar Inc.*,
    2024 WL 3504234 (C.D. Cal. July 19, 2024)..............................................................................14

*Brown v. China Integrated Energy Inc.*,
    2015 WL 12720322 (C.D. Cal. Feb. 17, 2015)............................................................................21

*In re Celera Corp. Sec. Litig.*,
    2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)..............................................................................13

*Chavez v. Converse, Inc.*,
    2020 WL 4047863 (N.D. Cal. July 8, 2020)..................................................................................9

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
    2022 WL 1459567 (N.D. Cal. May 9, 2022)................................................................................19

*In re Cooper Cos. Inc. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009)................................................................................................21

*In re Extreme Networks, Inc. Sec. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019)................................................................................9

*In re FibroGen, Inc., Sec. Litig.*,
    2024 WL 6859589 (N.D. Cal. Feb. 13, 2024) ............................................................................12

*Fleming v. Impax Lab'ys Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022)..........................................................................16, 17

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) .....................................................................................................6

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................7, 8, 10, 21

*Hardy v. Embark Tech., Inc.*,
2023 WL 6276728 (N.D. Cal. Sep. 26, 2023) .................................................12, 16

*In re HealthSouth Corp. Sec. Litig.*,
334 F. App'x 248 (11th Cir. 2009) ......................................................................17

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sep. 4, 2018) ........................................................21

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018).........................................................8

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) ..........................................................................5, 13

*Hildes v. Arthur Andersen LLP*,
734 F.3d 854 (9th Cir. 2013) .............................................................................22

*In re HP Sec. Litig.*,
2015 WL 4477936 (N.D. Cal. July 20, 2015)........................................................15

*Huberman v. Tag-It Pac. Inc.*,
314 F. App'x 59 (9th Cir. 2009) ..........................................................................20

*Hunt v. Bloom Energy Corp.*,
2024 WL 1995840 (N.D. Cal. May 6, 2024)....................................................12, 16

*In re Intuitive Surgical Sec. Litig.*,
2016 WL 7425926 (N.D. Cal. Dec. 22, 2016).......................................................20

*Johnson v. Gen. Mills, Inc.*,
2013 WL 3213832 (C.D. Cal. June 17, 2013) ........................................................6

*Lako v. Loandepot, Inc.*,
2025 WL 2389432 (9th Cir. Aug. 18, 2025).....................................................11, 18

*Lamartina v. VMware, Inc.*,
2024 WL 3286059 (N.D. Cal. July 2, 2024)..........................................................19

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ..............................................................................22

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015)..........................................................................14

*Luna v. Marvell Tech. Grp.*,
2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) .......................................................13

*In re Lyft Inc. Sec. Litig.*,
  2021 WL 3711470 (N.D. Cal. Aug. 20, 2021) ............................................................................20

*In re Lyft, Inc. Sec. Litig.*,
  2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ..........................................................................12

*In re MGM Mirage Sec. Litig.*,
  708 F. App'x 894 (9th Cir. 2017) ..............................................................................................15

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) ..............................................................................7

*In re NVIDIA Corp. Deriv. Litig.*,
  2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ..............................................................................9

*In re NVIDIA Corp. Sec. Litig.*,
  2026 WL 821418 (N.D. Cal. Mar. 25, 2026) ..............................................................................11

*Oh v. Hamni Fin. Corp.*,
  2024 WL 3435259 (C.D. Cal. Mar. 19, 2024) ............................................................................15

*In re Origin Materials, Inc., Sec. Litig.*,
  2026 WL 82142 (E.D. Cal. Jan. 8, 2026) .....................................................................................9

*Pardi v. Tricida, Inc.*,
  2025 WL 1647162 (N.D. Cal. May 16, 2025) .......................................................................12, 16

*Peterson v. Vivendi Ticketing US LLC*,
  2024 WL 3915154 (C.D. Cal. June 20, 2024) ..............................................................................9

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
  2025 WL 3546227 (N.D. Cal. Dec. 4, 2025) .........................................................................12, 16

*Rannis v. Recchia*,
  380 Fed. App'x 646 (9th Cir. 2010) ...........................................................................................19

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12129279 (C.D. Cal. Mar. 13, 2013) ..........................................................................13

*In re Resistors Antitrust Litig.*,
  2020 WL 2791922 (N.D. Cal. Mar. 24, 2020)..............................................................................18

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................................6, 9, 22

*Sheet Metal Workers' Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
  2025 WL 3034316 (N.D. Cal. Oct. 30, 2025)................................................................................7

*Siemers v. Wells Fargo & Co.*,
  243 F.R.D. 369 (N.D. Cal. 2007)................................................................................................21

*Smith v. Keurig Green Mountain, Inc.*,
    2022 WL 2644105 (N.D. Cal. July 8, 2022)..................................................................................15

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .....................................................................................................2, 6

*Vataj v. Johnson*,
    2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .............................................................................18

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ..............................................................................12

*In re Vaxart, Inc. Sec. Litig.*,
    759 F. Supp. 3d 1015 (N.D. Cal. 2024) .....................................................................................11

*In re VeriSign, Inc. Sec. Litig.*,
    2005 WL 7877645 (N.D. Cal. Jan. 13, 2005).............................................................................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019)..............................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).....................................................................................................................19

*Wong v. Arlo Techs., Inc.*,
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ..............................................................................7

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................................... *passim*

Fed. R. Civ. P. 23(b) .................................................................................................................21

Fed. R. Civ. P. 23(e) ......................................................................................................... *passim*

**Statutes**

77 U.S.C. § 77e.........................................................................................................................10

15 U.S.C. § 77k...............................................................................................................10, 18, 22

15 U.S.C. § 77z............................................................................................................. *passim*

28 U.S.C. § 1715.......................................................................................................................24

**Other Authorities**

17 C.F.R. § 229.404 ..................................................................................................................19

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
ACTION SETTLEMENT – CASE NO. 5:22-cv-08168-EKL

v

## **NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT before The Honorable Eumi K. Lee, United States District Court for the Northern District of California, San Jose Division, Courtroom 7, 4th Floor, 280 South 1st Street, San Jose, Court-appointed Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago ("Lead Plaintiff" or "PABF") will, and hereby does, respectfully move this Court for entry of an Order Preliminarily Approving Settlement and Providing for Class Notice (the "Notice Order"), pursuant to Federal Rule of Civil Procedure 23, in the above-captioned action (the "Litigation"): (1) granting preliminary approval of the proposed settlement (the "Settlement"); (2) preliminarily certifying the Settlement Class; (3) approving the proposed Notice of Pendency and Proposed Settlement of Class Action ("Notice"), the Long-Form Notice of Pendency and Proposed Settlement of Class Action ("Long-Form Notice"), the Proof of Claim and Release form ("Proof of Claim"), and the Summary Notice ("Summary Notice"), and the methods of disseminating notice to the Class; (4) approving the selection of Simpluris Inc. ("Simpluris") as Claims Administrator; (5) setting deadlines for Settlement Class Members to exercise their rights in connection with the proposed Settlement; and (6) scheduling a hearing to consider final approval of the Settlement and Plan of Allocation and application(s) for attorneys' fees, litigation expenses, and an award of costs and expenses, if any, to Lead Plaintiff (the "Final Approval Hearing").[1]

This Motion is based on the Memorandum of Points and Authorities below, the Declaration of George N. Bauer filed contemporaneously herewith, the Stipulation of Settlement and exhibits thereto (Bauer Decl., Ex. 1),[2] the Declaration of Jacob Kamenir of Simpluris (Bauer Decl., Ex. 2, "Kamenir Decl."), the Declaration of Chad Coffman of Peregrine Economics (Bauer Decl., Ex. 3, "Coffman Decl."), the Declaration of Kevin Reichart, Executive Director of PABF (Bauer Decl.,

---

[1] Capitalized terms have the meanings set forth in the Stipulation of Settlement dated April 30, 2026 (the "Stipulation"), attached as Exhibit 1 to the Bauer Declaration.  Unless otherwise noted, all emphasis is added and all internal citations and quotation marks are omitted.

