# EXHIBIT 1

**Stipulation of
Settlement**

Adam C. McCall (SBN 302130)
BLEICHMAR FONTI & AULD LLP
1330 Broadway, Suite 630
Oakland, California 94612
Tel: (415) 445-4003
Fax: (415) 445-4020

Joseph A. Fonti (*pro hac vice*)
Nancy A. Kulesa (*pro hac vice*)
George N. Bauer (*pro hac vice*)
Benjamin F. Burry (*pro hac vice*)
Thayne Stoddard (*pro hac vice*)
300 Park Avenue, Suite 1301
New York, New York 10022
Tel: (212) 789-1340
Fax: (212) 205-3960

*Counsel for Lead Plaintiff Policemen's
Annuity and Benefit Fund of Chicago and
Lead Counsel for the Putative Class*

JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
M. TODD SCOTT (SBN 226885)
tscott@orrick.com
ARIEL B. WINAWER (SBN 317821)
awinawer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

*Attorneys for Defendants
TWIST BIOSCIENCE CORPORATION, EMILY
M. LEPROUST, and JAMES M. THORBURN*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY JOSEPH PETERS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN<br><br>Defendants. | Case Number: 5:22-cv-08168-EKL<br><br>**STIPULATION OF SETTLEMENT**<br><br>Judge: Hon. Eumi K. Lee |

This Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement Agreement") is made and entered into by and between Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago ("Plaintiff"), on the one hand, and Defendants Twist Bioscience Corporation ("Twist"), Emily M. Leproust, and James M. Thorburn (collectively, "Defendants"), on the other hand, by and through their counsel of record in the above-captioned litigation (the "Litigation") pending in the United States District Court for the Northern District of California (the "Court"). This Stipulation is intended by Plaintiffs, on behalf of themselves and each of the Settlement Class Members (as defined below), and Defendants to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined in ¶1.36 hereof), upon and subject to the terms and conditions hereof and subject to the Court's approval.

WHEREAS:

A. All words or terms used herein that are capitalized shall have the meanings ascribed to those words or terms herein and in ¶1 hereof, entitled "Definitions."

B. On December 12, 2022, the initial Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") was filed in the Litigation. ECF 1.

C. On July 28, 2023, the Court entered an order appointing Policemen's Annuity and Benefit Fund of Chicago as Lead Plaintiff and Bleichmar Fonti & Auld LLP as lead counsel ("Lead Counsel"). ECF 70.

D. On October 11, 2023, Plaintiff filed an Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"), which is the operative complaint in the Litigation, against Defendants. ECF 83.

E. On September 3, 2025, after extensive briefing and oral argument, the Court granted in part and denied in part Defendants' motion to dismiss. ECF 117.

F. Thereafter, the Parties engaged in extensive discovery, including the exchange of numerous requests for documents and written discovery; the production of over 202,000 pages of documents by Defendants and over 4,000 pages by non-parties; and three fact depositions.

G.    On March 13, 2026, Plaintiff filed a motion seeking class certification, with an accompanying expert report.  ECF 151 to ECF 152-7.

H.    On March 31, 2026, the Parties engaged in a confidential full-day mediation before mediator Robert A. Meyer of JAMS.  Prior to that confidential mediation, the Parties exchanged confidential mediation statements with exhibits.  After extensive arms'-length negotiations over the course of that full-day mediation, and despite good faith efforts to resolve the Litigation during the mediation, the Parties were unable to reach agreement.  At the conclusion of the March 31, 2026 mediation, Mediator Meyer made a formal mediator's proposal that the case settle for $17.05 million.  The Parties accepted the proposal that day, executed a settlement term sheet (the "Term Sheet"), and thereafter began negotiating this Settlement Agreement.

I.    This Stipulation, together with the exhibits hereto and the Supplemental Agreement defined in ¶1.46 below, constitute the final and binding agreement between the Parties.

J.    Plaintiff and Lead Counsel believe that the claims and allegations in the Litigation have merit and that the information developed to date supports the claims and allegations asserted. However, Plaintiff and Lead Counsel recognize and acknowledge the risk, expense, and length of continued proceedings necessary to prosecute the Litigation against Defendants through summary judgment, trial, and through appeals.  Plaintiff and Lead Counsel are also mindful of the problems of proof and possible defenses to the securities law violations asserted in the Litigation.  Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon Settlement Class Members in light of the circumstances here, is in the best interests of Plaintiff and Settlement Class Members, and is fair, reasonable, and adequate.

K.    Defendants and Defendants' Counsel believe that the claims and allegations in the Litigation lack merit and that the information developed to date refutes the claims and allegations asserted.  Defendants are entering into this Stipulation to avoid and eliminate the burden, expense, uncertainty, and risk of further litigation, as well as the business disruption associated therewith. Defendants have expressly denied and continue to deny any wrongdoing or liability against them

arising out of any statements or omissions alleged, or that could have been alleged, in the Litigation. Defendants recognize and acknowledge the risk, expense, and length of continued proceedings necessary to defend the Litigation through summary judgment, trial, and through appeals. Defendants have determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation to avoid the further expense, inconvenience, and burden of this Litigation, to end the distraction and diversion of personnel and resources, and to obtain the conclusive and final dismissal and/or release of this Litigation, as to them, of the Released Claims.

L.    NOW THEREFORE, without any concession by Plaintiff that the Litigation lacks merit, and without any concession by the Defendants of any liability or wrongdoing or lack of merit in their defenses, it is hereby STIPULATED AND AGREED, by and among the Parties to this Stipulation, through their respective attorneys, subject to approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that in consideration of the benefits flowing to the Parties hereto, all Released Claims as against all Released Parties shall be fully, finally, and forever compromised, settled, released, waived, discharged, and dismissed with prejudice, and without costs, upon and subject to the following terms and conditions:

**1.    Definitions**

As used in this Stipulation, as well as any exhibits attached hereto and made part hereof and the Supplemental Agreement as defined below, the following terms have the meanings specified below:

1.1    "2020 Registration Statement" means the registration statement on Form S-3 filed by Twist on June 3, 2020, and all documents included and/or incorporated by reference therein.

1.2    "Amended Complaint" means Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws, filed in the Litigation on October 11, 2023. ECF 83.

