# STIPULATION EXHIBIT A-2

**Long-Form Notice**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ANTHONY JOSEPH PETERS, Individually and on Behalf of All Others Similarly Situated, | Case No.  5:22-cv-08168-EKL |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| TWIST BIOSCIENCE CORPORATION, EMILY M. LEPROUST, and JAMES M. THORBURN, | |
| Defendants. | |

**LONG-FORM NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION**

**EXHIBIT A-2**

*IF YOU PURCHASED OR OTHERWISE ACQUIRED TWIST BIOSCIENCE CORPORATION COMMON STOCK BETWEEN DECEMBER 20, 2018 AND NOVEMBER 15, 2022, BOTH INCLUSIVE, YOU MAY BE ENTITLED TO RECEIVE A PAYMENT FROM A CLASS ACTION SETTLEMENT.*[1]

A federal court authorized this Long-Form Notice.  This is not a solicitation from a lawyer.

**PLEASE READ THIS NOTICE CAREFULLY.  This Long-Form Notice explains important rights you may have and steps you must take if you wish to participate in the Settlement of this class action, wish to object, or wish to be excluded from the Settlement Class.  If you are a Member of the Settlement Class, your legal rights will be affected whether or not you act.**

**Securities and Time Period**:  This Settlement relates to Twist Bioscience Corporation ("Twist") common stock purchased or acquired (i) in the secondary offering of Twist common stock that Twist completed on December 2, 2020, and in which Twist offered 3,136,362 shares of Twist common stock (including 409,090 shares sold pursuant to the exercise in full by the underwriters of the offering of their option to purchase additional shares) at $110.00 per share (the "December 2020 Offering"); and/or (ii) between December 20, 2018 and November 15, 2022, both inclusive.

**Settlement Fund**: The settlement fund to be allocated among Settlement Class members, after deduction of certain amounts, is $17,050,000.00 in cash.  Your recovery will depend in part on the type and amount of your transactions in Twist common stock purchased or acquired between December 20, 2018 and November 15, 2022 (both inclusive) and the timing and prices of your purchases, acquisitions, and any sales.  If claims are submitted for 100% of the eligible shares of

---

[1] Any capitalized terms used in this Long-Form Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation of Settlement dated April 30, 2026 (the "Stipulation"), which is available on the website established for the Settlement at www.TwistSecuritiesSettlement.com.

Twist common stock, based on Plaintiff's expert's estimate of the number of shares of Twist common stock eligible to recover under the Settlement, the estimated average recovery is approximately $0.31 per share of Twist common stock, before deduction of Court-approved fees, expenses, and costs. **Settlement Class Members should note, however, that these are only estimates.** The actual amount per share you could receive will depend on a number of factors, including those explained in the Plan of Allocation contained below. The Parties do not agree on the average amount per share of Twist common stock that would be recoverable if Plaintiff were to prevail in the Action. Among other things, Defendants deny that Plaintiff has asserted any valid claims and expressly deny all allegations of fault, liability, wrongdoing, or damages whatsoever.

**Settlement Class**: The Court has conditionally certified the following Settlement Class:

> All Persons who purchased or otherwise acquired Twist common stock (i) in the December 2020 Offering pursuant to the 2020 Registration Statement, and were damaged thereby; and/or (ii) between December 20, 2018 and November 15, 2022, both inclusive, and were damaged thereby.

Excluded from the Settlement Class are: (i) Defendants and any affiliates or subsidiaries thereof; (ii) present and former officers and directors of Twist and their immediate family members (as defined in Item 404 of SEC Regulation S-K, 17 C.F.R. § 229.404, Instructions (1)(a)(iii) & (1)(b)(ii)); (iii) Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; (iv) any entity in which any Defendant had or has had a controlling interest; (v) Twist's employee retirement and benefit plan(s); and (vi) the legal representatives, heirs, estates, agents, successors, or assigns of any person or entity described in the preceding five categories. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the requirements set by the Court, which are set forth in this Long-Form Notice of Pendency and Proposed Settlement of Class Action.

**Reasons for Settlement**:  The Settlement resolves claims by Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago that have been asserted on behalf of the Settlement Class against Defendants Twist Bioscience Corporation, Emily M. Leproust, and James M. Thorburn. The Settlement avoids the costs and risks associated with continued litigation, including the danger of no recovery, and provides a substantial benefit to the Settlement Class now.  It also releases Defendants and their Related Parties (as defined below) from liability.  Defendants are entering into the Settlement to avoid and eliminate the burden, expense, uncertainty, and risk of further litigation.  Accordingly, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

**Statement on Potential Outcome If the Case Had Not Settled**:  The Settlement must be compared to the risk of no recovery after contested motions, trial, and likely appeals.  Litigation is a risky proposition and the Settlement Class might not have prevailed.  The claims in this case involve numerous complex legal and factual issues that would require extensive and costly expert testimony.  The parties disagree on both liability and damages.  Among the many key issues about which the two sides do not agree are: (1) whether Defendants made any statements that were materially false or misleading and otherwise actionable under the federal securities laws; (2) whether any such statements were made with the requisite level of intent (if any); (3) whether the alleged misstatements influenced the trading prices of Twist common stock during the relevant period; and (4) the amount of damages (if any) that could be recovered at trial, including the average amount of damages per share that would be recoverable if Plaintiff prevailed on each claim alleged.  Defendants have denied and continue to deny any and all allegations of wrongdoing or fault asserted in the Litigation, deny that they have committed any act or omission giving rise to

- 3 -

any liability or violation of law, and deny that Plaintiff and the Settlement Class have suffered any loss attributable to Defendants' actions.