[2] The attachments to the Stipulation include: the Proposed Order Preliminarily Approving Settlement and Providing for Class Notice (Exhibit A); the proposed Notice (Exhibit A-1); the proposed Long-Form Notice (Exhibit A-2); the proposed Proof of Claim (Exhibit A-3); the proposed Summary Notice (Exhibit A-4); and the proposed Judgment (Exhibit B).

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT – CASE NO. 5:22-cv-08168-EKL

1

Ex. 4), Lead Counsel's Firm Resume (Bauer Decl., Ex. 5), the Chart of Comparable Settlements (Bauer Decl., Ex. 6), and all other papers, pleadings, and proceedings in the Litigation.

**STATEMENT OF THE ISSUES TO BE DECIDED**

The issues to be decided on this Motion are:

1.    Whether the proposed Settlement for $17,050,000 warrants preliminary approval;

2.    Whether the proposed Settlement Class ought to be preliminarily certified;

3.    Whether the Court should enter the Notice Order approving the proposed Notice, Long-Form Notice, Proof of Claim, and Summary Notice attached as Exhibits A-1 through A-4 to the Stipulation, as well as the manner and timing of notifying the Settlement Class of the Settlement (the "Notice Plan") and the selection of Simpluris as Claims Administrator; and

4.    The date of the Final Approval Hearing to determine whether the Settlement and Plan of Allocation should be finally approved, the Judgment should be entered, and whether applications for attorneys' fees, litigation expenses, and an award, if any, to Lead Plaintiff for reasonable costs and expenses should be approved.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    PRELIMINARY STATEMENT**

After nearly three years of litigation, Lead Plaintiff and Lead Counsel have achieved a highly favorable settlement for the Class: a recovery of $17,050,000 in cash.  Lead Plaintiff therefore respectfully requests that the Court grant preliminary approval of the Settlement pursuant to Federal Rule of Civil Procedure 23(e), and order that notice be disseminated to Settlement Class Members.

Under Federal Rule of Civil Procedure 23(e)(1)(B), preliminary approval should be granted because the Court "will likely be able" to (i) grant final approval under Rule 23(e)(2); (ii) certify the Settlement Class; and because (iii) the Notice Plan meets the requirements of Rule 23(e), Due Process, and the PSLRA.

<u>First</u>, the Court "will likely be able" to grant final approval because the proposed Settlement is "fundamentally fair, adequate, and reasonable," *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir.

2003), satisfying Rule 23(e)(2).  This class action, alleging claims under the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act") began nearly three and a half years ago.  Following substantial discovery, the parties reached the proposed Settlement after a good faith, arm's-length mediation under the auspices of Robert A. Meyer of JAMS.  Following a full-day mediation session on March 31, 2026, the parties accepted Mr. Meyer's ensuing mediator's proposal to settle the Litigation for $17,050,000.

The $17.05 million Settlement is fair, reasonable, and adequate.  This recovery represents approximately 3.5%-7.7% of the estimated recoverable damages, which is in line with comparable class actions in the Circuit.

This outstanding result did not come quickly or easily.  Rather, to achieve the proposed Settlement, Lead Plaintiff and Lead Counsel shouldered substantial risks and vigorously prosecuted the Litigation from inception.  Lead Counsel conducted an in-depth investigation and drafted a 231-paragraph Amended Complaint.  Lead Counsel then defeated Defendants' motion to dismiss in part, pursued extensive written and documentary discovery, and participated in three fact depositions.  Lead Plaintiff also filed a comprehensive motion for class certification, (ECF 151), which included a supporting expert report, (ECF 152-1).

The Settlement accounts for and avoids the risks of protracted litigation, including that Defendants could prevail on one or all of their defenses at summary judgment, trial, or on appeal, defeating the Class's ability to collect any recovery.  Lead Plaintiff and Lead Counsel successfully navigated these risks to achieve the proposed Settlement, which provides the Settlement Class with a prompt, certain, and substantial recovery that is well within the range of reasonableness.

Second, the Court will be able to certify the proposed Settlement Class.  With at least 27.9 million shares of Twist common stock outstanding at all times during the Class Period, Rule 23(a)(1)'s numerosity requirement is easily met, and this action presents classic class-wide questions, including falsity, materiality, and damages (and, for the Exchange Act claims, scienter), that regularly satisfy Rule 23(a)(2)'s commonality requirement.  Typicality and adequacy under Rules 23(a)(3) and (4) are present because:  (i) Lead Plaintiff's interests are aligned with all members of the Settlement Class, who purchased Twist common stock at prices affected by alleged

misstatements and omissions; and (ii) Lead Counsel is highly experienced in complex securities litigation and has vigorously litigated this action to achieve the best possible recovery.

Third, the proposed Notice Plan will ensure that Settlement Class Members are promptly apprised of the proposed Settlement so they can participate, exclude themselves, or object before the Final Approval Hearing.

Lead Plaintiff thus respectfully requests that the Court grant preliminary approval of the Proposed Settlement, preliminarily certify the proposed Settlement Class, enter the Notice Order, and schedule the Final Approval Hearing.

## II. RELEVANT BACKGROUND

### A. History of the Litigation

The initial complaint in this Litigation was filed on December 12, 2022. (ECF 1.) On July 28, 2023, the Court entered an order appointing Policemen's Annuity and Benefit Fund of Chicago as Lead Plaintiff and BFA as Lead Counsel. (ECF 70.) Upon appointment, Lead Plaintiff, through counsel, commenced an extensive investigation that included interviews with confidential witnesses and comprehensive analysis of publicly available information such as SEC filings, news articles, industry publications, analyst reports, academic literature, and filings in other litigation.

On October 11, 2023, Lead Plaintiff filed the operative Amended Complaint, which alleged violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 thereunder, as well as Sections 11 and 15 of the Securities Act. (ECF 83.) Defendants moved to dismiss. Following briefing and oral argument, on September 3, 2025, the Court denied Defendants' motion to dismiss in part. (ECF 117.) Following the Court's ruling, the parties engaged in extensive discovery, including the exchange of numerous requests for documents and written discovery; the production of over 202,000 pages of documents by Defendants, over 88,000 pages by Lead Plaintiff, and over 4,000 pages by non-parties; and three fact depositions. On March 13, 2026, Lead Plaintiff filed a motion seeking class certification, with an accompanying expert report. (ECF 151 to ECF 152-7.)