1.3    "Authorized Claimant" means any Settlement Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.4    "Claimant" means any Settlement Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.5    "Claims Administrator" means the administrator retained by Lead Counsel, subject to the approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement. Defendants shall have no involvement in the retention of any claims administrator (except in connection with the potential retention of an administrator for purposes of serving notice pursuant to the Class Action Fairness Action, 28 U.S.C. §1715).

1.6    "Class Period" means the period from December 20, 2018 through November 15, 2022, both inclusive.

1.7    "Complaint" means the initial Class Action Complaint for Violations of the Federal Securities Laws, filed in the Litigation on December 12, 2022.  ECF 1.

1.8    "Court" means the United States District Court for the Northern District of California.

1.9    "December 2020 Offering" means the secondary offering of Twist common stock that Twist completed on December 2, 2020, and in which Twist offered 3,136,362 shares of Twist common stock (including 409,090 shares sold pursuant to the exercise in full by the Underwriters of their option to purchase additional shares) at $110.00 per share.

1.10    "Defendants" means Twist Bioscience Corporation, Emily M. Leproust, and James M. Thorburn.

1.11    "Defendants' Counsel" means Orrick, Herrington & Sutcliffe LLP and Munger, Tolles & Olson LLP.

1.12    "Effective Date" means the first date by which each of the conditions specified in ¶8.1 of the Stipulation have occurred or have been waived.

1.13    "Escrow Account" means the segregated and separate escrow account designated and controlled by Lead Counsel into which the Settlement Amount will be deposited for the benefit of the Settlement Class.

1.14  "Escrow Agent" means The Huntington National Bank. The Escrow Agent shall act in coordination with Lead Counsel as may be appropriate.

1.15  "Fee and Expense Application" shall have the meaning set forth in ¶7.1 of this Stipulation.

1.16  "Fee and Expense Award" shall have the meaning set forth in ¶6.2(c) of this Stipulation.

1.17  "Final," means with respect to any order of the Court, including, without limitation, the Judgment approving the Stipulation, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation, an order becomes "Final" when the last of the following shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken, which date shall be deemed to be thirty (30) days following the entry of the Judgment, unless the date to take such an appeal shall have been extended by Court order or otherwise (in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such date), or unless the thirtieth (30th) day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such thirtieth (30th) day; (iii) if a motion to alter or amend the Judgment is timely filed, the motion is denied; and (iv) if an appeal is taken, either: (a) the appeal has been dismissed and the time, if any, for commencing any further appeal has expired; or (b) the Judgment has been affirmed in its entirety and the time, if any, for commencing any further appeal has expired.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ or request for judicial review that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that concerns only the Court's award of attorneys' fees or expenses, the Plan of Allocation of the Net Settlement Fund, or the procedures for determining Authorized Claimants' recognized claims.

1.18    "Final Approval Hearing" means the hearing pursuant to Fed. R. Civ. P. 23(e)(2) to determine whether the proposed Settlement embodied by this Stipulation is fair, reasonable, and adequate to the Settlement Class, and whether the Court should enter a Judgment approving the proposed Settlement.

1.19    "Judgment" means the proposed judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B, or such other substantially similar form mutually agreed upon by the Parties.

1.20    "Lead Counsel" means Bleichmar Fonti & Auld LLP.

1.21    "Litigation" means the civil action captioned *Peters v. Twist Bioscience Corp., et al.*, No. 5:22-cv-08168-EKL, pending in the United States District Court for the Northern District of California.

1.22    "Long-Form Notice" shall have the meaning set forth in ¶4.1 of this Stipulation.

1.23    "Net Settlement Fund" shall have the meaning set forth in ¶6.2(d) of this Stipulation.

1.24    "Notice" shall have the meaning set forth in ¶4.1 of this Stipulation.

1.25    "Notice and Administration Costs" shall have the meaning set forth in ¶2.10 of this Stipulation.

1.26    "Notice Order" means the preliminary approval order as entered by the Court for mailing and publication of Notice.

1.27    "Parties" means, collectively, Plaintiff, on behalf of itself and each of the Settlement Class Members, and Defendants.

1.28    "Party" means, individually, Plaintiff, on behalf of itself and each of the Settlement Class Members, or any Defendant.

1.29    "Person" means a natural person, individual, corporation (including all divisions and subsidiaries thereof), general or limited partnership, limited liability company, limited liability partnership, joint venture or joint venturer, association, professional corporation, joint stock company, estate, legal representative, trust, unincorporated association, government or any

political subdivision or agency thereof, and any business or legal entity, and their spouses, domestic partners, heirs, executors, administrators, guardians, conservators, predecessors, successors, agents, trustees, estates, representatives, or assignees.

1.30    "Plaintiff" means Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago.

1.31    "Plaintiff's Counsel" means Lead Counsel and Kehoe Law Firm P.C.

1.32    "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, expenses, and interest as may be awarded by the Court, and any award to Plaintiff. Any Plan of Allocation is not part of this Stipulation and Defendants and their Related Parties shall have no responsibility therefor or liability with respect thereto.

1.33    "Proof of Claim" shall have the meaning set forth in ¶5.3 of this Stipulation.

1.34    "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1 *et seq.* and 15 U.S.C. § 78u-4 *et seq.*, as amended.

1.35    "Related Parties" means each of a Party's past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, principals, controlling shareholders, members, agents, administrators, attorneys, accountants, auditors, bankers, underwriters, advisors (including financial or investment advisors), consultants, commercial bankers, entities providing fairness opinions, personal or legal representatives, predecessors, successors, direct and/or indirect parents, subsidiaries, divisions, joint ventures or joint venturers, general or limited partnerships, limited liability partnerships, limited liability companies, members, executors, trustees, trusts, affiliates, assigns and assignees, spouses, heirs, estates, related or affiliated entities, any entity in which the Party has a majority interest, any member of a Defendant's immediate family, any trust of which a Party is the settlor or which is for the benefit of a Party and/or any member of a Defendant's immediate family, any entity in which a Party and/or any

member of a Defendant's immediate family has or had a majority interest (directly or indirectly), and the Underwriters.