**Attorneys' Fees and Expenses**:  Court-appointed Lead Counsel, Bleichmar, Fonti & Auld LLP, have not received any payment for their work investigating the facts, conducting this Litigation, and negotiating the Settlement on behalf of Plaintiff and the Settlement Class.  Lead Counsel will ask the Court for attorneys' fees not to exceed 25% of the Settlement Amount, or $4,262,500, and for expenses in an amount not to exceed approximately $850,000, plus interest that accrues on these amounts at the same rate as earned by the Settlement Fund.  In addition, Plaintiff may request an award of no more than $10,000 pursuant to 15 U.S.C. § 77z-1(a)(4) and/or 15 U.S.C. § 78u-4(a)(4) in connection with its representation of the Settlement Class.  If the Court approves Lead Counsel's Fee and Expense Application in full, and if claims are submitted for 100% of the Twist common stock estimated to be eligible to recover under the Settlement, the average amount of fees and expenses is estimated to be approximately $0.09 per share of Twist common stock.  A copy of the Fee and Expense Application will be posted on www.TwistSecuritiesSettlement.com after it has been filed with the Court. **Please note that these amounts are only estimates.**

**Claims Administrator:**
Twist Securities Settlement
c/o Simpluris, Inc.
PO Box 25199
Santa Ana, CA 92799
Telephone: 1-833-386-6546
info@TwistSecuritiesSettlement.com

**Plaintiff's Counsel:**
George N. Bauer, Esq.
Bleichmar Fonti & Auld LLP
300 Park Avenue, Suite 1301
New York, NY 10022
Telephone: (888) 879-9418
twistsettlement@bfalaw.com

**YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT IF YOU ARE A VALID MEMBER OF THE SETTLEMENT CLASS**

| SUBMIT A CLAIM | This is the only way to be eligible to receive a payment.  If you wish to remain in the Settlement Class and receive a payment pursuant to the Settlement, you must submit a Proof of Claim.  **Proof of Claim** |

|  | and Release forms ("Proof of Claim") are available at www.TwistSecuritiesSettlement.com and must be postmarked (if mailed) or received (if submitted online) on or before _____, 2026. Remaining in the Settlement Class and submitting a Proof of Claim means that you will be bound by the Settlement as approved by the Court and you will give up any "Released Claims" (as defined below) that you have against the Defendants and their "Related Parties" (as defined below). You also will be bound by any other judgments or orders entered by the Court in the Litigation. |
|---|---|
| **EXCLUDE YOURSELF** | If you do not wish to remain in the Settlement Class, you can exclude yourself.  If you do so, you will not be eligible to receive any payment pursuant to the Settlement, but you will not be bound by the Settlement.  This is the only option that potentially allows you to participate in another lawsuit against the Defendants or their Related Parties relating to the Released Claims being released in this case. Should you elect to exclude yourself from the Settlement Class, you should understand that Defendants and their Related Parties will have the right to assert any and all defenses they may have to any claims that you may seek to assert, including, without limitation, the defense that any such claims are untimely under the applicable statute of repose.  **Exclusions must be received on or before _____, 2026.** |
| **OBJECT** | If you do not like some aspect of the Settlement, the Plan of Allocation and/or the request for attorneys' fees and expenses, you may write to the Court to make an objection.  **Objections should be sent only to the Court and must be received by the Court on or before _____, 2026.** |
| **GO TO A HEARING ON _____, 2026, at _____ _.m.** | **Submitting a written objection and notice of intention to appear by _____, 2026 allows you to speak in Court about the fairness of the Settlement, the Plan of Allocation and/or the request for attorneys' fees and expenses**.  If you submit a written objection, you may (but you do not have to) attend the hearing and speak to the Court about your objection.[2] |
| **DO NOTHING** | **If you do nothing, you will not be eligible to receive any payment pursuant to the Settlement.**  You will, however, remain a Member of the Settlement Class, which means that you will be bound by the Settlement as approved by the Court and you will give up any Released Claims that you have against the Defendants and their Related Parties. You also will be bound by any other judgments or orders entered by the Court in the Litigation. |

---

[2] The Court may change this date to a later date and/or time without further written notice to you.  However, any different date or time will be posted on the Settlement website: www.TwistSecuritiesSettlement.com.

- These rights and options – *and the deadlines to exercise them* – are explained in this Long-Form Notice.

- The Court in charge of this case must decide whether to approve the Settlement.  Payments to Authorized Claimants (described below) will be made if the Court approves the Settlement, after Proofs of Claim are processed and, if there are any appeals, after appeals are resolved.  Please be patient.

## BASIC INFORMATION

### 1.    Why Did I Receive This Long-Form Notice?

The Court authorized that this Long-Form Notice be disseminated because you or someone in your family has been identified as a potential Settlement Class Member who may have purchased or acquired shares of Twist common stock during the Class Period.  The Court directed that this Long-Form Notice be made available to Settlement Class Members to explain the Litigation, Settlement Class Members' legal rights, what benefits are available, who is eligible for them, and how to get them.  The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Litigation, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement and the Plan of Allocation (or some other plan of allocation), the Claims Administrator will make payments to eligible Settlement Class Members pursuant to the Settlement after any objections and appeals are resolved.

**Receipt of this Long-Form Notice does not mean that you are a Member of the Settlement Class or that you will be entitled to receive a payment.  Neither the Parties nor the Court have made any such determination, and do not have access to your individual investment information.  If you wish to be eligible for a payment, you are required to establish that you are a Member of the Settlement Class and otherwise eligible by timely submitting the Proof of Claim available at www.TwistSecuritiesSettlement.com with all requested information that will be used to determine your eligibility.**

The Court in charge of the case is the United States District Court for the Northern District of California, San Jose Division, and the case is known as *Peters v. Twist Bioscience Corp., et al.*, Case No. 5:22-cv-08168-EKL (N.D. Cal.).   The entity that sued, the Policemen's Annuity and Benefit Fund of Chicago, is called the Plaintiff.   Twist Bioscience Corporation and the individuals that the Plaintiff sued, Emily M. Leproust and James M. Thorburn, are called the Defendants.

**2.     What Is This Lawsuit About?**

This case alleges violations of §§11 and 15 of the Securities Act of 1933 (the "Securities Act") and §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of a class consisting of all Persons and entities who purchased or otherwise acquired Twist common stock (i) in the December 2020 Offering pursuant to the 2020 Registration Statement, and were damaged thereby; and/or (ii) between December 20, 2018 and November 15, 2022, both inclusive, and were damaged thereby.   Among other things, this case alleges that the Defendants made false and misleading statements concerning Twist's production process, product quality, and accounting.   Plaintiff contends that these statements caused substantial damages to the Settlement Class.   The Parties disagree on liability and damages.