### B. The Parties' Mediation Efforts

On March 31, 2026, after submitting confidential mediation statements, the parties, including Lead Plaintiff's Executive Director, engaged in a full-day mediation session supervised

by Mr. Meyer.  The parties engaged in good faith, arm's-length negotiations, but were unable to reach a resolution.  At the conclusion of the mediation, Mr. Meyer issued a mediator's recommendation to resolve the litigation, which the parties accepted that same day.  The parties then negotiated the terms of the Stipulation.

### C.    The Proposed Settlement

The terms of the proposed Settlement are set forth in the Stipulation.  In short, the Settlement provides for a cash payment of $17,050,000.00 (the "Settlement Amount"), which will be paid into an interest-bearing escrow account within thirty (30) business days after entry of the Notice Order. (Ex. 1 (Stipulation) ¶2.1.)  In exchange for this cash payment, the Stipulation provides for customary mutual releases, including of the claims asserted, or that could have been asserted, in the Amended Complaint, which arise out of, are based on, or relate to the "(i) the allegations, acts, transactions, facts, events, matters, occurrences, disclosures, statements, filings, events, representations, or omissions involved, set forth, alleged, or referred to in the Complaint, Amended Complaint, or the Litigation, or which could have been alleged in the Litigation; and (ii) the purchase, sale, holding, or other acquisition, disposition, or holding of Twist common stock during the Class Period." (*Id.* ¶1.36.)[3]  The releases specifically exclude derivative claims raised in *Shumacher v. Leproust, et al.*, No. 1:23-cv-01048-UNA (D. Del.) and any other pending derivative actions involving Twist. (*Id*.)  Lead Plaintiff is unaware of any other pending matters that will be affected by this Settlement.

If the Court grants final approval of the Settlement, the Net Settlement Fund (*i.e.*, the Settlement Amount, plus accrued interest, minus Notice and Administration Costs, Taxes and Tax Expenses, and any Court-approved attorneys' fees, expenses, awards or other Court-approved deductions) will, upon the Court's approval, be distributed to Settlement Class Members who

---

[3] The Ninth Circuit "ha[s] held that federal district courts properly release[] claims not alleged in the underlying complaint where those claims depend[] on the same set of facts as the claims that gave rise to the settlement." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).  Here, the Released Claims include those arising from the same factual predicate upon which the Litigation is based and were pled in the Amended Complaint.

submit valid Proof of Claim forms ("Authorized Claimants") on a *pro rata* basis in accordance with a Plan of Allocation to be approved by the Court.

## III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    Applicable Legal Standards

The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Johnson v. Gen. Mills, Inc.*, 2013 WL 3213832, at *2 (C.D. Cal. June 17, 2013); *see also Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989) (noting the policy of the federal courts is to encourage settlement before trial). The Ninth Circuit also recognizes "the private consensual decision of the parties" to settle and advance the "overriding public interest in settling and quieting litigation." *Johnson*, 2013 WL 321832, at *2; *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009).

Federal Rule of Civil Procedure 23(e) requires courts to approve any proposed class action settlement that is "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2); *Staton*, 327 F.3d at 959. First, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice is provided and a hearing is held, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Under Rule 23(e)(1)(B), preliminary approval is warranted where the Court "will likely be able" to (i) grant final approval of the settlement under Rule 23(e)(2), and (ii) certify the settlement class. As discussed below, the proposed Settlement satisfies both requirements.

### B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement, Satisfying Rule 23(e)(1)(B)(i)

In determining settlement approval, Rule 23(e)(2), as amended in 2018, requires the Court to consider whether the settlement "is fair, reasonable, and adequate after considering whether:"

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT – CASE NO. 5:22-cv-08168-EKL

6

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Courts in the Ninth Circuit also evaluate the "*Hanlon* factors" which significantly overlap with Rule 23(e) and include "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [and] [6] the experience and views of counsel." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021).

**1.    Lead Counsel and Lead Plaintiff Have Adequately Represented the Class – Rule 23(e)(2)(A) and *Hanlon* Factors 5 and 6**

To satisfy Rule 23(e)(2)(A)'s adequacy requirement, courts must resolve two questions: "(1) do the named plaintiff[] and [its] counsel have any conflicts of interest with other class members and (2) will the named plaintiff[]and [its] counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. That standard is easily met here.

*First*, there are no conflicts of interest between Lead Plaintiff and Lead Counsel and the rest of the Settlement Class. Lead Plaintiff's claims are typical of the Settlement Class's claims, *see infra*, § III.C.3, and Lead Plaintiff and other Settlement Class Members share an interest in securing the largest possible recovery. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) ("The investor class 'will prevail or fail in unison' because claims are based on common misrepresentations and omissions"); *Sheet Metal Workers' Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2025 WL 3034316, at *2 (N.D. Cal. Oct. 30, 2025) ("Class Counsel's request for attorneys' fees do[es] not create a conflict because the Settlement is not contingent on attorneys' fees"); *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the [s]ettlement [c]lass, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the [s]ettlement [c]lass members.").

*Second*, Lead Plaintiff and Lead Counsel have vigorously prosecuted this action since appointment nearly three years ago, also satisfying the Ninth Circuit's fifth factor regarding "the extent of discovery completed and the stage of the proceedings." *Hanlon*, 150 F.3d at 1026. Lead Plaintiff and Lead Counsel's efforts included, among other things, conducting an in-depth investigation and drafting the Amended Complaint, defeating Defendants' motion to dismiss in part, serving and responding to written discovery, reviewing and producing thousands of pages of discovery, securing and analyzing Defendants' and third parties' productions, preparing for and participating in three third-party depositions, drafting and filing a motion for class certification with a supporting expert report, and aggressively negotiating the terms of the Settlement. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (finding securities class settlement procedurally fair where "Lead Counsel vigorously litigated th[e] action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (granting final approval and stating that at preliminary approval "the Court found that Class Counsel had vigorously prosecuted th[e] action through dispositive motion practice, extensive initial discovery, and formal mediation" and that "given this prosecution of the action, counsel possessed sufficient information to make an informed decision about settlement").

Lead Plaintiff has also protected the Class's interests by retaining and overseeing qualified and experienced Lead Counsel. BFA is highly experienced in litigating securities class actions, and has prosecuted and successfully resolved numerous cases, including: a $420 million recovery in *In re Teva Sec. Litig.*, 17-cv-0558 (D. Conn.); a $234 million recovery in *In re MF Global Holdings Sec. Litig.*, 11-cv-07866-VM (S.D.N.Y.); a $219 million recovery in *In re Genworth Fin. Inc. Sec. Litig.*, 14-cv-00682-JAG (E.D. Va.); a $129 million recovery in *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. 19-cv-04744 (N.D. Cal.); a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, 12-cv-02121-LAK (S.D.N.Y.); a $32.5 million recovery in *In re Talis Biomedical Sec. Litig.*, 22-cv-00105-SI (N.D. Cal.); a $17.5 million recovery in *Lozada v. TaskUs, Inc. et al*, 22-cv-1479 (S.D.N.Y.); and a $15.25 million recovery in *Ciarciello v. Bioventus Inc.*,

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT – CASE NO. 5:22-cv-08168-EKL

8

23-cv-32 (M.D.N.C.). (Bauer Decl., Ex. 5, BFA Firm Resume.) Courts attribute "significant weight" to "counsel's belief that settlement is in the best interest of those affected by the settlement." *In re NVIDIA Corp. Deriv. Litig.,* 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008). Lead Plaintiff respectfully submits that the Court should do so here.