1.36    "Released Claims" means any and all claims (including Unknown Claims as defined in ¶1.51 hereof), rights, demands, losses, suits, debts, obligations, damages, judgments, controversies, liabilities, or causes of action of every nature and description whatsoever, in law, equity, or otherwise (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether asserted or unasserted, accrued or unaccrued, fixed or contingent, whether arising under federal, state, local, common, or foreign law, or any other law, rule, or regulation, whether class or individual in nature, to the fullest extent that the law permits their release in this Litigation against any of the Defendants or their Related Parties, which arise out of, are based on, or relate to in any way, directly or indirectly, to both: (i) the allegations, acts, transactions, facts, events, matters, occurrences, disclosures, statements, filings, events, representations, or omissions involved, set forth, alleged, or referred to in the Complaint, Amended Complaint, or the Litigation, or which could have been alleged in the Litigation; and (ii) the purchase, sale, holding, or other acquisition, disposition, or holding of Twist common stock during the Class Period.  Released Claims also include any and all claims (including Unknown Claims as defined in ¶1.51 hereof), rights, demands, losses, suits, debts, obligations, damages, judgments, controversies, liabilities, or causes of action of every nature and description whatsoever, in law, equity, or otherwise (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether asserted or unasserted, accrued or unaccrued, fixed or contingent, whether arising under federal, state, local, common, or foreign law, or any other law, rule, or regulation, whether class or individual in nature, which arise out of, are based on, or relate to the institution, prosecution, or settlement of the Litigation or the Released Claims against Defendants or their Related Parties.  For the avoidance of doubt, Released Claims do not include any claims:  (i) that may be asserted derivatively against any Defendant, including claims asserted in *Shumacher v. Leproust, et al.*, No. 1:23-cv-01048-UNA

(D. Del.) and any other pending derivative actions brought on behalf of Twist; (ii) that any Defendant, and/or their Related Parties, may have against any other Defendant and/or their Related Parties; (iii) any claims relating to the enforcement of the Settlement; and/or (iv) any claims of any Person that submits a request for exclusion from the Settlement Class that is accepted by the Court.

1.37   "Released Defendant Parties" means each and all of Defendants and each and all of their respective Related Parties.

1.38   "Released Parties" means each and all of Defendants, each and all of their respective Related Parties, Plaintiff, Settlement Class Members, and Plaintiff's Counsel.

1.39   "Releases" means the releases set forth in ¶5.1 through ¶5.5 of this Stipulation.

1.40   "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of the Stipulation.

1.41   "Settlement Amount" means the principal amount of Seventeen Million Fifty Thousand U.S. Dollars ($17,050,000.00).

1.42   "Settlement Class" and "Settlement Class Members" mean, for the purpose of settlement only, all Persons that purchased or otherwise acquired Twist's common stock:  (i) in the December 2020 Offering pursuant to the 2020 Registration Statement, and were damaged thereby; and/or (ii) between December 20, 2018 and November 15, 2022, both inclusive, and were damaged thereby.  Excluded from the Class are: (i) Defendants and any affiliates or subsidiaries thereof; (ii) present and former officers and directors of Twist and their immediate family members (as defined in Item 404 of SEC Regulation S-K, 17 C.F.R. § 229.404, Instructions (1)(a)(iii) & (1)(b)(ii)); (iii) Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; (iv) any entity in which any Defendant had or has had a controlling interest; (v) Twist's employee retirement and benefit plan(s); and (vi) the legal representatives, heirs, estates, agents, successors, or assigns of any person or entity described in the preceding five categories.  Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the requirements set by the Court.

1.43    "Settlement Fund" means the Settlement Amount, plus any accrued interest earned thereon.

1.44    "Stipulation" means this Stipulation of Settlement, including the recitals and Exhibits hereto.

1.45    "Summary Notice" shall have the meaning set forth in ¶4.1 of this Stipulation.

1.46    "Supplemental Agreement" shall have the meaning set forth in ¶8.4 of this Stipulation.

1.47    "Taxes" means all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund.

1.48    "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.11 hereof.

1.49    "Twist" or the "Company" means Twist Bioscience Corporation.

1.50    "Underwriters" means collectively J.P. Morgan Securities LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, Evercore Group L.L.C., and Robert W. Baird & Co. Inc.

1.51    "Unknown Claims" means collectively any and all Released Claims of every nature and description that any Party, any Party's Related Parties, or any Settlement Class Member does not know or suspect to exist in his, her, or its favor which, if known by such Person at the time of the Releases of the Released Parties, would or might have affected such Person's settlement or decisions with respect to the Settlement (including, but not limited to, the Releases of the Released Parties or the decision not to object to or opt out of this Settlement).

**2.    The Settlement**

**a.    The Settlement Fund**

2.1    In consideration of the terms of the Stipulation, the Settlement Amount of $17,050,000.00 USD shall be paid by Defendants and/or Defendants' insurers, on behalf of

Defendants, by wire transfer into an Escrow Account controlled by Lead Counsel. Defendants shall pay or shall cause their insurance carriers to pay, the Settlement Amount into the Escrow Account within thirty (30) business days of: (i) preliminary approval; and (ii) receipt by Defendants' Counsel of complete payment instructions, including a W-9, telephone and email contact information of a person with knowledge who verbally can confirm the wiring instructions, and a physical address for the designated recipient of the payment, and any other information reasonably requested to effectuate payment into the Account ("Payment Date"). Defendants and/or Defendants' insurers' failure to timely pay the Settlement Amount shall result in the accrual of interest on any unpaid amount at the then-current rate of interest on the T-bill maturing 90 days after the Payment Date.

2.2　　In addition, if the entire Settlement Amount is not timely paid to the Escrow Account pursuant to the above, Lead Counsel may terminate the settlement but only if (a) Lead Counsel has notified Defendants' Counsel in writing of their intention to terminate the settlement, and (b) the entire Settlement Amount is not transferred to the Escrow Account within five (5) calendar days after Lead Counsel has provided such written notice. For the avoidance of doubt, the remedy set forth in this ¶2.2 is not the exclusive remedy for any failure to pay the Settlement Amount in the time prescribed in ¶2.1, and nothing in this ¶2.2 shall affect the Defendants' obligations under ¶2.1 to pay the Settlement Amount within the time prescribed in ¶2.1 or to pay interest on any amount not timely paid for each day after the deadline that such amount is not paid.