Defendants have expressly denied and continue to deny any wrongdoing or liability against them arising out of any statements alleged, or that could have been alleged, in the Litigation.

**3.     What Has Happened So Far in This Case?**

The Litigation is currently pending in the United States District Court for the Northern District of California, San Jose Division, before Judge Eumi K. Lee (the "Court").   The initial complaint in this Litigation was filed on December 12, 2022 (the "Complaint").   (ECF No. 1.)  On July 28, 2023, the Court appointed the Policemen's Annuity and Benefit Fund of Chicago as Lead Plaintiff and Bleichmar Fonti & Auld LLP as Lead Counsel.   (ECF No. 70.)

Lead Plaintiff filed the operative Amended Complaint (the "Amended Complaint") on October 11, 2023. (ECF No. 83.)  The Amended Complaint alleges violations of Sections 11 and 15 of the Securities Act, and Sections 10(b) and 20(a) of the Exchange Act.  Defendants filed a motion to dismiss the Amended Complaint on December 6, 2023.  (ECF No. 86.)  On September 3, 2025, after extensive briefing and oral argument, the Court granted in part and denied in part Defendants' motion to dismiss, allowing claims under Sections 11 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act to proceed against certain Defendants arising from certain alleged statements.  (ECF No. 117.)  Defendants filed their answer on October 21, 2025, which denied all claims alleged in the Amended Complaint and asserted multiple defenses thereto.  (ECF No. 122.)

Since then, the parties have vigorously litigated this Litigation.  Plaintiff, Defendants and third parties, including Twist's former employees and Twist's auditors, produced documents totaling more than 207,000 pages.  The Parties also completed depositions of three former employee witnesses and were preparing to complete the depositions of additional witnesses when they agreed to settle the Litigation.

On March 13, 2026, Plaintiff filed a motion seeking class certification, with an accompanying expert report.  (ECF No. 152-7.)  The Parties were preparing to complete related depositions when they agreed to settle the Litigation.

The Parties engaged in a confidential full-day mediation before mediator Robert A. Meyer of JAMS on March 31, 2026.  Prior to that confidential mediation, the Parties exchanged confidential mediation statements with exhibits.  Despite good faith efforts to resolve the Litigation during the mediation, the Parties were unable to reach agreement.  At the conclusion of the March 31, 2026 mediation, Mediator Meyer made a formal mediator's proposal that the case settle for

$17.05 million.  The Parties accepted the proposal that day, executed a settlement term sheet, and negotiated the Stipulation of Settlement.

4.    **Why Is This a Class Action?**

In a class action, a class representative (in this case, the Court-appointed Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago) sues on behalf of people who have similar claims.  Here, all these people are called the Settlement Class or Settlement Class Members.  One court resolves the issues for all class members at the same time, except for those who timely and validly exclude themselves from the class (the process for which is described more fully in Question 14 below).  Judge Eumi K. Lee is presiding over this class action.

5.    **Why Is There a Settlement?**

The Court did not decide in favor of Plaintiff or Defendants.  Instead, both sides agreed to a settlement.  That way they avoid the cost and uncertainty of further litigation and a trial, and eligible Settlement Class Members who submit valid claims will receive compensation.  Particularly in light of the possibility that continued litigation could result in no greater recovery than the Settlement—or no recovery at all—Plaintiff and Plaintiff's Counsel believe the settlement is in the best interest of all Settlement Class Members.

Defendants have denied and continue to deny each and all of the claims asserted against them in the Amended Complaint, and deny that the Settlement Class was harmed or suffered any damages as a result of the conduct alleged.  Defendants have agreed to the Settlement solely to eliminate the burden, expense, uncertainty, and risk of continued litigation.  Accordingly, the Settlement may not be construed as, and is not, an admission of any wrongdoing by Defendants.

**WHO IS IN THE SETTLEMENT**

To see if you will receive money from this Settlement, you first have to determine if you are a Settlement Class Member.

- 9 -

**6.      How Do I Know if I Am Part of the Settlement?**

The Settlement Class consists of all Persons who purchased or otherwise acquired Twist common stock (a) in the December 2020 Offering pursuant to the 2020 Registration Statement, and were damaged thereby; and/or (b) during the Class Period of December 20, 2018 through November 15, 2022, both inclusive, and were damaged thereby.  Certain Persons and entities are excluded from this definition, as described below.

**7.      What Are the Exceptions to Being Included in the Settlement?**

Excluded from the Settlement Class are:  (i) Defendants and any affiliates or subsidiaries thereof; (ii) present and former officers and directors of Twist and their immediate family members (as defined in Item 404 of SEC Regulation S-K, 17 C.F.R. § 229.404, Instructions (1)(a)(iii) & (1)(b)(ii)); (iii) Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; (iv) any entity in which any Defendant had or has had a controlling interest; (v) Twist's employee retirement and benefit plan(s); and (vi) the legal representatives, heirs, estates, agents, successors, or assigns of any person or entity described in the preceding five categories.  Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the requirements set by the Court, which are set forth in this Long-Form Notice.

**8.      What if I'm Still Not Sure if I Am Included?**

If you are still not sure whether you are included, you can ask for free help.  You can contact the Claims Administrator at www.TwistSecuritiesSettlement.com or by phone at 1-833-386-6546, or you can fill out and return the Proof of Claim described in Question 11, to see if you qualify.

**PLEASE DO NOT CALL THE COURT, DEFENDANTS, OR DEFENDANTS'
COUNSEL WITH QUESTIONS ABOUT THE SETTLEMENT**

**THE SETTLEMENT BENEFITS – WHAT YOU GET**

### 9.    What Does the Settlement Provide?

Defendants have agreed to settle the litigation for a total of $17,050,000.00 in cash.  This amount, plus any interest earned thereon, constitutes the Settlement Fund.  The balance of this fund after payment of (i) Court-approved attorneys' fees and expenses, (ii) any award to Plaintiff, (iii) the costs of claims administration, including the costs of distributing the Notice and the cost of publishing notice, and (iv) Taxes and Tax Expenses, is the "Net Settlement Fund."  The Net Settlement Fund will be divided among all eligible Settlement Class Members who send in timely and valid Proofs of Claim in accordance with the Plan of Allocation described below.