### 2.    The Settlement Is the Product of Arm's-Length Negotiations – Rule 23(e)(2)(B)

In approving a class action settlement, the Ninth Circuit, and courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ." *Rodriguez*, 563 F.3d at 965. In making this determination, courts recognize that "one important factor [to consider] is that the parties reached the settlement . . . with a third-party mediator." *In re Banc of Cal. Sec. Litig.,* 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see also Chavez v. Converse, Inc.,* 2020 WL 4047863, at *2 (N.D. Cal. July 8, 2020) (same).

Here, the Settlement was reached after submission of confidential mediation statements and a full-day mediation session under the auspices of Robert A. Meyer of JAMS, a preeminent mediator with extensive experience in complex business litigation and, in particular, securities class actions.[4] These extensive arm's-length negotiations—resulting in a mediator's recommendation to resolve the Litigation—confirm that the proposed Settlement is the product of serious, informed, non-collusive negotiations. *See Peterson v. Vivendi Ticketing US LLC*, 2024 WL 3915154, at *5 (C.D. Cal. June 20, 2024) ("The negotiation was under the direction of mutually agreed-upon mediator, Robert Meyer of JAMS, who has extensive experience mediating and managing multiparty and multifaceted cases"); *In re Origin Materials, Inc., Sec. Litig.*, 2026 WL 82142, at *6 (E.D. Cal. Jan. 8, 2026) ("the parties retained the services of Robert Meyer, Esq., an experienced mediator with JAMS"); *see also, e.g.*, *Amans v. Tesla, Inc.*, 2024 WL 1024735, at *3 (N.D. Cal. Mar. 8, 2024) (noting the experience of Mr. Meyer); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *3 (N.D. Cal. July 22, 2019) (same).

---

[4] Mr. Meyer's credentials are available at https://www.jamsadr.com/neutrals/meyer.

**3. The Proposed Settlement Provides Adequate Relief –**

**Rule 23(e)(2)(C) and *Hanlon* Factors 1, 2, 3, and 4**

Rule 23(e)(2)(C) provides that the adequacy of relief should be assessed, "taking into account:  (i) the costs, risks, and delay of trial and appeal [(overlapping with *Hanlon* factors 2 and 3)]; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  *Hanlon* factor 1 requires consideration of the strength of the claims, and factor 4 requires consideration of "the amount offered in settlement."  1150 F.3d at 1026.  In comparison to the $17.05 million settlement amount, Lead Plaintiff's expert, Mr. Coffman, estimated the recoverable damages in this matter for both the Securities Act and the Exchange Act Claims.

With respect to the Securities Act, damages are initially calculated using the statutory formula set forth in 15 U.S.C. § 77k(e), and equate to the difference between the purchase price in the offering and the price at the earlier of the time of disposition or the date the suit was filed.  However, Defendants maintain a "negative causation" defense under this framework, by which they have the burden of proving that some portion of the share price prior to the initiation of the Litigation was attributable to other factors and not the alleged misstatements in the matter.[5]  Mr. Coffman's initial calculation of statutory damages for the direct purchasers in the December 2020 Offering amounts to a maximum of $115.5 million.  (Coffman Decl. ¶26.)  However, there was significant evidence of negative causation here—including share price declines following the December 2020 Offering but preceding the November 15, 2022 Scorpion Report.  Consequently, Lead Counsel and Mr. Coffman concluded that it is reasonable to assume that up to 90% of the initial per share statutory damages could be reduced as a result.  (*Id.*)  Applying this

---

[5] *See* 77 U.S.C. §77e(k) ("if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable.").

risk adjustment, Mr. Coffman calculated a revised total of $17.9 million in recoverable damages on the Securities Act claims. (*Id.*)

With respect to the Exchange Act, damages are based on the "out-of-pocket" method, which calculates the amount of artificial inflation in the share price at the time of purchase, assuming that such inflation was reduced by a corrective disclosure, causing losses. Under Section 10(b), Lead Plaintiff has the burden to prove that the share price decline following a corrective disclosure was causally connected to revelation of the falsity of the alleged misstatements, which often requires "disaggregating" those losses from others that are attributable to non-fraudulent causes.[6] Using the out-of-pocket method and initially assuming that 100% of the Class's losses were attributable to the Scorpion Report, Mr. Coffman provides an estimated recoverable damages figure of $383.6 million. (*Id.* at ¶27.) However, because approximately half of the topics covered in the Scorpion Report related to the alleged misstatements in the Litigation, any share price decline attributable to the remaining information would have to be disaggregated. Lead Counsel and Mr. Coffman therefore concluded that it is reasonable to assume that up to 50% of per share Section 10(b) damages could be reduced as a result, leading to a revised total of $209.0 million in recoverable damages on the Exchange Act claims. (*Id.*)

In sum, Mr. Coffman estimates that, before applying offsets, the estimated recoverable damages under the Securities Act and Exchange Act amount to $491.9 million.[7] (*Id.* at ¶28.) After

---

[6] *See In re NVIDIA Corp. Sec. Litig.*, 2026 WL 821418, at *29 (N.D. Cal. Mar. 25, 2026) ("At the merits stage . . . plaintiffs [are] required to establish . . . a damages model capable of disaggregating causes of inflation outside of the actionable harms alleged . . . ."); *In re Vaxart, Inc. Sec. Litig.*, 759 F. Supp. 3d 1015, 1017 (N.D. Cal. 2024) ("[I]f the jury finds that some or all of [a defendant]'s price declines were not the result of corrective disclosures or leakage of the truth, that finding can be factored into the damages calculation . . . .").

[7] This number is $7.2 million less than the $499.1 million sum of $115.5 million and $383.6 million. As a result of the overlap between some Section 10(b) and Section 11 claims, the total recoverable damages are lower than the sum of Section 10(b) and Section 11 when calculated separately. *See Lako v. Loandepot, Inc.*, No. 24-3932, 2025 WL 2389432, at *2 (9th Cir. Aug. 18, 2025) ("the calculations reasonably excluded certain months from the Section 11 damages period that overlapped with the Section 10(b) period . . . .") For instance, if investor Y purchased in the offering and held over the alleged corrective disclosure event, that investor would be eligible to claim under both Section 10(b) and Section 11 and the greater of the two claims would be the resulting recoverable damages. If investor Y's per share Section 10(b) loss was $8.11 and investor Y's per share Section 11 loss was $10, investor Y would have a $10 per share loss. Mr. Coffman's other combined damages estimates also account for this overlap.

accounting for negative causation, the estimated recoverable combined damages under the Securities Act and Exchange Act amount to $394.4 million. (*Id.*) Finally, after accounting for both negative causation and disaggregation as described above, Mr. Coffman estimates combined recoverable damages on the two sets of claims to amount to $220.2 million. (*Id.* at ¶29.) The non-reversionary, all-cash $17.05 million Settlement Amount therefore represents approximately 3.5% to approximately 7.7% of estimated recoverable damages.