2.3　　The Settlement Amount is an all-in number, meaning it shall include, among other things, payment for all Plaintiff's Counsel's attorneys' fees, administration costs, expenses, class member benefits, costs of administration and notice, and reimbursement of Plaintiff's time and expenses pursuant to the PSLRA, as well as any other costs, expenses, or fees of any kind whatsoever associated with the resolution of this matter. Except as provided in ¶4.5, Defendants and their Related Parties shall have no obligation whatsoever to pay any additional amounts beyond the Settlement Amount.

2.4     The payment described in ¶2.1 is the only payment to be made by or on behalf of Defendants of any kind in connection with this Settlement (except with respect to CAFA notice pursuant to ¶4.5 below).

2.5     Subject to applicable law, Defendants and their insurers' obligation to pay the Settlement Amount shall not be stayed or affected in any way by the commencement by or against any Defendant, or any of Defendants' insurers, of a case or proceeding under Title 11 of the United States Code (including Chapter 15 thereunder) or any foreign equivalent, any foreign or state insolvency or receivership law, or any foreign or state law relating to general assignment for the benefit of creditors, composition, marshaling, or other similar arrangements and procedures. The commencement of any such case or proceeding shall not operate to stay, terminate, cancel, suspend, excuse, delay, impede, or otherwise interfere with or impair (i) the rights, if any, of Plaintiff, Plaintiff's Counsel, or Settlement Class Members to receive payments from the Settlement Fund pursuant to this Stipulation, or (ii) the duties of the Escrow Agent under this Stipulation, including but not limited to the Escrow Agent's obligation to release the Settlement Fund from escrow consistent with this Stipulation.

### b.     The Escrow Agent

2.6     The Escrow Agent, with Lead Counsel's prior written consent, shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in United States Agency or Treasury securities or other instruments backed by the full faith and credit of the United States Government or an agency thereof, or fully insured by the Federal Deposit Insurance Corporation or the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in other such instruments at their then-current market rates.  The Settlement Fund shall bear all costs and risks related to the investments of the Settlement Amount.

2.7     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or at the direction of Lead Counsel in accordance with the terms of this Stipulation.

2.8     Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation. Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to, any action, omission, or determination of the Escrow Agent or any designees or agents thereof; or any transaction executed by the Escrow Agent or any designees or agents thereof.

2.9     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.10    Notwithstanding the fact that the Effective Date has not yet occurred, Lead Counsel may use up to $150,000 from the Settlement Fund to pay the costs and expenses reasonably and actually incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, administering and distributing the Net Settlement Fund to Authorized Claimants and processing Proofs of Claim ("Notice and Administration Costs").  Prior to the Effective Date, payment of any Notice and Administration Costs exceeding $150,000 shall be paid from the Settlement Fund only upon prior approval of the Court or written agreement of the Parties.  Subsequent to the Effective Date, Lead Counsel may pay all further Notice and Administration Costs actually incurred from the Settlement Fund without further order of the Court or agreement of the Parties.  In the event that the Effective Date does not occur because there is a failure of a condition set forth in ¶8.1, any money paid or incurred for the above purposes, including any related fees, shall not be returned or repaid to the original funding entity. Defendants and their Related Parties are not responsible for, and shall not be liable for, any costs incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, administering and distributing the Settlement Fund, or processing Proofs of Claim.

### c.    Taxes

2.11    (a)    The Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.  In addition, Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.11, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)    For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be Lead Counsel. Lead Counsel shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)).  Such returns (as well as the election described in ¶2.11(a) hereof) shall be consistent with this ¶2.11(b) and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.11(c) hereof.

(c)    All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants and their Related Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) Tax Expenses shall be paid out of the Settlement Fund.  In no event shall Defendants or their Related Parties have any responsibility for, or liability whatsoever with respect to, the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely caused by Lead Counsel to be paid out of the

Settlement Fund without prior order from the Court. Lead Counsel shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). Defendants and their Related Parties are not responsible therefor, nor shall they have any liability with respect thereto. The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

(d)     Except as required by ¶2.1 concerning payment of the Settlement Amount and subject to this ¶2.11, Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: Taxes, Tax Expenses, Notice and Administration Costs, locating Settlement Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim, or paying escrow fees and costs.

### d.     Termination of the Settlement

2.12    If the Effective Date does not occur because there is a failure of a condition set forth in ¶8.1, the Settlement Amount, including accrued interest, less the expenses and Taxes or Tax Expenses described in ¶¶2.10 and 2.11 hereof actually incurred, shall be refunded by the Escrow Agent in accordance with the procedures set forth in ¶8.5.

### 3.     Certification of the Settlement Class

3.1    Solely for purposes of this Settlement, and subject to approval by the Court, the Parties agree that the Settlement Class shall be certified and Plaintiff and Lead Counsel shall be appointed as representatives of the Settlement Class pursuant to Federal Rule of Civil Procedure 23. Should certification of the Settlement Class be denied, or should any court amend the scope of the Settlement Class, each of the Parties shall have the right (exercisable, if at all, only by written notice to the other Parties within 10 days after the exercising Party receives written notice of any such ruling) to terminate this Stipulation, in which case the provisions of ¶8.5 shall apply.

If for any reason final approval of the Settlement is denied or reversed and such denial or reversal becomes Final, then the certification of the Settlement Class shall become null and void without further order of the Court or any other court, the Parties shall be restored to their respective positions in the Litigation as of March 31, 2026, and neither the certification of the Settlement Class nor any position taken or not taken by Defendants in connection therewith shall operate as an admission pertaining to, or be admissible in connection with, any subsequent class certification proceedings.

### 4.      Notice Order and Final Approval Hearing

4.1      By no later than April 30, 2026, Plaintiff shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of the Notice Order, substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, and approval for mailing a settlement notice ("Notice"), substantially in the form of Exhibit A-1 attached hereto, dissemination of a Long-Form Notice of Pendency and Proposed Settlement of Class Action ("Long-Form Notice"), substantially in the form of Exhibit A-2 attached hereto, through a dedicated website (the "Settlement Website"), and publication of a summary notice ("Summary Notice"), substantially in the form of Exhibit A-4 attached hereto. The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application as defined in ¶7.1 below, the deadline to opt out of the Settlement Class and to object to the Settlement, and the date of the Final Approval Hearing.

4.2      For purposes of identifying and providing notice to the Settlement Class, within ten (10) business days of filing this Stipulation with the Court, Twist shall provide, or shall cause its securities transfer agent to provide, to Lead Counsel and the Claims Administrator, at no cost to Plaintiff, Plaintiff's Counsel or the Settlement Class, to the extent available to Twist, record shareholder lists, in electronic form, containing the names and addresses of all persons or custodians acting on their behalf (or both persons and custodians, where available), as appropriate for providing notice to the Settlement Class.