### 10.    How Much Will My Payment Be?

Your payment (if any) will depend on several things, including the total dollar amount of claims represented by the valid Proofs of Claim that Settlement Class Members submit; the number of shares of Twist common stock you purchased or acquired; how much you paid for those shares; when you purchased or acquired them; and if you sold your shares of Twist common stock, when and for how much.  The Claims Administrator will apply the Plan of Allocation (appended below as Appendix A) to calculate the amount of your Recognized Claim, and your payment (if any) will be a portion of the Net Settlement Fund equal to your Recognized Claim divided by the total of all Authorized Claimants' Recognized Claims.

### 11.    How Will I Obtain a Payment?

To qualify for payment, you must be an eligible Settlement Class Member, send in a timely and valid Proof of Claim, and properly document your claim as requested in the Proof of Claim. A Proof of Claim may be downloaded at **www.TwistSecuritiesSettlement.com** and is also

available in paper form by contacting the Claims Administrator at **www.TwistSecuritiesSettlement.com**, by phone at 1-833-386-6546 , or at *Twist Securities Settlement*, c/o Simpluris, Inc., PO Box 25199, Santa Ana, CA 92799.  Read the instructions carefully, fill out the form, include all documents the form asks for, sign it, and mail it such that it is **postmarked no later than _____, 2026, or submit it online by no later than _____, 2026**.    Proofs of Claim may be completed and submitted online at www.TwistSecuritiesSettlement.com.

### 12.    When Will I Receive My Payment?

The Court will hold a hearing on _____**, 2026, at __:___ _.m.**, to decide whether to approve the Settlement.  If the Court approves the Settlement, there may be appeals.  It is always uncertain whether these appeals can be resolved and resolving them can take time.  It also takes time for all the Proofs of Claim to be processed.  Please be patient.

### 13.    What Am I Giving Up to Receive a Payment or Stay in the Settlement Class?

Unless you timely and validly exclude yourself, you are a Settlement Class Member, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against the Defendants or any of their Related Parties about the Released Claims, as defined below.  In short, you will be barred from suing the Defendants for any of the conduct alleged in this case.  It also means that all of the Court's orders, including a judgment ("Judgment") dismissing the Litigation with prejudice on the merits, will apply to you and legally bind you and you will release all Released Claims in this case against the Defendants and their Related Parties.

"**Released Claims**" means any and all claims (including Unknown Claims as defined below), rights, demands, losses, suits, debts, obligations, damages, judgments, controversies, liabilities, or causes of action of every nature and description whatsoever, in law, equity, or

otherwise (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether asserted or unasserted, accrued or unaccrued, fixed or contingent, whether arising under federal, state, local, common, or foreign law, or any other law, rule, or regulation, whether class or individual in nature, to the fullest extent that the law permits their release in this Litigation against any of the Defendants or their Related Parties, which arise out of, are based on, or relate in any way, directly or indirectly, to both: (i) the allegations, acts, transactions, facts, events, matters, occurrences, disclosures, statements, filings, events, representations, or omissions involved, set forth, alleged, or referred to in the Complaint, Amended Complaint, or the Litigation, or which could have been alleged in the Litigation; and (ii) the purchase, sale, holding, or other acquisition, disposition, or holding of Twist common stock during the Class Period.  Released Claims also include any and all claims (including Unknown Claims as defined below), rights, demands, losses, suits, debts, obligations, damages, judgments, controversies, liabilities, or causes of action of every nature and description whatsoever, in law, equity, or otherwise (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether asserted or unasserted, accrued or unaccrued, fixed or contingent, whether arising under federal, state, local, common, or foreign law, or any other law, rule, or regulation, whether class or individual in nature, which arise out of, are based on, or relate to the institution, prosecution, or settlement of the Litigation or the Released Claims against Defendants or their Related Parties.  For the avoidance of doubt, Released Claims do not include any claims:  (i) that may be asserted derivatively against any Defendant, including claims asserted in *Shumacher v. Leproust, et al.*, No. 1:23-cv-01048-UNA (D. Del.) and any other pending derivative actions brought on behalf of Twist; (ii) that any Defendant, and/or their Related Parties, may have against

any other Defendant and/or their Related Parties; (iii) any claims relating to the enforcement of the Settlement; and/or (iv) any claims of any Person that submits a request for exclusion from the Settlement Class that is accepted by the Court.

"**Unknown Claims**" means collectively any and all Released Claims of every nature and description that any Party, any Party's Related Parties, or any Settlement Class Member does not know or suspect to exist in his, her, or its favor which, if known by such Person at the time of the Releases of the Released Parties, would or might have affected such Person's settlement or decisions with respect to the Settlement (including, but not limited to, the Releases of the Released Parties or the decision not to object to or opt out of this Settlement).

With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Parties (for and on behalf of themselves and their respective Related Parties) shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code § 1542 and any and all provisions, rights, and benefits conferred by the law of any state or territory or other jurisdiction or principle of common law or foreign law that is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party**.

The Parties, their respective Related Parties, and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she, they, or it now knows or believes to be true with respect to the subject matter of the Released Claims. Nevertheless, upon the Effective Date, the Parties (for and on behalf of themselves and their respective Related Parties) nevertheless shall expressly fully, finally, and forever settle and release, and each Settlement Class

- 14 -

Member, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Parties (on behalf of themselves and their respective Related Parties) acknowledge, and Settlement Class Members shall be deemed by operation of law (including by operation of the Judgment) to have acknowledged, that the foregoing waivers were separately bargained for and are a key element of the Settlement.  The Parties acknowledge and agree that they have had the opportunity to consult with counsel of their choice about the import of the foregoing waivers, and that the Parties nevertheless freely and voluntarily agree and assent to the waivers herein.  **You are hereby advised to consult with counsel of your choice about the import of the foregoing waivers.**

"**Released Parties**" means each and all of Defendants, each and all of their respective Related Parties, Plaintiff, Settlement Class Members, and Plaintiff's Counsel.

"**Defendants**" means Twist Bioscience Corporation, Emily M. Leproust, and James M. Thorburn.