This percentage accords with other securities class action settlements in this District and Circuit. *See, e.g.*, *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2025 WL 3546227 (N.D. Cal. Dec. 4, 2025) (approving $20.25 million settlement amounting to ~5% of damages); *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, WL 5483605, at *5 (N.D. Cal. July 31, 2024) (approving $17.75 million settlement amounting to 20.4% of damages as "exceed[ing] the 1.8% median settlement value in 2023 for all securities actions");[8] *Nacif v. Athira Pharm., Inc.*, 2024 WL 643513 (W.D. Wash. Feb. 15, 2024) (approving $10.0 million settlement amounting to 6.9% of damages); *In re FibroGen, Inc., Sec. Litig.*, 2024 WL 6859589, at *3 (N.D. Cal. Feb. 13, 2024) (approving $28.5 million settlement that "equate[d] to approximately 3.4% to 6.4% of the damages"); *Alameda Cnty. Emp. Ret. Assoc. v. Portola Pharm., Inc.*, 3:20 Civ. 367, Dkt. 246 (N.D. Cal. Jan. 26, 2023) (approving $17.75 million settlement amounting to 5.8% of damages).[9] Additional details on these settlements, as required by the Northern District of California's Procedural Guidance for Class Action Settlements, can be found in the Chart of Comparable Settlements filed as Exhibit 6 to the Bauer Declaration.

---

[8] Unlike here, the Securities Act damages sought in *Gingko* had minimal risk of being reduced by a negative causation defense because there was no material share price decline from the $10 offering price to the $11.98 close the day before release of the short-seller report there.

[9] *See also, e.g.*, *Pardi v. Tricida, Inc.*, 2025 WL 1647162 (N.D. Cal. May 16, 2025) (approving $14.25 million settlement amounting to 6.6% of damages); *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840 (N.D. Cal. May 6, 2024) (approving $3 million settlement amounting to 5.2% of damages); *Hardy v. Embark Tech., Inc.*, 2023 WL 6276728 (N.D. Cal. Sep. 26, 2023) (approving $2.5 million settlement amounting to 1.1% of damages); *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) (approving $25 million settlement amounting to 3.2%-4.7% of damages); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving "2% aggregate recovery [of $10 million] . . . [a]s consistent with the 2–3% average recovery that the parties identified in other securities class action settlements").

Corresponding to this recovery is a release that, *see supra*, § II.C, releases claims based only on the identical factual predicate underlying the instant Litigation, as required by *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) and the Court's Civil Standing Order, § XI.A.

### a. The Costs, Risks, and Delay of Trial and Appeal

While Lead Plaintiff and Lead Counsel believe that the claims asserted on behalf of the Settlement Class have merit, continued litigation raises serious risks.

The $17.05 million cash settlement provides the Class with a substantial and immediate benefit, whereas continuing to prosecute the case would present significant costs and risks. Courts "routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear," *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at \*5 (C.D. Cal. Mar. 13, 2013), particularly the hurdles of proving scienter, loss causation, and damages at trial. *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at \*3 (N.D. Cal. Apr. 20, 2018); *see also, e.g.*, *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at \*5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial . . . Lead Plaintiff would risk recovering nothing without a settlement.").

Indeed, Defendants asserted various arguments disputing scienter, loss causation (including negative causation arguments with respect to the Securities Act claims), and damages, and challenged the materiality and falsity of the alleged misstatements. Defendants' multifaceted attack on Lead Plaintiff's case may be challenging to overcome at trial, where Lead Plaintiff would have to prove all elements of its claims to prevail while Defendants could potentially prevail on one core defense to defeat any recovery.

In addition, continuing to prosecute the Litigation would require the parties to expend substantial additional amounts of time and money at trial and potentially on appeals, ultimately reducing any recovery for the Class and further exhausting Defendants' available insurance. Without a settlement, the Class would likely have to wait years before obtaining any relief, even assuming that Lead Plaintiff would be successful and overcame every obstacle. Moreover, Lead Plaintiff would have no guarantee that further litigation would result in a higher recovery, or any recovery at all.

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT – CASE NO. 5:22-cv-08168-EKL

13

Accordingly, Lead Plaintiff, having considered the myriad risks of continued litigation, respectfully submits that the Settlement is fair, just, reasonable, and adequate. *See, e.g., In re LinkedIn User Priv. Litig.,* 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### b. The Proposed Method for Distributing Relief Is Effective

As demonstrated *infra*, § III.D, and in the supporting Declaration of Jacob Kamenir, the proposed method to distribute relief to the Settlement Class is effective, satisfying Rule 23(e)(2)(C)(ii).

The proposed Notice Plan calls for direct mail notice to all those who can be identified with reasonable effort, including through nominees. The Notice (Ex. A-1 to the Stipulation) is a postcard that contains all of the information required under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and satisfies Rule 23, (*see infra*, § III.D). The Notice directs Settlement Class Members to the case-specific website (www.TwistSecuritiesSettlement.com), where they can submit claims electronically or download a copy of the Proof of Claim form (Ex. A-3 to the Stipulation).[10] (*See* Kamenir Decl. ¶26.) The Notice also provides a toll-free phone number to contact the Claims Administrator and request a paper copy of the Proof of Claim. (Stipulation Ex. A-1.) The Settlement Website provides the Long-Form Notice (Ex. A-2 to the Stipulation) with additional detailed information, including in question-and-answer format, as well as copies of the Stipulation and other relevant documents such as online opt-out and objection forms. (*See* Kamenir Decl. ¶26; Stipulation Ex. A-2.) Finally, the Notice Plan will include publication of the Summary Notice (Ex. A-4 to the Stipulation) in *Investor's Business Daily* and *PR Newswire*, advertisements on stock market trend websites, and social media advertisements to users following stock tracking accounts. (Kamenir Decl. ¶25.)

---

[10] Providing a long-form notice and claim form online (with direct mail notice provided by postcard) has been approved under the PSLRA and Rule 23 in other securities class settlements in this Circuit. *See, e.g., Baron*, 2024 WL 3504234, at *16.

This proposed combination of mail, publication, and electronic notice satisfies Rule 23(c)(2)(B). *See, e.g.*, *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017). Courts in this District have approved class notice plans, like that proposed here, that use direct mail, posting of notice information on a dedicated website, and press releases through business news outlets. *See Smith v. Keurig Green Mountain, Inc.*, 2022 WL 2644105, at *11 (N.D. Cal. July 8, 2022) (preliminarily approving notice plan that included publication through *PR Newswire*); *In re HP Sec. Litig.*, 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding that similar procedures satisfy Rule 23 and the PSLRA and "constitute the best notice practicable under the circumstances"); *see also Oh v. Hamni Fin. Corp.*, 2024 WL 3435259, at *6 (C.D. Cal. Mar. 19, 2024) (finding notice plan that included publication through *Investor's Business Daily* "sufficient and practical").

The claims administration process will follow established procedures in securities class actions. Settlement Class Members must complete the Proof of Claim and provide the transaction information and documentation necessary to calculate their Recognized Claims pursuant to the Plan of Allocation (set forth in the Long-Form Notice). Once the Claims Administrator has processed all claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, Lead Plaintiff will seek the Court's approval for the Claims Administrator to make distributions to Authorized Claimants pursuant to a Plan of Allocation that, in consultation with Mr. Coffman, was designed to distribute the Net Settlement Fund on a *pro rata* basis using standard methodologies. If any funds remain in the Net Settlement Fund after the initial distributions, the Claims Administrator will conduct re-distributions until they are no longer cost-effective. Any remaining balance shall be donated to Gladstone Institutes, which is a non-profit, 501(c)(3) charitable, biomedical research organization serving the public interest in or around the Northern District of California and unaffiliated with the parties or their counsel.[11]

---

[11] As such, there will be no reversions to any Defendant.