4.3     In accordance with the schedule set forth in the Notice Order, Lead Counsel shall cause the Notice to be emailed or mailed where email addresses are not available, by the Claims Administrator to all shareholders of records, or nominees, who can be identified through reasonable efforts. The Long-Form Notice and Proof of Claim shall also be posted on the Settlement Website. In accordance with the schedule set forth in the Notice Order, the Summary Notice will also be published once over a national newswire service. The cost of providing such notice shall be paid out of the Settlement Fund.

4.4     Not later than seven (7) calendar days prior to the Final Approval Hearing, Lead Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such emailing, mailing, and publication.

4.5     Pursuant to 28 U.S.C. § 1715, Defendants shall be responsible for compliance with any Class Action Fairness Act notice requirements (including the costs of compliance) and shall take steps to comply with such notice requirements in as expeditious a manner as possible (including without limitation by serving the notice required under 28 U.S.C. § 1715 within ten days of filing the Stipulation and motion for preliminary approval) so as to not cause delay in the scheduling of a final settlement approval hearing.

4.6     At least seven (7) calendar days before the Final Approval Hearing, Defendants shall cause to be served on Lead Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with the notice requirements of CAFA.

4.7     Lead Counsel shall request that after notice is given and not earlier than ninety (90) calendar days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to CAFA as set forth in ¶4.5 above, the Court hold a Final Approval Hearing and approve the Settlement of the Litigation as set forth herein.  At or after the Final Approval Hearing, Lead Counsel also shall request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**5.     Releases**

5.1     Defendants' obligations incurred pursuant to this Stipulation are in consideration of: (i) the full and final disposition of the Litigation as against all Defendants; (ii) the Releases provided for herein; and (iii) all other terms contained herein.

5.2     Upon the Effective Date, without any further action by anyone, Plaintiff (for and on behalf of itself and its Related Parties) and the Settlement Class Members shall be deemed to have, and by operation of law and the Judgment shall have, fully, finally, and forever released, relinquished, compromised, settled, resolved, waived, discharged, and dismissed on the merits with prejudice all Released Claims (including, without limitation, Unknown Claims) against Defendants and their Related Parties (including Defendants' Counsel).  All such Releases shall be effective whether or not any Settlement Class Member executes and delivers a Proof of Claim or participates in the Settlement Fund.

5.3     The Proof of Claim and Release form ("Proof of Claim") to be executed by Settlement Class Members shall release all Released Claims against Defendants and their Related Parties and shall be substantially in the form contained in Exhibit A-3 attached hereto; provided, however, that the failure of a Settlement Class Member to submit such Proof of Claim shall have no effect on the provisions of the foregoing, inclusive, which shall remain in full force and effect as to each of the Settlement Class Members irrespective of any lack of submission of a Proof of Claim.

5.4     Upon the Effective Date, Plaintiff, each of Plaintiff's Related Parties, each of the Settlement Class Members, and anyone claiming through, under, or on behalf of any of them, are and shall be forever barred and enjoined from commencing, instituting, intervening in, prosecuting, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any of the Released Claims against any of the Defendants and/or their Related Parties, and each of them.

5.5     Upon the Effective Date, without any further action by anyone, Defendants (for and on behalf of themselves and their respective Related Parties) shall be deemed to have, and by

operation of law and the Judgment shall have, fully, finally, and forever released, relinquished, compromised, settled, resolved, waived, and discharged Plaintiff, Plaintiff's Related Parties (including Plaintiff's Counsel), and Settlement Class Members from all Released Claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of: (i) the Litigation; or (ii) the Released Claims, except for those claims brought to enforce the Settlement.

5.6     The releases and waivers contained in this section were separately bargained for and are essential elements of this Stipulation and the Settlement.

5.7     Notwithstanding the provisions of this Section 5, the Releases herein do not include any claims: (i) that may be asserted derivatively against or on behalf of any Defendant, including claims asserted in *Shumacher v. Leproust, et al.*, No. 1:23-cv-01048-UNA (D. Del.) and any other pending derivative actions brought on behalf of Twist; (ii) that any Defendant, and/or their Related Parties, may have against any other Defendant and/or their Related Parties; and/or (iii) any claims relating to the enforcement of the Settlement.

5.8     With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Parties (for and on behalf of themselves and their respective Related Parties) shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code § 1542 and any and all provisions, rights, and benefits conferred by the law of any state or territory or other jurisdiction or principle of common law or foreign law that is similar, comparable, or equivalent to California Civil Code § 1542.  Section 1542 provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Parties, their respective Related Parties, and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she, they, or it now knows or

believes to be true with respect to the subject matter of the Released Claims.  Nevertheless, upon the Effective Date, the Parties (for and on behalf of themselves and their respective Related Parties) nevertheless shall expressly fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Parties (on behalf of themselves and their respective Related Parties) acknowledge, and Settlement Class Members shall be deemed by operation of law (including by operation of the Judgment) to have acknowledged, that the waivers in this ¶5.8 were separately bargained for and are a key element of the Settlement.  The Parties acknowledge and agree that they have had the opportunity to consult with counsel of their choice about the import of this ¶5.8 and the waivers herein, and that the Parties nevertheless freely and voluntarily agree and assent to such ¶5.8 and the waivers herein.

**6.    Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

6.1    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.  The Claims Administrator will be subject to such supervision and direction from the Court and/or Lead Counsel as may be necessary or as circumstances may require.  Defendants and their respective Related Parties shall have no responsibility for, or interest whatsoever with respect to, the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability whatsoever to Plaintiff, Settlement Class Members, or Lead Counsel, in connection with such administration, including, but not limited to:

(i) any act, omission, or determination by Lead Counsel, the Escrow Agent, and/or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management or investment of the Settlement Fund or the Net Settlement Fund, or the distribution of the Net Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

6.2     The Settlement Fund shall be applied as follows:

(a)     to pay all the fees and expenses reasonably and actually incurred in connection with providing notice, locating Settlement Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim, and paying escrow fees and costs, if any;

(b)     to pay the Taxes and Tax Expenses described in ¶2.11 hereof;

(c)     to pay Plaintiff's Counsel's fees and expenses to the extent allowed by the Court (the "Fee and Expense Award") and to pay any award to Plaintiff pursuant to 15 U.S.C. § 77z-1(a)(4) and/or 15 U.S.C. § 78u-4(a)(4) in connection with its representation of the Settlement Class to the extent allowed by the Court; and

(d)     after the Effective Date, to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.3     After the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

6.4     Within ninety (90) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required

to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-3 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim.