"**Related Parties**" means each of a Party's past, present or future directors, officers, employees, partners, insurers, co-insurers, reinsurers, principals, controlling shareholders, members, agents, administrators, attorneys, accountants, auditors, bankers, underwriters, advisors (including financial or investment advisors), consultants, commercial bankers, entities providing fairness opinions, personal or legal representatives, predecessors, successors, direct and/or indirect

parents, subsidiaries, divisions, joint ventures, general or limited partnerships, limited liability partnerships, limited liability companies, members, executors, trustees, trusts, affiliates, assigns and assignees, spouses, heirs, estates, related or affiliated entities, any entity in which the Party has a majority interest, any member of a Defendant's immediate family, any trust of which a Party is the settlor or which is for the benefit of a Party and/or any member of a Defendant's immediate family, and any entity in which a Party and/or any member of a Defendant's immediate family has or had a majority interest (directly or indirectly), and the Underwriters.

"**Plaintiff**" means Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago.

"**Plaintiff's Counsel**" means Lead Counsel Bleichmar Fonti & Auld LLP ("Lead Counsel"), and Kehoe Law Firm P.C.

The Judgment will also provide that upon the Effective Date, without any further action by anyone, Plaintiff (for and on behalf of itself and its Related Parties) and the Settlement Class Members, shall be deemed to have, and by operation of law and the Judgment shall have, fully, finally, and forever released, relinquished, compromised, settled, resolved, waived, discharged, and dismissed on the merits with prejudice all Released Claims (including, without limitation, Unknown Claims) against Defendants and their Related Parties (including Defendants' Counsel). All such Releases shall be effective whether or not any Settlement Class Member executes and delivers a Proof of Claim or participates in the Settlement Fund.

Moreover, upon the Effective Date, Plaintiff, each of Plaintiff's Related Parties, each of the Settlement Class Members, and anyone claiming through, under, or on behalf of any of them, are and shall be forever barred and enjoined from commencing, instituting, intervening in, prosecuting, or continuing to prosecute any action or proceeding in any court of law or equity,

arbitration tribunal, administrative forum, or other forum of any kind, asserting any of the Released Claims against any of the Defendants and/or their Related Parties, and each of them.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to participate in this Settlement, and you want to keep the right to sue or continue to sue the Defendants or any of their Related Parties on your own for the Released Claims in this case, then you must take steps to get out of the Settlement Class.  This is called excluding yourself or is sometimes referred to as opting out of the Settlement Class.

**If you are requesting exclusion because you want to bring your own lawsuit based on the matters alleged in this Litigation, you may want to consult an attorney and discuss whether any individual claim that you may wish to pursue would be time-barred by the applicable statute of limitation or repose.**

**If you are excluded from the Settlement Class and pursue your own individual action, you may also have to produce information and/or documents upon the Defendants' request (a process known as "discovery"), which could include, but not be limited to, providing testimony under oath.**

14.    **How Do I Get Out of the Settlement Class?**

To exclude yourself from the Settlement Class, you must submit a written request for exclusion to the Claims Administrator online at www.TwistSecuritiesSettlement.com or by mail to the following address:

*Twist Securities Settlement*
EXCLUSIONS
c/o Simpluris, Inc.
PO Box 25199
Santa Ana, CA 92799

You cannot exclude yourself by telephone or email.  Your request for exclusion must state that you want to be excluded from *Peters v. Twist Bioscience Corp.*, et al., Case No. 5:22-cv-

08168-EKL (N.D. Cal.), and must: (i) include the name, address, and telephone number for you or the entity seeking exclusion; (ii) state that you or the entity wish to be "excluded from the Settlement Class" in this Litigation; (iii) include proof (such as stockbroker confirmation slips, stockbroker statements, or other documents) adequately evidencing the date(s), price(s), and number(s) of all shares of Twist common stock purchased and/or sold during the Class Period; and (iv) be signed by you or the entity requesting exclusion or its authorized representative (accompanied by proof of authorization). No request for exclusion will be considered valid unless it is timely and provides all of the information described above.

**Your exclusion request must be submitted online or received by the Claims Administrator no later than _____, 2026.**

Do not submit a request for exclusion as well as an objection and/or Proof of Claim. If you do so, your objection and/or Proof of Claim will be disregarded, and you will be excluded from the Settlement Class.

**15.    If I Do Not Exclude Myself, Can I Sue the Defendants for the Same Thing Later?**

No. Unless you timely and validly exclude yourself, you give up any right to sue the Defendants and their Related Parties for the Released Claims in this Settlement. If you have a pending lawsuit against any of these parties, including the Defendants, speak to your lawyer in that case immediately. Remember, the exclusion deadline is _____, 2026.

**16.    If I Exclude Myself, Can I Receive Money From This Settlement?**

No. If you exclude yourself, you are not a Settlement Class Member and cannot submit a Proof of Claim.

- 18 -

**THE LAWYERS REPRESENTING YOU**

**17.    Do I Have a Lawyer in This Case?**

The Court appointed the law firm of Bleichmar Fonti & Auld LLP to represent you and other Settlement Class Members.  These lawyers are called Lead Counsel.  You will not be directly charged for these lawyers.  They will be paid from the Settlement Fund to the extent the Court approves their application for fees and expenses.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**18.    How Will the Lawyers Be Paid?**

Lead Counsel will ask the Court for attorneys' fees not to exceed 25% of the Settlement Amount, or $4,262,500, and for expenses in an amount not to exceed approximately $850,000, plus interest that is incurred on these amounts at the same rate as earned by the Settlement Fund.  Such sums as may be approved by the Court will be paid from the Settlement Fund.

The attorneys' fees and expenses requested will be the only payment to Plaintiff's Counsel for their efforts in achieving this Settlement and for their risk in undertaking this representation on a wholly contingent basis.  Plaintiff's Counsel has committed a substantial amount of time and significant expenses in litigating this case for the benefit of the Settlement Class.  To date, Plaintiff's Counsel have not been paid for their services in conducting this Litigation on behalf of Plaintiff and the Settlement Class, nor for their expenses.  The fees requested will compensate counsel for their work in obtaining the Settlement Fund for the benefit of the Settlement Class.