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT – CASE NO. 5:22-cv-08168-EKL

15

### c.  The Terms and Timing of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Are Reasonable

The proposed Settlement does not contemplate any specific fee and expense award, but rather recognizes that Lead Counsel will seek Court approval of a separate fee and expense application to be paid from the Settlement Fund in an amount to be approved by the Court. Lead Counsel's fee and expense application will be fully briefed via formal motion in accordance with the proposed Notice Order.

As stated in the Notice, Lead Counsel will seek fees of no more than 25% of the Settlement Fund, or approximately $4.26 million, plus interest.  Detailed calculations supporting Lead Counsel's lodestar will be included in the forthcoming motion for approval of attorneys' fees and expenses.  However, given the amount of work necessary to prosecute the Litigation, Lead Counsel spent thousands of hours of attorney time, resulting in millions of dollars in lodestar and a lodestar cross-check multiplier at or below 1.0, which is well within the range commonly awarded in this District.  *See, e.g.*, *CareDx*, 2025 WL 3546227, at *2 (acknowledging the Ninth Circuit's benchmark of twenty-five percent of a common fund for attorneys' fees and approving fees amounting to 88% of the lodestar cross-check); *Pardi v. Tricida, Inc.*, 2025 WL 1647162, at *6 (N.D. Cal. May 16, 2025) (same at a 2.06 lodestar multiplier).  Moreover, in complex securities class actions such as this one, courts often approve even higher percentage fees. *See, e.g.*, *Hunt*, 2024 WL 1995840, at *8-9 (preliminarily approving fees amounting to 30% of the settlement); *Hardy*, 2023 WL 6276728, at *11 (preliminarily approving fees amounting to 33.4% of the settlement); *Karri v. Oclaro, Inc.*, No. 3:18 Civ. 3435, Dkt. 225 (N.D. Cal. July 26, 2024) (preliminarily approving 33.3% fee award).

Lead Counsel will also seek reimbursement from the Settlement Fund of costs and expenses incurred in connection with prosecuting this Litigation, not to exceed $850,000, along with appropriate interest.  (*See* Stipulation, ¶ 7.1); 15 U.S.C. § 78u-4(a)(4); *see also  Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9-10 (N.D. Cal. July 15, 2022) ("Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation costs . . . includ[ing] consultant fees, mediation fees, filing fees, process of service fees, electronic

research, postage, and travel . . . These expenses reflect expenses routinely charged to paying clients.")

In addition, Lead Plaintiff may request an award of no more than $10,000 in reasonable costs and expenses, pursuant to 15 U.S.C. § 77z-1(a)(4) and/or 15 U.S.C. § 78u-4(a)(4), in connection with its representation of the Settlement Class, which consisted of, *inter alia*, supervising Lead Counsel, collecting documents, and attending mediation, as set forth in the Reichart Declaration and as will be further supported by additional evidence. *See Fleming*, 2022 WL 2789496, at *10 ("Under the PSLRA, a class representative may seek an award of reasonable costs and expenses, including lost wages, directly relating to the representation of the class.")

### d. Lead Plaintiff Has Identified All Agreements Made in Connection with the Proposed Settlement

In addition to the Stipulation, the parties have entered into a routine confidential Supplemental Agreement providing specified options to terminate the Settlement if Persons who otherwise would be Members of the Settlement Class, and timely choose to exclude themselves, purchased more than a certain number of shares of Twist common stock during the Class Period. (Stipulation ¶8.4.) As is standard in securities class action settlements, such agreements are not made public to avoid incentivizing individual class members to leverage the opt-out threshold to seek disproportionate individual settlements at the expense of the broader class.[12] Pursuant to its terms, the Supplemental Agreement may be submitted to the Court for *in camera* review.

### 4. The Plan of Allocation Treats Class Members Equitably – Rule 23(e)(2)(D)

The proposed Plan of Allocation, set forth in the Long-Form Notice, "treats class members equitably relative to each other," satisfying Rule 23(e)(2)(D). Specifically, the Plan of Allocation, which was prepared with the expert assistance of Mr. Coffman, allocates each Authorized Claimant

---

[12] *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.").

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT – CASE NO. 5:22-cv-08168-EKL

17

their *pro rata* share of the Net Settlement Fund based on their recognized losses from transactions in Twist common stock.  Those recognized losses are calculated under the Plan of Allocation using estimates of artificial inflation at the time of purchase and sale for the Exchange Act claims. (Coffman Decl. ¶¶7-11.)  The Plan of Allocation accounts for Securities Act claimants by utilizing the statutory damages formula set forth in 15 U.S.C. § 77k(e).  (*Id.* at ¶14.)  Finally, the Plan of Allocation applies adjustments to recognize the relative strengths and weaknesses of the Exchange Act and Securities Act claims.  (*Id.* at ¶22.)

The Plan of Allocation is fair, reasonable, and adequate, and comparable to plans approved in other securities class actions in this District and Circuit.  *See Vataj v. Johnson*, 2021 WL 1550478, at \*10 (N.D. Cal. Apr. 20, 2021) (approving plan of allocation using *pro rata* basis of distribution); *In re Resistors Antitrust Litig.*, 2020 WL 2791922, at \*2 (N.D. Cal. Mar. 24, 2020) (same); *see also Lako v. Loandepot, Inc.*, 2025 WL 2389432, at \*2 (9th Cir. Aug. 18, 2025) (finding that the "allocation plan was fair" and affirming district court's approval thereof over objection, where the plan credited negative causation against Section 11 damages).

**C.     The Court "Will Likely Be Able to" Certify the Proposed Settlement Class, Satisfying Rule 23(e)(1)(B)(ii)**

The proposed Settlement Class consists of "all Persons that purchased or otherwise acquired Twist's common stock:    (i) in the December 2020 Offering pursuant to the 2020 Registration Statement, and were damaged thereby; and/or (ii) between December 20, 2018 and November 15, 2022, both inclusive, and were damaged thereby." [13]  (Stipulation ¶1.42.)[14]  The

---

[13] The Northern District of California Procedural Guidance for Class Action Settlements recommends that the parties identify "[a]ny differences between the settlement class and the class proposed in the operative complaint."  The proposed Settlement Class here is more narrow than the proposed class pled in the Amended Complaint, in that:  (i) the Court dismissed Lead Plaintiff's Section 11 claims stemming from Twist's February 2022 Offering, (ECF 117); and (ii) Lead Plaintiff previously voluntarily elected not to seek certification of a Securities Act class including persons with purchases "traceable to" the  December 2020 Offering, opting for inclusion only of direct purchasers as set forth in the definition of the Settlement Class (ECF 151).  The proposed Settlement Class is, however, identical to the class for which Lead Plaintiff previously sought certification. (*See* ECF 151, at 8.)

[14] The Settlement Class definition expressly excludes "(i) Defendants and any affiliates or subsidiaries thereof; (ii) present and former officers and directors of Twist and their immediate

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT – CASE NO. 5:22-cv-08168-EKL

18

Court will be able to certify the proposed Settlement Class because it meets each requirement of Rules 23(a) and (b)(3).