6.5    Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Proof of Claim within the period specified herein, or such other period as may be ordered by the Court or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Parties asserting, concerning, arising out of, or relating to the Released Claims.  Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims, so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby, and Lead Counsel shall also have the discretion (but not the obligation) to direct the Claims Administrator to waive what Lead Counsel deems to be *de minimis* or formal or technical defects in any claims submitted.  No Person shall have any claim against Plaintiff, Plaintiff's Counsel, the Claims Administrator or any Settlement Class Member by reason of the exercise or non-exercise of such discretion.

6.6    Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each claim shall be allowed, subject to the review by the Court pursuant to ¶6.8 below.

6.7    Proofs of Claim that do not meet the submission requirement may be rejected. Prior to rejecting a Proof of Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the Proof of Claim submitted.  The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth

the reasons therefor, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of ¶6.8 below.

6.8    If any Claimant whose timely claim has been rejected in whole or in part based on a curable deficiency desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the mailing of the notice required in ¶6.7 above (or within such other period as may be specified by the Claims Administrator if the claim was untimely), serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  Failure to timely service this notice, statement, and documentation shall be deemed a waiver of the ability to further contest any such rejection.  If the Claim is still rejected after the Claimant provides the required notice, the Settlement Class Member must move the Court within twenty (20) days to have the Claim accepted by Lead Counsel and the Claims Administrator; this deadline may be extended at Lead Counsel's discretion to facilitate resolving any disputes before their presentation to the Court.

6.9    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim, including, but not limited to, all releases provided for herein and in the Judgment.  All proceedings with respect to the administration, processing, and determination of claims, and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.  All Settlement Class Members, other Claimants, and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

6.10    Following the Effective Date, the Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court.  If there is any balance remaining in the Net Settlement Fund

after a reasonable period of time after the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), the Claims Administrator shall, if feasible, reallocate such balance (which may occur on multiple occasions) among Authorized Claimants who negotiated the checks sent in the initial distribution and who would receive a minimum of $10.00.  These redistributions shall be repeated so long as they are economically feasible and the balance remaining in the Net Settlement Fund is *de minimis*.  Any balance that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, shall be donated to the Gladstone Institutes, which is a non-profit, 501(c)(3) charitable organization serving the public interest in or around the Northern District of California, and unaffiliated with the Parties or their counsel.

6.11    This Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, each of the Released Defendant Parties and any Person or entity which paid any portion of the Settlement Amount shall not have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.  The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.  For the avoidance of doubt, the Released Defendant Parties (including the Underwriters) are not Settlement Class Members, cannot submit claims in the Settlement, and shall have no ability to recover any funds from the Settlement.

6.12    No Person shall have any claim against Plaintiff, Plaintiff's Counsel, the Released Parties, the Claims Administrator, or any other entity designated by Lead Counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court (and no Person shall have any such claim against Defendants or any of Defendants' Related Parties whether or not distributions are made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court).  This does not include any claim by any Party

for breach of this Stipulation. It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate this Stipulation or affect or delay the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein (including the Releases contained herein), or any other orders entered pursuant to this Stipulation.

**7.      Lead Counsel's Fees and Expenses**

7.1      Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund for:  (i) an award of attorneys' fees; plus (ii) payment of expenses or charges in connection with prosecuting the Litigation; plus (iii) any interest on such fees and expenses at the same rate and for the same time periods as earned by the Settlement Fund (until paid), as may be awarded by the Court.  In addition, Plaintiff may request an award pursuant to 15 U.S.C. § 77z-1(a)(4) and/or 15 U.S.C. § 78u-4(a)(4) in connection with its representation of the Settlement Class.  Lead Counsel reserves the right to make additional applications for distributions from the Settlement Fund for fees and expenses incurred. The application or applications described in this paragraph are not the subject of any agreement between Plaintiff and Defendants other than what is set forth in this Stipulation.

7.2      The Fee and Expense Award, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court enters an order awarding such fees and expenses, notwithstanding any pending appeals, subject to the joint and several obligation of all counsel who receive any award of attorneys' fees and costs to make full refunds or repayments to the Escrow Account plus interest earned thereon if the award is lowered or the Settlement is disapproved by a Final order not subject to further review, within thirty (30) days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction. Lead Counsel may allocate attorneys' fees and expenses among other Plaintiff's Counsel in a

manner in which it in good faith believes reflects the contributions of such counsel to the institution, prosecution, and resolution of the Litigation.  Lead Counsel, as a condition of receiving the Fee and Expense Award, agrees that Lead Counsel's law firm and its respective partners are subject to the jurisdiction of the Court for the purpose of enforcing this provision, and are jointly and severally liable and responsible for any required repayment.

7.3     The procedure for and the allowance or disallowance by the Court of any Fee and Expense Application are not part of the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation.  Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate this Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth herein (including the releases contained herein).

7.4     Defendants and their respective Related Parties shall not take any position concerning, shall have no responsibility for, and shall have no liability whatsoever with respect to, any Fee and Expense Application, the payment of any Fee and Expense Award to Lead Counsel, and/or the allocation by Lead Counsel of any attorneys' fees or the Fee and Expense Award among other Plaintiff's Counsel.  Defendants, their respective Related Parties, and Defendants' Counsel are not entitled to any award of fees or expenses from the Settlement Fund.

**8.      Conditions of Settlement, Effect of Disapproval or Termination**

8.1     The Effective Date of this Stipulation shall be conditioned upon, and shall be deemed to have occurred only upon, the occurrence or waiver of all of the following events:

(a)     full execution of the Stipulation (including the exhibits thereto) and the Supplemental Agreement;

(b)     the Court has entered the Notice Order, as required by ¶4.1 hereof;

(c)     the Settlement Amount has been deposited by Defendants and/or Defendants' insurers into the Escrow Account, as required by ¶2.1 hereof;

(d)     Defendants have not exercised their option to terminate the Stipulation pursuant to ¶8.4 hereof;

(e)     no Party has exercised any right to terminate the Stipulation under ¶3.1 and/or ¶9.12 hereof;

(f)     the Court has entered the Judgment, substantially in the form of Exhibit B attached hereto, or such other substantially similar form mutually agreed to by the Parties; and

(g)     the Judgment has become Final, as defined in ¶1.17 hereof.