**OBJECTING TO THE SETTLEMENT**

You can tell the Court that you do not agree with the Settlement or some part of it.

**19.    How Do I Tell the Court That I Do Not Like the Settlement?**

If you are a Settlement Class Member, you can object to the Settlement if you do not like any part of it, or any part of the Plan of Allocation, the request for attorneys' fees or expenses, or

- 19 -

the request for an award to Lead Plaintiff. You can state the reasons why you think the Court should not approve it. The Court will consider your views.

To object, you must send a letter saying that you object to the Settlement, to the Plan of Allocation, to the request for attorneys' fees and expenses, to any request for an award to Lead Plaintiff, or to aspects of any of the foregoing, in *Peters v. Twist Bioscience Corp., et al.*, Case No. 5:22-cv-08168-EKL (N.D. Cal.). Your letter must (1) include the objector's name, address, and telephone number; (2) provide documentation establishing the objector's membership in the Settlement Class, including documents showing the type and number of shares of Twist common stock purchased, acquired, and sold during the Class Period, as well as the dates and prices of each such purchase, acquisition, and sale; and (3) contain a statement of reasons for the objection, including whether it applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class. The requirement to submit a written objection that satisfies these requirements may be excused upon a showing of good cause. The Court will require only substantial compliance with the requirements for submitting an objection. Unless otherwise ordered by the Court, any Settlement Class Member who does not timely object in the manner described in this Notice will be deemed to have waived any objection and will be foreclosed from making any objection to the proposed Settlement, the Plan of Allocation, the request for attorneys' fees and expenses, and the requested award to Plaintiff.

**Any objection should be sent only to the Court** at the address below and ***must*** be mailed or delivered such that it is ***received*** by the Court (not simply postmarked) ***no later than*** _____ *, 2026*:

- 20 -

*Court:*

> Clerk of the Court
> UNITED STATES DISTRICT COURT
> NORTHERN DISTRICT OF CALIFORNIA
> SAN JOSE DIVISION
> Robert F. Peckham Federal Building &
> United States Courthouse
> 280 South 1st Street, Room 2112
> San Jose, California 95113

Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to any aspect of the proposed Settlement, the proposed Plan of Allocation, and any request for an award of attorneys' fees and expenses and an award to Plaintiff. Settlement Class Members do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

**20.    What's the Difference Between Objecting and Excluding?**

Objecting is simply telling the Court that you do not like something about the Settlement. You can object **only if** you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

**THE COURT'S FINAL APPROVAL HEARING**

The Court will hold a hearing to decide whether to approve the Settlement. If you have submitted a timely written objection, you may attend and you may ask to speak, but you do not have to.

**21.    When and Where Will the Court Decide Whether to Approve the Settlement?**

The Court will hold a Final Approval Hearing at __:__ _.m., on _____, 2026*, in Courtroom 7, 4th Floor, Robert F. Peckham Federal Building & United States Courthouse, 280

- 21 -

South 1st Street, San Jose, CA 95113.  At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate, consider any objections, and listen to people who have asked to speak at the hearing.[3]  The Court may move the date or time of the Final Approval Hearing to a later date and/or time without further written notice to you.  If the date or time of the Final Approval Hearing is changed, the new date and/or time will be posted at www.TwistSecuritiesSettlement.com.

### 22.    Do I Have to Come to the Hearing?

No.  Lead Counsel will answer any questions the Court may have, and Settlement Class Members do not need to appear at the hearing or take any other action to indicate their approval. If you send an objection or statement in support of the Settlement, you are not required to go to Court to discuss it; you may pay your own lawyer to attend, or attend at your own expense, but you are not required to do so.  Please Note: The date and time of the Settlement Hearing may change without further written notice to the Settlement Class.  In addition, the Court may decide to conduct the Hearing by video or telephonic conference, or otherwise allow Settlement Class Members to appear at the hearing by video or telephone, without further written notice to the Settlement Class.  In order to determine whether the date and time of the Hearing have changed, or whether Settlement Class Members must or may participate by telephone or video, it is

---

[3] The papers in support of approval of the Settlement, the Plan of Allocation, and Lead Counsel's Fee and Expense Application will be submitted to the Court no later than thirty-five (35) calendar days before the Final Approval Hearing, and posted on the Settlement website, www.TwistSecuritiesSettlement.com.

important    that    you    monitor    the    Court's    docket    and    the    website, www.TwistSecuritiesSettlement.com, before making any plans to attend the Hearing.

### 23.    May I Speak at the Hearing?

If you have timely filed an objection, you may ask the Court for permission to speak at the Final Approval Hearing.  To do so, your written objection must (in addition to the information specified in Question 19 above) state your intention to appear at the hearing.  You cannot speak at the hearing if you exclude yourself from the Settlement Class.

<strong>IF YOU DO NOTHING</strong>

### 24.    What Happens If I Do Nothing at All?

If you do nothing, you will be a Settlement Class Member.  However, you will not receive any money from this Settlement unless you submit a Proof of Claim.  Unless you exclude yourself, you will not be able to bring a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants or their Related Parties about the Released Claims.

<strong>GETTING MORE INFORMATION</strong>

### 25.    How Do I Get More Information?

This Long-Form Notice summarizes the proposed Settlement and does not describe all of the details of the Settlement.  More details are in the Stipulation.  You can obtain a copy of the Stipulation by going to www.TwistSecuritiesSettlement.com or by calling or writing the Claims Administrator at 1-833-386-6546 or *Twist Securities Settlement*, c/o Simpluris, Inc., PO Box 25199, Santa Ana, CA 92799; by contacting Lead Counsel at twistsettlement@bfalaw.com or (888) 879-9418; or by visiting the Clerk's office at the United States District Court for the Northern District of California, San Jose Division, Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, Room 2112, San Jose, California 95113, during regular business hours.

***DO NOT TELEPHONE THE DEFENDANTS, DEFENDANTS' COUNSEL, OR THE
COURT REGARDING THIS NOTICE***

If you have questions about the Settlement, you can contact the Claims Administrator by going to www.TwistSecuritiesSettlement.com, calling 1-833-386-6546, or writing to *Twist Securities Settlement*, c/o Simpluris, Inc., PO Box 25199, Santa Ana, CA 92799, or contact Lead Counsel at twistsettlement@bfalaw.com or (888) 879-9418.