### 1.  Numerosity – Rule 23(a)(1)

The numerosity requirement is met where the Settlement Class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Courts in this District find that "[n]umerosity is presumed where the plaintiff class contains forty or more members." *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2022 WL 1459567, at *3 (N.D. Cal. May 9, 2022); *see also Rannis v. Recchia*, 380 Fed. App'x 646, 650-51 (9th Cir. 2010) (affirming certification of 20-member class).  "In cases involving securities traded on national stock exchanges, numerosity is practically a given." *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *4 (N.D. Cal. Jan. 13, 2005); *Lamartina v. VMware, Inc.*, 2024 WL 3286059, at *3 (N.D. Cal. July 2, 2024) ("Given that more than forty individuals purchased stock annually, the Court finds that the class is so numerous that joinder of all members is impracticable.")

The Settlement Class easily meets this requirement.  Twist's common stock traded on the NASDAQ at all times during the Class Period under the symbol "TWST."  There was a minimum of 27.9 million shares of Twist common stock outstanding at all times during the Class Period, with an average weekly trading volume of 6.54%.  (ECF 152-1, at ¶¶ 29, 70.)  Thus, the Members of the Class are so numerous that their joinder would be impracticable.

### 2.  Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality exists where class members "suffered the same injury" and claims "depend upon a common contention" capable of class-wide resolution.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "This does not, however, mean that every

---

family members (as defined in Item 404 of SEC Regulation S-K, 17 C.F.R. § 229.404, Instructions (1)(a)(iii) & (1)(b)(ii)); (iii) Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; (iv) any entity in which any Defendant had or has had a controlling interest; (v) Twist's employee retirement and benefit plan(s); and (vi) the legal representatives, heirs, estates, agents, successors, or assigns of any person or entity described in the preceding six categories." Also excluded are "those Persons who timely and validly request exclusion from the Settlement Class pursuant to the requirements set by the Court."  (Stipulation ¶1.42.)

question of law or fact must be common to the class; all Rule 23(a)(2) requires is a single significant question of law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013).

Settlement Class Members' claims turn on several common issues capable of class-wide resolution, including: (i) whether Defendants' alleged misrepresentations and omissions violated the Exchange Act and Securities Act; (ii) whether Defendants' alleged misrepresentations and omissions were materially false and misleading; (iii) whether Defendants acted with scienter with respect to the Exchange Act claims; (iv) whether the Individual Defendants controlled Twist and its violations of the securities laws; (v) whether the market price of Twist's common stock was artificially inflated as a result of Defendants' alleged misrepresentations and omissions; (vi) whether Defendants' misrepresentations and omissions caused Class Members to suffer a compensable loss; and (vii) whether the Members of the Class have sustained damages, and the proper measure of damages.

These issues are more than sufficient to establish commonality. Indeed, "[i]n securities fraud cases, commonality is often satisfied as a result of the inherent nature of such cases." *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *4 (N.D. Cal. Dec. 22, 2016); *see also In re Lyft Inc. Sec. Litig.*, 2021 WL 3711470, at *3 (N.D. Cal. Aug. 20, 2021) (Commonality is often established for Section 11 claims—and corresponding control person claims under Section 15— when a lead plaintiff alleges that offering documents "contained untrue statements of material fact or omitted to disclose material facts . . . .")

### 3.  Typicality – Rule 23(a)(3)

Rule 23(a)'s "typicality" requirement is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under [Rule 23(a)'s] permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members." *Huberman v. Tag-It Pac. Inc.*, 314 F. App'x 59, 62 (9th Cir. 2009).

Lead Plaintiff's claims are "typical" of other Settlement Class Members' claims because they arise out of the same alleged conduct. Lead Plaintiff, like other Settlement Class Members, alleges that it purchased Twist common stock directly in the December 2020 Offering and during

the Class Period at artificially inflated prices due to Defendants' material misstatements, and was damaged when the truth emerged. In other words, both Lead Plaintiff and the Class assert the same legal claims, relating to the adequacy of the same public statements, and will rely on the same facts and legal theories to establish liability. *Siemers v. Wells Fargo & Co.*, 243 F.R.D. 369, 375 (N.D. Cal. 2007) ("the claim of lead plaintiff . . . is typical of those by other members of the class . . . for they were all victims to greater or lesser degree of the same undisclosed (alleged) scheme.")

### 4.  Adequacy – Rule 23(a)(4)

Under Rule 23(a)(4), Lead Plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Under Ninth Circuit precedent, adequacy depends on the resolution of two questions: (1) whether 'the named plaintiffs and their counsel have any conflicts of interest with other class members,' and (2) whether 'the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class.'" *Brown v. China Integrated Energy Inc.*, 2015 WL 12720322, at *15 (C.D. Cal. Feb. 17, 2015) (quoting *Hanlon*, 150 F.3d at 1020). Lead Plaintiff and Lead Counsel easily meet this standard for the reasons set forth *supra*, § III.B.1.

### 5.  Predominance and Superiority – Rule 23(b)(3)

Pursuant to Rule 23(b)(3), the Court must consider: (1) whether questions of law or fact common to class members predominate over questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

As is typical in securities class actions, "questions of law and fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Indeed, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245 at *4 (N.D. Cal. Sep. 4, 2018) ("Whether Defendants' statements were false, material, made with the requisite scienter, and caused the class members' losses are significant aspects of the case and susceptible to common proof."); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("The same evidence applies equally to each class member; proving or disproving scienter does not hinge on any individual plaintiff's actions, but on

Defendants' actions."). Moreover, with respect to the Securities Act, Section 11 does not require reliance or scienter, 15 U.S.C. § 77k(a), and thus, common issues are even more likely to prevail. *See Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859-60 (9th Cir. 2013).

Finally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In short, it is not economical to prosecute separate actions to recover individual losses sustained as a result of Defendants' alleged violations of the securities laws. *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.]").

### D.     The Notice Plan Satisfies Rule 23(e), Due Process, and the PSLRA

The form and content of the Notice should be approved because they satisfy due process, the Federal Rules of Civil Procedure, and the PSLRA. Rule 23(e)(1) requires "notice in a reasonable manner to all class members who would be bound" by a proposed settlement, and Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Ninth Circuit has clarified that "[n]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (same).

Here, the Notice and Long-Form Notice (Exs. A-1 and A-2 to the Stipulation) are written in plain language and apprise Settlement Class members of the nature of the Litigation, including the claims and issues involved; the definition of the Settlement Class; the terms of the proposed Settlement; that the Court will exclude any Settlement Class member who requests exclusion; the procedures and deadlines for exclusion requests and objections; and the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B), among other disclosures.[15]

---

[15] These disclosures are in accord with those included in the Federal Judicial Center's model notices for securities class actions settlements available at https://www.fjc.gov/content/securities-class-action-certification-and-settlement-publication-notice.