8.2     Upon the occurrence of all of the events referenced in ¶8.1 hereof, any and all remaining interest or right of Defendants or their insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  This Stipulation shall be terminated subject to ¶8.5 hereof, unless the Parties mutually agree in writing to proceed with the Stipulation, if any of the following occurs: (i) the Court declines to enter the Notice Order; (ii) subject to the provisions of ¶¶2.1 and 2.2 above, the Settlement Amount is not timely deposited by Defendants and/or Defendants' insurers into the Escrow Account; (iii) Defendants exercise their option to terminate the Stipulation pursuant to ¶8.4 hereof; (iv) the Court declines to enter the Judgment substantially in the form of Exhibit B attached hereto, or such other substantially similar form mutually agreed to by the Parties; or (v) the Judgment does not become Final because it is reversed or materially modified on appeal.

8.3     Any decision or proceeding, whether in this Court or any appellate court, with respect to the Fee or Expense Application or with respect to any plan of allocation shall not be considered material to the Settlement, shall not affect the finality of any Judgment and shall not be grounds for termination of the Settlement.

8.4     If, prior to the Final Approval Hearing, Persons who otherwise would be Settlement Class Members have timely and validly requested exclusion from the Settlement in accordance with the provisions of the Notice Order  and the Notice pursuant thereto, and if those Persons collectively meet the criteria set forth in a separate agreement (the "Supplemental Agreement") executed between Lead Plaintiff and Defendants, then Defendants shall have the

option to terminate this Stipulation and Settlement in accordance with the procedures set forth in the Supplemental Agreement. The Parties shall not file the Supplemental Agreement with the Court unless instructed to do so by the Court.

8.5     Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, then within ten (10) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less any expenses and costs reasonably and actually incurred pursuant to ¶2.10 and Taxes and Tax Expenses pursuant to ¶2.11 hereof, which have either been disbursed from the Settlement Fund or are chargeable to the Settlement Fund pursuant to these provisions, shall be refunded by the Escrow Agent based upon written instructions from Lead Counsel pursuant to written instructions from Defendants' Counsel.  At the request of Defendants' Counsel, Lead Counsel or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written direction from Defendants' Counsel.

8.6     If the Effective Date does not occur because there is a failure of a condition set forth in ¶8.1, the Parties shall be restored to their respective positions in the Litigation as of March 31, 2026.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶2.10-2.12, 3.1, 8.1-8.2, 8.5-8.7, 9.4, 9.8, and 9.11-9.15 hereof, shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*, and the Parties shall be deemed to return to their status as of March 31, 2026. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall constitute grounds for termination of the Stipulation.

8.7     If the Effective Date does not occur because there is a failure of a condition set forth in ¶8.1, neither Plaintiff nor Plaintiff's Counsel shall have any obligation to repay any amounts disbursed for notice costs and Taxes and Tax Expenses pursuant to ¶¶2.10-2.11 hereof.

In addition, any expenses already incurred and chargeable pursuant to ¶¶2.10-2.11 hereof at the time of such termination, but which have not been paid, shall be paid by the Escrow Agents in accordance with the terms of the Stipulation prior to the remaining balance being refunded in accordance with ¶¶2.12 and 8.5 hereof.

**9.      Miscellaneous Provisions**

9.1      The Parties: (i) acknowledge that it is their intent to consummate this Settlement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2      Upon the payment of the Settlement Amount into the Escrow Account, (a) this Stipulation shall not be, and shall not be deemed or considered to be, executory, as that term has been interpreted under 11 U.S.C. § 365, and (b) no further obligations of any of the Defendants pursuant to this Stipulation or any further effort or responsibility to defend against any appeal or proceeding seeking judicial review of any order contemplated by this Stipulation shall render the Settlement or all or any portion of this Stipulation executory, as that term has been interpreted under 11 U.S.C. § 365.

9.3      The Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises claims that are contested and shall not be deemed an admission by any Party or any of the Released Parties as to the merits of any claim or defense.  Plaintiff and Plaintiff's Counsel maintain that at all relevant times they have complied with Rule 11 of the Federal Rules of Civil Procedure. Defendants and Defendants' Counsel maintain that at all relevant times they have complied with Rule 11 of the Federal Rules of Civil Procedure.  The Parties and their counsel agree that they shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Litigation, and the Judgment will contain a statement that during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11 relating

to the institution, prosecution, defense, or settlement of this Litigation. In addition, Plaintiff shall not make applications against Defendants and/or their counsel, and Defendants shall not make applications against Plaintiff and/or Plaintiff's Counsel, for fees, costs, or sanctions in connection with the Litigation. The Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith at arm's length by the Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis or that the claims asserted were meritorious.

9.4    Neither the Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or concession or evidence of, the validity of any Released Claim, the truth of any fact alleged in the Litigation, the deficiency of any defense that has been or could have been asserted in the Litigation, or of any alleged wrongdoing, liability, negligence, or fault of any of the Defendants or any of their Related Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or misrepresentation or omission, including with respect to any statement or written document attributed to, approved or made by, any Defendant in any civil, criminal, or administrative proceeding in any court, administrative agency, or other forum or tribunal. Defendants and their Related Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of, without limitation, claim preclusion or issue preclusion or similar defense or counterclaim.

9.5    The Parties jointly request that the Judgment include the broadest bar order permissible by law barring all future claims for contribution or indemnity (or any other claim or claim-over, however denominated, for which the injury claimed is that person's or entity's alleged

liability to Plaintiff or Settlement Class Members) among and against Plaintiff, Plaintiff's Related Parties, any and all Settlement Class Members, Defendants, and Defendants' Related Parties arising out of the Litigation and Released Claims ("Bar Order"), provided, however, that the Bar Order shall not preclude either (i) Defendants from seeking to enforce any rights they may have under any applicable insurance policies or (ii) any right of indemnification or contribution that Defendants may have under contract or otherwise. The Bar Order shall be consistent with, and apply to the full extent of, the PSLRA.