**APPENDIX A – PLAN OF ALLOCATION OF NET SETTLEMENT FUND**

**PROPOSED PLAN OF ALLOCATION**

1.      The objective of the Plan of Allocation is to fairly distribute the Net Settlement Fund to Authorized Claimants.  The calculations are not intended to estimate the damages the Class might have recovered after a trial or the amount Authorized Claimants will be paid under the Settlement.  These calculations are only a method to weigh Authorized Claims against one another to make fair pro rata allocations of the Net Settlement Fund.

2.      A "Recognized Loss Amount" will be calculated as set forth below (i) under the Securities Exchange Act of 1934 (the "Exchange Act") for each purchase of Twist Bioscience Corporation common stock ("Twist common stock") between December 20, 2018 and November 15, 2022, both dates inclusive (the "Class Period"); and (ii) under the Securities Act of 1933 (the "Securities Act") for purchases of Twist common stock directly from an underwriter at the Issue price of $110 as part of the December 2, 2020 Secondary Public Offering ("SPO").  To the extent that the calculation of a Recognized Loss Amount results in a negative number, that number shall be set to zero.

3.      The Recognized Loss Amount for each qualifying purchase or acquisition of Twist common stock is *the greater of* (a) the Securities Act Recognized Loss Amount calculated below, *or* (b) the Exchange Act Recognized Loss Amount calculated below.

- 24 -

## I.    Securities Act Recognized Loss Amount Calculations

4.    The statutory formula for the calculation of damages under Section 11 of the Securities Act serves as a guide for the calculation of the "Securities Act Loss Amounts" under the Plan of Allocation.

5.    For shares of Twist common stock purchased or acquired in the SPO[4] and:[5]

(a)    sold before the opening of trading on November 15, 2022,[6] the Securities Act Recognized Loss Amount shall be:

*Per Share Recognized Loss Amount* ($) = ($110.00 − *sale price*) ∗ 0.1[7]

(b)    sold after the opening of trading on November 15, 2022 and before the opening of trading on October 11, 2023, the Securities Act Recognized Loss Amount shall be:

*Per Share Recognized Loss Amount* ($) = $8.11 + (($110.00 − *sale price* − $8.11) ∗ 0.1)

(c)    sold after the opening of trading on October 11, 2023 through the close of trading on [the mailing date of the Settlement Notice], the Securities Act Recognized Loss Amount shall be:

*Per Share Recognized Loss Amount* ($) =

$8.11 + (($110.00 − *max. of* (*sale price*, $19.26) − $8.11) ∗ 0.1)

(d)    held as of the closing on [the mailing date of the Settlement Notice], the Securities Act Recognized Loss Amount shall be:

*Per Share Recognized Loss* ($) = $8.11 + (($110.00 − $19.26 − $8.11) ∗ 0.1) = $16.37

---

[4] The Plan of Allocation presumes that shares of Twist common stock purchased/acquired at the Secondary Offering price of $110 per share on or around December 2, 2020, were purchased/acquired pursuant to the December SPO.  Claimants must provide adequate documentation of these conditions, as specified herein.

[5] In the below equations, $110 represents the offering price per share. Claimants who purchased in the offering at a price higher than $110 shall be limited to $110. Should a Claimant have acquired shares in the offering at a lower price, the lower price will be used in place of $110.

[6] November 15, 2022, is the date that the alleged corrective information was released to the market.

[7] The discount acknowledges that Defendants likely would have presented a "negative causation" defense, which assumes price declines not associated with the November 15, 2022 alleged corrective disclosure are due to factors not associated with misstatements in SPO registration statement.

6.      To reflect the differences in the standard of proof under Securities Act Claims and Exchange Act Claims, the Securities Act Recognized Loss Amounts calculated (b) – (d) in the previous paragraphs shall be increased by the loss on the corrective disclosure multiplied by 1.1, or $0.81 per share.[8]

## II.      Exchange Act Recognized Loss Amount Calculations

7.      To create the Plan of Allocation, Plaintiffs' expert estimated the alleged inflation caused by Defendants' allegedly misleading statements and considered the impact of the subsequent public announcements that Plaintiffs believe corrected those statements.  The expert also adjusted for price changes caused by regular market or industry forces, on a per share basis.

8.      In order to have recoverable damages under the Exchange Act, the disclosure of the allegedly misrepresented information must be the cause of the removal of artificial inflation from Twist common stock.  In this case, Plaintiffs allege that Defendants made false statements during the Class Period, and that such statements had the effect of artificially inflating the price of Twist common stock. Plaintiffs further allege that corrective information was released to the market on November 15, 2022, and that such release of information removed artificial inflation from the share price of Twist common stock that day.

9.      Exchange Act Recognized Loss Amounts are based primarily on the difference in the amount of alleged artificial inflation in the price of Twist common stock at the time of purchase or acquisition and at the time of sale, not to exceed the difference between the actual purchase/acquisition price and sale price.

10.      For each share of Twist common stock purchased or otherwise acquired from December 20, 2018 through and including November 15, 2022, and:

---

[8] For example, the Securities Act does not require a plaintiff to prove that a defendant acted with scienter.

(a)     sold before November 15, 2022, the Exchange Act Recognized Loss Amount will be $0.00.

(b)     sold from November 15, 2022 through and including the close of trading on February 10, 2023, the Exchange Act Recognized Loss Amount will be *the least of*: (i) $8.11; (ii) the purchase/acquisition price *minus* the sale price; or (iii) the purchase/acquisition price *minus* the average closing price between November 15, 2022 and the date of sale as stated in Table A below.

(c)     held as of the close of trading on February 10, 2023, the Exchange Act Recognized Loss Amount will be the lesser of: (i) $8.11; or (ii) the purchase/acquisition price minus $25.98.[9]

## ADDITIONAL PROVISIONS

11.     **Calculation of Claimant's "Recognized Claim":** A claimant's "Recognized Claim" will be the sum of his, her, or its Recognized Loss Amounts as calculated above with respect to Twist common stock. As stated above, the Recognized Loss Amount for each purchase or acquisition of Twist common stock during the Class Period is *the greater of* the Securities Act Recognized Loss Amount (if any) *or* (b) the Exchange Act Recognized Loss Amount (if any).