The Notice and Long-Form Notice also satisfy the PSLRA's disclosure requirements for securities class settlements. *See* 15 U.S.C. § 77z-1(a)(7). Specifically, they disclose:

1.     the amount of the settlement on an aggregate and per-security basis (Notice at 2; Long-Form Notice at Appendix A), satisfying 15 U.S.C. § 77z-1(a)(7)(A);

2.     the issues about which the parties disagree (Notice at 2; Long-Form Notice at 7), satisfying 15 U.S.C. § 77z-1(a)(7)(B)(ii);

3.     the maximum amount of attorneys' fees and litigation expenses that BFA will seek (including on a per-share basis) (Notice at 2; Long-Form Notice at Appendix A), satisfying 15 U.S.C. § 77z-1(a)(7)(C);

4.     the name, mailing address, and telephone number of the Claims Administrator and/or BFA, who will be available to answer questions from Settlement Class Members (Notice at 2; Long-Form Notice at 12), satisfying 15 U.S.C. § 77z-1(a)(7)(D); and

5.     a brief statement explaining the reasons why the parties are proposing the settlement (Notice at 2; Long-Form Notice at 9), satisfying 15 U.S.C. § 77z-1(a)(7)(E).

The Notice Plan should also be approved. Lead Counsel proposes that Simpluris, a leading independent settlement and claims administrator, administer the notice and claims process. Lead Counsel selected Simpluris to administer the Settlement after a competitive bidding process in which four firms submitted proposals. Lead Counsel ultimately selected Simpluris because of its high reputation as a claims administrator and because its proposal included competitive pricing. (Bauer Decl. ¶3.) In the last two years, Lead Counsel retained Simpluris in one derivative matter to potentially give notice of a partial settlement but has not previously retained Simpluris as a claims administrator in a securities class action. (*Id.* ¶4.)

If the Court preliminarily approves the Settlement, Simpluris will disseminate, by direct mail, the Notice to all identified potential Settlement Class Members. (Kamenir Decl. ¶17.) To do so, it will utilize a list from Defendants' securities transfer agent of all persons who purchased or otherwise acquired Twist common stock in the December 2020 Offering or during the Class Period, as well as all persons on Twist's proprietary list of banks, brokerage firms, and nominees. (*Id.*) In

addition, Simpluris will publish the Summary Notice in *Investor's Business Daily*, transmit the Summary Notice over *PR Newswire*, and provide digital notice via banner and social media advertisements. (Kamenir Decl. ¶25.) Simpluris will also post the Notice, Long-Form Notice, Proof of Claim, and other materials on the Settlement Website. (*Id.* at ¶26.)[16] Such notice procedures are regularly approved in this District and Circuit. (*See supra*, § III.B.3.b.)

Simpluris estimates that it will mail approximately 53,500 postcard Notices, which will include the Notice and Claim Form, and that it will receive between 16,050 and 26,750 claims, based on an estimated 30%-50% response rate. (*See* Kamenir Decl. ¶23.) Simpluris based this estimate on three of its recent cases: *Cullen v. Ryvyl Inc.*, No. 23-cv-0185 (S.D. Cal.); *Wang v. Ampio Pharma., Inc.*, No. 22-cv-2105 (D. Colo.); *Crivellaro v. Singularity Future Tech. Ltd.*, No. 22-cv-7499 (E.D.N.Y.). (*Id.*) Simpluris used these cases, which it administered, because they involved similar alleged claims and similar methods of disseminating notice. (*Id.*) Simpluris has successfully implemented procedures in prior matters for securely handling class member data and will utilize those same procedures here. (*Id.* at ¶¶6-11.) Simpluris will not be liable for "distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court." (Stipulation ¶6.12.)

Simpluris estimates that its fees and expenses for administering the Settlement and coordinating the paid publication and media notice will total approximately $134,547. (Kamenir Decl. ¶43.) This number is based on Simpluris's estimate of the number of Notices it will mail and the number of claims it will receive. If these assumptions prove incorrect, Simpluris's administrative fees and expenses may differ from this estimate. (*Id.* at ¶44.) Notice and Administration Costs will be paid from the Settlement Fund. (Stipulation ¶6.2.)

---

[16] The Stipulation also requires Defendants to comply with Class Action Fairness Act ("CAFA") notice requirements, including by serving the notice required under 28 U.S.C. § 1715 within five (5) days of this filing, and to file proof of compliance with CAFA with the Court at least seven (7) calendar days prior to the Final Approval Hearing. (Stipulation ¶¶4.5-4.6.) Lead Plaintiff is not aware of any other required notices to government entities.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the proposed Settlement, Lead Plaintiff respectfully proposes the schedule below for settlement-related events.  The timing of each event is determined by the date the Notice Order is entered or the date of the Final Approval Hearing.

| EVENT | DEADLINE |
|---|---|
| Deadline for Simpluris to commence mailing of the Notice to Settlement Class Members (the "Notice Date") and to post copies of the Notice, Long-Form Notice, Proof of Claim, Stipulation, and its exhibits to the Settlement Website (www.TwistSecuritiesSettlement.com) | 21 calendar days from entry of the Notice Order (Proposed Order ¶8(a)) |
| Deadline for Simpluris to publish the Summary Notice in a national news publication and over a national newswire service | 14 calendar days from the Notice Date (Proposed Order ¶8(b)) |
| Deadline to submit Proof of Claim | 90 calendar days from Notice Date (Proposed Order ¶11(a)) |
| Deadline for motions for final approval of the Settlement, Plan of Allocation, and for attorneys' fees and expenses | 56 calendar days prior to the Final Approval Hearing (Proposed Order ¶15) |
| Deadline to submit written requests for exclusion and statements of intention to appear at the Final Approval Hearing | 21 calendar days prior to the Final Approval Hearing (Proposed Order ¶12) |
| Deadline for Lead Counsel to file with the Court proof of mailing and publication of the Notice, Long-Form Notice, Proof of Claim, Summary Notice, and Stipulation and its exhibits | 14 calendar days prior to the Final Approval Hearing (Proposed Order ¶8(c)) |
| Deadline for replies to any Objections | 7 calendar days prior to the Final Approval Hearing (Proposed Order ¶15) |
| Final Approval Hearing | No earlier than 115 days from the entry of the Notice Order (Proposed Order ¶4) |

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Proposed Settlement, preliminarily certify the Settlement Class, enter the Notice Order, and schedule the Final Approval Hearing.

Dated: April 30, 2026

By: */s/ George N. Bauer*
**BLEICHMAR FONTI & AULD LLP**
Joseph A. Fonti (*pro hac vice*)
jfonti@bfalaw.com
Nancy A. Kulesa (*pro hac vice*)
nkulesa@bfalaw.com
George N. Bauer (*pro hac vice*)
gbauer@bfalaw.com
Benjamin Burry (*pro hac vice*)
bburry@bfalaw.com
Thayne Stoddard (*pro hac vice*)
tstoddard@bfalaw.com
300 Park Avenue, Suite 1301
New York, New York 10022
Tel: (212) 789-1340
Fax: (212) 205-3960

– and –

Adam C. McCall (Bar No. 302130)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020
amccall@bfalaw.com

*Counsel for Lead Plaintiff Policemen's
Annuity and Benefit Fund of Chicago and
Lead Counsel for the Putative Class*

John A. Kehoe (*pro hac vice*)
**KEHOE LAW FIRM, P.C.**
41 Madison Avenue, 31st Floor
New York, NY 10010
Telephone: (215) 792-6676
jkehoe@kehoelawfirm.com

*Additional Counsel for Lead Plaintiff
Policemen's Annuity and Benefit Fund of
Chicago*