9.6    The Released Parties are intended third-party beneficiaries of the Releases contained in this Stipulation, and such Releases may be enforced by such Persons.

9.7    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation, pursuant to their terms.

9.8    All of the Exhibits to the Stipulation as well as the Supplemental Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

9.9    This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and that all Parties have contributed substantially and materially to the preparation of this Stipulation. The canon that ambiguities shall be construed against the drafter, or against the party that caused the ambiguity, shall not be applied.

9.10    If any disputes arise out of the finalization of the Settlement documentation or the Settlement itself prior to Lead Plaintiff filing a motion for preliminary approval of the Settlement, those disputes (after good faith attempts at resolution between the Parties) will be resolved by Mediator Meyer, first by way of expedited telephonic mediation and, if unsuccessful, then by final, binding, non-appealable resolution by the Mediator. The Parties shall each bear their own costs, expenses, and attorneys' fees in connection with any mediation or other resolution proceedings set forth herein.

9.11    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

9.12    Any Party may terminate this Stipulation if any court modifies a material term of the Stipulation or of the proposed Judgment (including, for example, the definition of the Settlement Class), in which case the provisions of ¶8.5 shall apply. Any such termination right shall be exercised, if at all, only by written notice to the other Parties within 10 days after the exercising Party receives written notice of any such ruling.  Notwithstanding the foregoing, it shall not be a basis to terminate the Settlement if the Court modifies any proposed Plan of Allocation or criteria for allocation of the Net Settlement Fund amongst Authorized Claimants, or the Plan of Allocation is modified on appeal. Nor shall it be a basis to terminate the Stipulation if any court disapproves of or modifies the terms of this Stipulation with respect to attorneys' fees or expenses or the distribution of the Net Settlement Fund. Notwithstanding any such modification of the terms or Plan of Allocation or the Stipulation with respect to attorneys' fees or expenses, Defendants and Defendants' insurers shall be entitled to all benefits of the Settlement and shall not, under any circumstances, be called upon to contribute additional funds in addition to the Settlement Fund.

9.13    The Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Parties hereto and no representations, warranties, or inducements have been made to any Party concerning the Stipulation or its Exhibits or the Supplemental Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Party shall bear its own costs and attorneys' fees.

9.14    Lead Counsel, on behalf of the Settlement Class, is expressly authorized by Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class that it deems appropriate.

9.15    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Party hereto hereby warrants that such Person has the full authority to do so.

9.16    The Stipulation may be executed in one or more counterparts, including by signature transmitted by email in pdf format.  Signatures sent by facsimile or electronically shall be deemed originals.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

9.17    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

9.18    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.19    The Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the Parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to any choice-of-law principles that would result in applying substantive laws other than those of the State of California.

9.20    Pending approval of the Court of this Stipulation and its Exhibits, all non-settlement-related proceedings in this Litigation shall be stayed and all Members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Defendants and their Related Parties.

9.21    No waiver of any term or provision of this Stipulation, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by or on behalf of all Parties or their respective successors-in-interest. No waiver of any term or provision of this Stipulation, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

9.22    All notices, requests, demands, claims, and other communications hereunder shall

be in writing and shall be deemed duly given: (i) when delivered personally to the recipient or delivered to the recipient by e-mail; (ii) one (1) business day after being sent to the recipient by UPS for overnight delivery (charges prepaid); or (iii) five (5) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Lead Plaintiff or to Lead Counsel:

> Joseph A. Fonti
> George N. Bauer
> Bleichmar Fonti & Auld LLP
> 300 Park Avenue, Suite 1301
> New York, New York  10022
> jfonti@bfalaw.com
> gbauer@bfalaw.com

If to Defendants or Defendants' Counsel:

> James N. Kramer
> Orrick, Herrington & Sutcliffe LLP
> 405 Howard Street
> San Francisco, CA 94105
> jkramer@orrick.com

> - and -

> James C. Rutten
> Achyut J. Phadke
> Munger, Tolles & Olson LLP
> 350 South Grand Avenue, 50th Floor
> Los Angeles, CA 90071-3426
> james.rutten@mto.com
> achyut.phadke@mto.com

9.23    None of the settlement terms or the fact of the settlement will be publicly disclosed by Lead Plaintiff or Lead Counsel prior to the filing of a motion for preliminary approval of the Settlement, provided, however, that if the Settlement is publicly disclosed by Defendants prior to the filing of the motion for preliminary approval, Lead Plaintiff and Lead Counsel reserve the right to address the disclosure and/or comments related thereto.

9.24    Unless otherwise provided, the Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated April 30, 2026.

By: */s/ Joseph A. Fonti*
**BLEICHMAR FONTI & AULD LLP**
Joseph A. Fonti (*pro hac vice*)
jfonti@bfalaw.com
Nancy A. Kulesa (*pro hac vice*)
nkulesa@bfalaw.com
George N. Bauer (*pro hac vice*)
gbauer@bfalaw.com
Benjamin Burry (*pro hac vice*)
bburry@bfalaw.com
Thayne Stoddard (*pro hac vice*)
tstoddard@bfalaw.com
300 Park Avenue, Suite 1301
New York, New York 10022
Tel: (212) 789-1340
Fax: (212) 205-3960

– and –

Adam C. McCall (SBN 302130)
amccall@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020

*Counsel for Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago and Lead Counsel for the Putative Class*

John A. Kehoe (*pro hac vice*)
**KEHOE LAW FIRM, P.C.**
41 Madison Avenue, 31st Floor
New York, NY 10010
Telephone: (215) 792-6676
jkehoe@kehoelawfirm.com

*Additional Counsel for Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
M. TODD SCOTT (SBN 226885)
tscott@orrick.com
ARIEL B. WINAWER (SBN 317821)
awinawer@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

*Attorneys for Defendants*
*TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN*

JAMES C. RUTTEN (SBN 201791)
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
james.rutten@mto.com

*Attorneys for Defendants*
*TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN*

## **ATTESTATION**

I, George N. Bauer, am the ECF User whose ID and password are being used to file this Stipulation of Settlement and the accompanying exhibits.  In compliance with Local Civil Rule 5-1(i)(3), I hereby attest that James N. Kramer and James C. Rutten have concurred with this filing.

*/s/  George N. Bauer*
George N. Bauer

STIPULATION OF SETTLEMENT