12.     **FIFO Matching:** If a Class Member made more than one purchase/acquisition or sale of Twist common stock during the Class Period, all purchases/acquisitions and sales will be matched on a First In, First Out ("FIFO") basis.

13.     **"Purchase/Sale" Dates:** Purchases or acquisitions and sales of Twist common stock will be deemed to have occurred on the "contract" or "trade" date as opposed to the

---

[9] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Twist common stock during the "90-day look-back period," November 15, 2022 through and including February 10, 2023. The mean (average) closing price for Twist common stock during this 90-day look-back period was $25.98.

"settlement" or "payment" date. The receipt or grant by gift, inheritance, or operation of law of Twist common stock shall not be deemed a purchase, acquisition or sale of Twist common stock for the calculation of a claimant's Recognized Loss Amount, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition/sale of Twist common stock unless (i) the donor or decedent purchased or otherwise acquired or sold those Twist common stock during the Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of Twist common stock.

14.    **Short Sales:** In accordance with the Plan of Allocation, the Recognized Loss Amount on any portion of a transaction that matches against (or "covers") a "short sale" is zero. The Recognized Loss Amount on a "short sale" that is not covered is also zero.

15.    **Common Stock Purchased/Sold Through the Exercise of Options:** With respect to Twist common stock purchased or sold through the exercise of an option, the purchase/sale date of the common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

16.    **Domestic Transactions:** Solely for purposes of the Settlement and the Plan of Allocation, transactions in Twist common stock denominated in U.S. dollars are deemed domestic transactions.

17.    **Determination of Distribution Amount:** If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share will be the Authorized Claimant's

Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

18.     If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund will be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

19.     If an Authorized Claimant's Distribution Amount calculates to less than $10.00, no distribution will be made to that Authorized Claimant. Those funds will be included in the distribution to Authorized Claimants whose Distribution Amount is $10.00 or more.

**TABLE A**
**90-Day Look-back Table for Twist Common Stock**
**Closing Price and Average Closing Price**
**November 15, 2022 through February 10, 2023**

| Date | Closing Price | Average Closing Price Between November 15, 2022 and Date Shown | | Date | Closing Price | Average Closing Price Between November 15, 2022 and Date Shown |
|---|---|---|---|---|---|---|
| 11/15/2022 | $30.43 | $30.43 | | 12/29/2022 | $23.44 | $25.44 |
| 11/16/2022 | $28.29 | $29.36 | | 12/30/2022 | $23.81 | $25.39 |
| 11/17/2022 | $25.40 | $28.04 | | 1/3/2023 | $23.81 | $25.34 |
| 11/18/2022 | $24.81 | $27.23 | | 1/4/2023 | $25.41 | $25.34 |
| 11/21/2022 | $25.61 | $26.91 | | 1/5/2023 | $25.29 | $25.34 |
| 11/22/2022 | $25.21 | $26.63 | | 1/6/2023 | $25.40 | $25.34 |
| 11/23/2022 | $25.53 | $26.47 | | 1/9/2023 | $24.65 | $25.32 |
| 11/25/2022 | $25.44 | $26.34 | | 1/10/2023 | $26.00 | $25.34 |
| 11/28/2022 | $25.04 | $26.20 | | 1/11/2023 | $26.72 | $25.37 |
| 11/29/2022 | $24.60 | $26.04 | | 1/12/2023 | $26.56 | $25.40 |
| 11/30/2022 | $27.35 | $26.16 | | 1/13/2023 | $25.96 | $25.42 |
| 12/1/2022 | $27.86 | $26.30 | | 1/17/2023 | $26.88 | $25.45 |
| 12/2/2022 | $28.50 | $26.47 | | 1/18/2023 | $27.43 | $25.50 |
| 12/5/2022 | $27.74 | $26.56 | | 1/19/2023 | $25.75 | $25.50 |
| 12/6/2022 | $25.89 | $26.51 | | 1/20/2023 | $27.03 | $25.54 |
| 12/7/2022 | $25.32 | $26.44 | | 1/23/2023 | $28.74 | $25.61 |

- 29 -

| Date | Closing Price | Average Closing Price Between November 15, 2022 and Date Shown | | Date | Closing Price | Average Closing Price Between November 15, 2022 and Date Shown |
|---|---|---|---|---|---|---|
| 12/8/2022 | $26.33 | $26.43 | | 1/24/2023 | $28.74 | $25.67 |
| 12/9/2022 | $24.42 | $26.32 | | 1/25/2023 | $27.98 | $25.72 |
| 12/12/2022 | $25.57 | $26.28 | | 1/26/2023 | $27.96 | $25.77 |
| 12/13/2022 | $26.46 | $26.29 | | 1/27/2023 | $29.15 | $25.84 |
| 12/14/2022 | $26.49 | $26.30 | | 1/30/2023 | $28.25 | $25.88 |
| 12/15/2022 | $25.38 | $26.26 | | 1/31/2023 | $28.69 | $25.94 |
| 12/16/2022 | $25.25 | $26.21 | | 2/1/2023 | $29.08 | $26.00 |
| 12/19/2022 | $23.79 | $26.11 | | 2/2/2023 | $30.90 | $26.09 |
| 12/20/2022 | $23.63 | $26.01 | | 2/3/2023 | $25.31 | $26.07 |
| 12/21/2022 | $24.17 | $25.94 | | 2/6/2023 | $23.73 | $26.03 |
| 12/22/2022 | $23.54 | $25.85 | | 2/7/2023 | $26.18 | $26.03 |
| 12/23/2022 | $23.19 | $25.76 | | 2/8/2023 | $26.20 | $26.04 |
| 12/27/2022 | $21.93 | $25.63 | | 2/9/2023 | $24.67 | $26.01 |
| 12/28/2022 | $21.92 | $25.50 | | 2/10/2023 | $23.70 | $25.98 |

DATED:_____

BY THE COURT:

_____

Judge Eumi K. Lee

- 30 -